James R. Hawkins, Cal Bar No. 192925
Gregory Mauro, Cal Bar No. 222239
JAMES R. HAWKINS, APLC
9880 Research Drive, Suite 200
Irvine, California  92618
Telephone:  949.387.7200
Facsimile:  949.387.6676
Email: james@jameshawkinsaplc.com
         greg@jameshawkinsaplc.com
Attorneys for Plaintiffs ANTONIO
NAVARRETE individually and on
behalf of all others similarly situated

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| ANTONIO NAVARRETE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SPRINT/UNITED MANAGEMENT COMPANY, a Kansas Corporation; SPRINT CORPORATION, a Kansas Corporation;  and DOES 1-50, inclusive,<br><br>Defendants. | Case No. 8:19-cv-00794-JLS-ADS<br>Hon. Josephine L. Staton<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND REPRESENTATIVE ACTION SETTLEMENT**<br><br>Date: November 20, 2020<br>Time: 10:30 a.m.<br>Courtroom: 10A<br><br>Complaint Filed:  January 29, 2019<br>FAC: January 28, 2020<br>Trial Date: None Set |

**MEMORANDUM OF POINTS AND AUTHORITIES**

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION AND SUMMARY……………………………..…….1

II.     FACTUAL AND PROCEDURAL BACKGROUND……………..……...2

       A. The Pleadings and the Parties…………………………………2

       B.  The Parties Have Completed Comprehensive Discovery……..3

       C.  Mediation, Motion for Class Certification, Settlement
           Negotiations and Preliminary Approval……………………….3

III.    SUMMARY OF SETTLEMENT TERMS ……………………………..4

       A.  The Class and Class Members………………………………...4

       B. Settlement Consideration…………………………………...4

           1.  The Gross Settlement ("GSF")………………………....4

           2.  The Net Settlement Amount ("NSA")………………….4

           3.  Non- Reversionary Settlement……………………….….5

           4.  Individual Settlement Payments……………………….5

           5.  The Release Claims…………………………………….6

IV.     ARGUMENTS FOR PRELIMINARY SETTLEMENT APPROVAL……..6

       A.  The Settlement Is Fair, Adequate, and Reasonable…………………6

           1.  Strength of the Plaintiff's Case…………………..7

           2.  Risk, Expense, Complexity, and Duration of
              Further Litigation………………………………...……9

           3.  Risk of maintaining class action status throughout
              the trial……………………………………………15

           4.  The Amount offered in settlement……………...16

           5.  Extent of discovery completed and stage of the
              proceedings……………………………………..18

           6.  The experience and views of counsel………….…18

B.  The Requirements for Conditional Certification are Satisfied……..19

1.  The Class is sufficiently numerous……………..20

2.  There are questions of law and fact common to the class………………………………………………….20

3.  Plaintiff's claims are typical of those of the class members……………………………………………..20

4.  Plaintiff and class counsel are adequate………...21

5.  Common questions predominate over individual……………………………………………..22

6.  Class resolution is superior to other available methods………………………………………………22

C.   The Proposed Class Notice is Adequate……………………..….22

D.  Requested Fees, Costs, and Enhancement Are Reasonable………....23

V.   NOTICE TO THE LWDA …………………………………………...24

VI.   CONCLUSION……………………………………………………….24

# TABLE OF AUTHORITIES

*Amaraut, et. al. v. Sprint/United Management Company*,
 USDC Case No.: 3:19-cv-00411-WQH-AHG……………………...……2,6

*Bono Enterprises, Inc. v. Bradshaw*
 32 Cal. App. 4th 968 (1995)……………………………………………..9

*Brinker Rest. Corp. v. Super. Ct.*,
 53 Cal. 4th 1004 (2012)……………………………………………...10,11,12

*Castillo v. Bank of America Nat'l Assoc.*,
 2018 U.S. Dist. LEXIS 132369 (C.D. Cal. Feb. 1, 2018)……………......12

*Clark v. Super. Ct.*,
 50 Cal. 4th 605 (2010)…………………………………………….....…13

*Class Plaintiffs v. City of Seattle*,
 955 F.2d 1268 (9th Cir. 1992)………………………………………....7

*Cortez v. Best Buy*,
 2012 U.S. Dist. LEXIS 15190 (C.D. Cal. Jan. 25, 2012)…………………..12

*Cummings v. Starbucks Corp.*,
 2013 U.S. Dist. LEXIS 69260, *59 (C.D. Cal. Mar. 14, 2014)……………12

*Dailey v. Sears, Roebuck & Co.*,
 214 Cal. App. 4th 974 (2013)……………………………………………11

*Duran v. U.S. Bank Natl. Ass'n*,
 59 Cal. 4th 1 (2014)………………………………………………..…..11

*Francisco v. Emeritus Corp.*,
 2017 U.S. Dist. LEXIS 220843 (C.D. Cal. Jul. 2014, 2017)………………13

*Gonzalez v. Millard Mall Servs.*,
 281 F.R.D. 455 (S.D. Cal. 2012)…………………………………………..12

*Guerrero v. Halliburton Energy Servs. Inc.*,
 231 F. Supp. 3d 797 (E.D. Cal. Feb. 3, 2017)………………………………13

*Hanlon v. Chrysler Corp.,*

    150 F.3d 1011 (9th Cir. 1998)……………………………….....…passim

*In re Taco Bell Wage & Hour Actions,*

    2012 U.S. Dist. LEXIS 168219 (E.D. Cal. Nov. 27, 2012)……………..13

*Joshua Caudle, et. al. v. Sprint, et. al.,*

    USDC Northern District Case No.: 3:17-cv-068474-WHA………………13

*Kirby v. Immoos Fire Protection, Inc.,*

    53 Cal. 4th 1244 (2012)………………………………….….…..12,13

*Lampe,*

    19 Cal. App. 5th at 841………………………………………….……12

*Ling v. P.F. Chang's China Bistro, Inc.,*

    245 Cal. App. 4th 1242 (2016)……………………………….….…13

*Officers for Justice v. Civil Service Com'n, etc.,*

    688 F.2d 615 (9th Cir. 1982)……………………………………….7

*Mendiola v. CPS Security Solutions, Inc.*

    60 Cal. 4th 833 (2015)………………………………………………9

*Molski v. Gleich,*

    318 F.3d 937 (9th Cir. 2003)…………………………..………...19

*Morillion v. Royal Packing Co.*

    22 Cal. 4th 575 (2000)……………………………………………9

*Naranjo et al. v. Spectrum Security Services, Inc.*

    No. B256232 (Cal. Ct. App. Sept. 26, 2019)………………………14

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.,*

    221 F.R.D. 523 (C.D. Cal. 2004)…………………………12,17,18

*Phillips Petroleum Co. v. Shutts,*

    472 U.S. 797 (1985)…………………………………………..23

*Pineda v. Bank of America, N.A.,*

    50 Cal. 4th 1389 (2010)……………………………………...………………..13

*Serrano v. Aerotek, Inc.,*

    21 Cal. App. 5th 773 (2008)…………………………………………….…..11

*Sillah v. Command Int'l Sec. Servs.,*

    154 F. Supp. 3d 891 (N.D. Cal. 2015)…………………………...………13

*Van Bronkhorst v. Safeco Corp.,*

    529 F.2d 943 (9th Cir. 1976)……………………………………………...7

*Walgreen Co. Overtime Cases,*

    231 Cal. App. 4th 437 (2014)……………..……………………………..11

*White v. Starbucks*,

    497 F. Supp. 2d 1080 (N.D. Cal. 2007)…………………………………10

*Williams v. MGM-Pathe Commun. Co.,*

    129 F.3d 1026 (9th Cir. 1997)……………………………...…………….23

1

### **Statutes, Rules and Regulations**

2  California Code of Civil Procedure § 22…………………………………….…13

3  California Code of Civil Procedure 382……………………………….…….…21

4  California Labor Code §§ 203………………………………………………5,14,17

5  California Labor Code §§ 226…………………………………………......14,17

6  California Labor Code §§ 226.7……………………………………………….14

7  California Labor Code §§ 2698……………………………….……………..21

8

9

### **Federal Rules**

10  Fed. Rules Civ. Proc., rule 23…………………………………………………20,22

11  Fed. Rules Civ. Proc., rule 23(a)…………………………………………….19

12  Fed. Rules Civ. Proc., rule 23(a)(1)………………………………………….20

13  Fed. Rules Civ. Proc., rule 23(a)(2)………………………………………….20

14  Fed. Rules Civ. Proc., rule 23(a)(3)………………………………………..…19

15  Fed. Rules Civ. Proc., rule 23(b)(3)……………………………………….....19

16  Fed. Rules Civ. Proc., rule 23(a)(4)………………………………………….21

17  Fed. Rules Civ. Proc., rule 23(b)(3)…………………………………...…….22

18  Fed. Rules Civ. Proc., rule 23(c)(2)(B)……………………………………...23

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND SUMMARY

Plaintiff Antonio Navarrete ("Plaintiff"), on behalf of himself and the proposed Class Members hereby respectfully requests that the Court issue an order preliminarily approving the parties' Joint Stipulation and Class and Representative Agreement and Release ("Settlement" or "Settlement Agreement").

Plaintiff, without opposition from Defendant Sprint United Management Company ("Defendant"), submits this memorandum of points and authorities in support of the motion for preliminary approval of the Settlement.  Plaintiff respectfully requests on behalf of the Class that the Court preliminarily approve the Settlement Agreement which is attached to the declaration of James Hawkins ("Hawkins Decl.") as Exhibit 1 and the Notice of Class Action Settlement and Opt Out Form attached as Exhibits A and B thereto.

Subject to the Court's approval, the parties have agreed to settle this action for the Gross Settlement Fund ("GSF") of Two Million Seven Hundred and Fifty Thousand Dollars and Zero Cents (**$2,750,000.00**). This sum shall include all payments made to class members that do not exclude themselves, the Court-approved enhancement award to the Class Representative in the amount of $5,000, the Court-approved Administration Costs in the amount of $55,000, and the Court-approved Class Counsel attorneys' fees in the amount of $916,666.67 or as otherwise approved by the Court and costs not to exceed $20,000, and PAGA award in the amount of $100,000 of which seventy-five percent ($75,000) will be paid to the LWDA and twenty-five percent ($25,000) will be distributed to the Settlement Class Members.  The GSF is non-reversionary. The employer share of taxes on the wage portion of the GSF shall be paid by Defendant separate and apart from the GSF. The remaining Net Settlement Amount ("NSA") estimated at $1,673,334 will be allocated for Individual Settlement Payments and  based on the number of Class Workweeks Worked by the Plaintiff  Class Member, as a fraction

## MEMORADNUM OF POINTS AND AUTHORITIES

of the total Class Workweeks worked of all Class Members.

Any Class Members who separated their employment with Defendant between February 25, 2016 and April 8, 2020 will be credited with an additional 5% of their Workweeks for the LC 203 claim. Any individual who worked any time during the FLSA Period from February 25, 2016, through and including April 8, 2020 and who did not timely and properly file and complete an opt in form in the lawsuit *Amaraut, et. al. v. Sprint/United Management Company*, USDC Case No.: 3:19-cv-00411-WQH-AHG, will be credited with an additional 5% of their Workweeks. The Parties agree that the entire amount of the Net Settlement Fund, less applicable Employee's Taxes and Required Withholdings, shall be distributed to Class Members.  (Settlement ¶ 7).

Based upon Defendant's records, the Class consists of approximately 5,700 current and former Class Members. (Settlement, ¶ 2.5).  Plaintiff respectfully submits the Settlement Agreement provides the Class Members with a fair, adequate and reasonable settlement of their class claims against Defendant and asks the Court to enter the concurrently filed [Proposed] Order preliminarily approving it.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Pleadings and the Parties

On January 29, 2019, Plaintiff filed this putative class action against Defendant seeking to represent all of Defendant's non-exempt employees in California who worked in retail stores alleging the following causes of action: (1) failure to pay minimum wages including overtime; (2) failure to provide meal periods; (3) failure to provide rest periods; (4) failure to timely pay wages; (5) unreimbursed expenses; (6) unfair competition; and (7) PAGA.  On February 11, 2019, Plaintiff exhausted his remedies with the LWDA regarding the PAGA claims and filed a separate PAGA action on April 5, 2019. A stipulation to amend the complaint to add claims for PAGA to this action was filed on January 28, 2020.

- 2 -

**MEMORADNUM OF POINTS AND AUTHORITIES**

(Dkt. No. 21).   Defendant denies and continue to deny the allegations in this Action. (Hawkins Decl., ¶ 2).

Defendant owns retail stores in which it sells cell phones and related products to its customers. Plaintiff and the Class Members worked at Defendant's various retail stores throughout California. (Hawkins Decl., ¶ 3).

### B.     The Parties Have Completed Comprehensive Discovery

Each of the parties both exchanged comprehensive discovery.  (Hawkins Decl. ¶¶ 5-9; Settlement ¶ 1.7).  The parties have also conferred as to the production of voluminous documents and information for the putative class members.  (*Id*.). Defendant produced hundreds of pages and tens of thousands of lines of data relating to the claims.  In advance of the mediation, the parties exchanged information regarding the putative class, including workweeks and rates of pay among the class members, policies, training information, sampled time and pay records, information relating to the defendants and numerous other documents and information.   The parties have also conducted extended conferences regarding the allegations in the litigation and Defendant's practices relating to putative class members working in California.  (*Id*.).  Plaintiff's counsel has thus conducted extensive discovery relating to the claims.   (Id.).

### C.     Mediation, Settlement Negotiations and Preliminary Approval

After conducting comprehensive review and analysis, many meetings, and ongoing exchanges of documents and information, on December 10, 2019, the Parties participated in a mediation session before mediator Gig Kyriacou, Esq., an experienced mediator who has mediated numerous wage-hour class actions.  At the conclusion of the mediation session, the Parties reached a settlement for $2,750,000 to resolve the Parties' dispute.  The Parties then worked to arrive at the final form of the Settlement Agreement that is now before this Court for preliminary approval. (Hawkins Decl., ¶ 9).

- 3 -

**MEMORADNUM OF POINTS AND AUTHORITIES**

### III. SUMMARY OF SETTLEMENT TERMS

#### A. The Class and Class Members

Pursuant to the Settlement, the "Class" or "Class Members" means all current and former non-exempt employees of Defendant Sprint/United Management Company who worked in Defendant's retail stores in the State of California during the Class Period of February 25, 2016, through April 8, 2020. Defendant represents there are approximately 5,700 Class Members who worked approximately 350,000 workweeks. (Settlement ¶ 2.5; 4.8). If the number of Workweeks submitted by Defendant to the Settlement Administrator exceeds 350,000 by ten percent (10%), Plaintiff shall have the option in its sole discretion to rescind/void the Settlement. (Settlement ¶ 4.8.)

Class Members who do not exclude themselves will receive settlement payments from the NSA calculated and apportioned from the GSF based on their workweeks earned over the Class Period. Therefore, the more workweeks Class Members earned, the more they were alleged to have suffered violations. (Hawkins Decl. ¶ 6).

#### B. Settlement Consideration

##### 1. The Gross Settlement Fund ("GSF")

Defendants agree to pay a non-reversionary GSF of Two Million Seven Hundred and Fifty Thousand Dollars and Zero Cents (**$2,750,000.00**). (Settlement, ¶ 2.20).

##### 2. The Net Settlement Amount ("NSA")

Upon the Court granting preliminary and then final approval of the requested amounts, the following specific payments will be made from the GSF to arrive at the NSA, which is the amount available for distribution to the Participating Class Members (Settlement, ¶ 7):

- Up to $5,000 allocated to Plaintiff as an enhancement for serving as Class Representative. (Settlement, ¶ 7.2.1).

**MEMORADNUM OF POINTS AND AUTHORITIES**

- An amount of approximately $55,000 to be paid to ILYM Group, Inc., for serving as the Settlement Administrator in this action and to cover the cost of the Settlement Administration. (Settlement, ¶ 7.2.2).
- $100,000 allocated to PAGA penalties, with 75% ($75,000) being paid to the LWDA from the GSF and 25% ($25,000) remaining for *pro rata* distribution to the Participating Class Members.  (Settlement, ¶ 7.2.1).
- An amount not to exceed one-third of the GSF, or $916,666, in attorneys' fees to James Hawkins APLC as Class Counsel.  (Settlement, ¶ 7.2).
- Documented costs of up to $20,000 to Class Counsel.  (Settlement, ¶ 7.2).

In the event the Court grants approval of these requested amounts, the total NSA available to be paid to Participating Class Members will be approximately $1,673,334.  Any of the foregoing amounts not approved by the Court will be added to the NSA. (Hawkins Decl., ¶ 14).

### 3. Non-Reversionary Settlement

This is a non-reversionary settlement.  Thus, no money will revert to Defendant.  All of the NSA will be paid to all Participating Class Members based upon a pro rata basis of workweeks over the Class Period.  (Settlement ¶ 6).

### 4. Individual Settlement Payments

Class Members who do not exclude themselves will receive their settlement payment. After deducting the  amounts  specified  in  Paragraph 7, each Plaintiff Class Members shall be entitled to a pro rata portion of the remaining amount of the Gross Settlement Fund, which is known as the Net Settlement Amount. Individual Settlement Payments shall be  awarded  to Plaintiff  Class  Members from  the  Net Settlement Amount based on the number of Class Workweeks Worked by the Plaintiff  Class Member, as a fraction of the total Class Workweeks worked of all Plaintiff Class Members.

Any Class Members who separated their employment with

**MEMORADNUM OF POINTS AND AUTHORITIES**

Defendant between February 25, 2016 and April 8, 2020 will be credited with an additional 5% of their Workweeks for the LC 203 claim. Any individual who worked any time during the FLSA Period from February 25, 2016, through and including April 8, 2020 and who did not timely and properly file and complete an opt in form in the lawsuit *Amaraut, et. al. v. Sprint/United Management Company*, USDC Case No.: 3:19-cv-00411- WQH-AHG, will be credited with an additional 5% of their Workweeks.  (Hawkins Decl. ¶ 15; Settlement ¶ 7.2.4.).

The Settlement also provides that, because the Individual Settlement Payments represent a compromise of claims for alleged unpaid wages, interest, reimbursement and statutory penalties, for tax purposes all Individual Settlement Payments will be allocated as follows: 2/3 shall be attributed to penalties and interest, to be reported on a 1099 Form; and 1/3 shall be attributed to wages subject to all applicable payroll taxes, except for employer taxes, and will be reported on a W-2 Form. Defendant will be separately responsible for the employer portion of taxes allocated to wages separate and apart from the GSF. (Hawkins Decl. ¶ 16; Settlement, ¶ 2.17).

### 5. The Released Claims

All Class Members who do not exclude themselves from the Settlement will be bound by the terms of the Settlement and subject to its release provisions. (Settlement, ¶¶ 5.4; 5.5).  The scope of the Released Claims and Released Parties are defined in the Settlement and are focused on the facts and causes of action pled in the operative complaints.  (Id.).   In addition, Plaintiff provides a general release as to himself only. (Id.).

## IV. ARGUMENTS FOR PRELIMINARY SETTLEMENT APPROVAL

### A. The Settlement Is Fair, Adequate, and Reasonable

Federal Rule of Civil Procedure 23(e) requires court approval of any class action settlement.  The touchstone for approval is whether the settlement is "fair, adequate, and reasonable."  (*See, e.g., Hanlon v. Chrysler Corp.*,

**MEMORADNUM OF POINTS AND AUTHORITIES**

150 F.3d 1011, 1026 (9th Cir. 1998); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)).  The Court's review "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." (*Hanlon*, 150 F.3d at 1027 (citation omitted)).  As a "[s]ettlement is the offspring of compromise," the question "is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."  (*Id.*).

The law favors settlement, and this is particularly true in class actions where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation.  (*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976)).  Indeed, strong judicial policy favors the settlement of actions in federal court, particularly where class action litigation is concerned.  (*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); Rule 23(e)).  The factors which bear on settlement analysis include:  (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. (*Hanlon*, 150 F.3d at 1026 (internal numbering added)).  Plaintiff respectfully submits that each of the applicable *Hanlon* factors supports granting preliminary approval of the Settlement Agreement.

### 1.    Strength of the plaintiff's case

The main thrust of Plaintiff's claims against Defendants centered around whether Defendants failed to pay all minimum and overtime wages for off the clock work related to time working during meal periods and time spent on pre shift and post shift activities; the failure to provide duty free meal periods for 30 minutes and

**MEMORADNUM OF POINTS AND AUTHORITIES**

within the first 5 hours and timely rest periods.  Plaintiff maintained that he and the class members were forced to open up and close down stores off the clock and to tend to customers during lunches.  Plaintiff alleges that he and various class members were required to perform duties such as open the security gates, turn off alarms, turn on/off lights, turn on the POS and computers, boot up the systems, and tend to customers all while off the clock.  At times this unpaid time was owed at an overtime rate as class members worked over 8 hours in a day.  Shifts typically ranged from 4 to 8 hours, Saturday through Sunday, and were either positioned as opening, closing or middle shifts.  Plaintiff also contends Defendant failed to reimburse mileage when individuals were traveling between stores during the workday.  This would typically happen when individuals were required to provide staffing at other stores for various reasons.  Lastly, Plaintiff argued that as a result of these practices, Defendant was liable for additional statutory penalties. (Hawkins Decl., ¶¶ 19-28, 43-51).

Under both statutory case law and the IWC Wage Orders, any time in which employees are subject to the control of the employer or the employer knew such work was being performed, Defendant is liable to pay that individual at their regular rate or overtime rate as appropriate.  Further, disruption of the meal periods shall be counted as time worked.  Plaintiff alleged Defendant failed to account for off the clock time for pre and post shift activities and time Plaintiff and class members were on lunch but required to tend to customers.  Thus, Plaintiff and class members were not paid all regular or overtime wages and were not provided with duty free meals.  This fact also requires employers to pay for all time worked during the meal periods.  Thus, Defendant is liable for the off the cock time during meal periods. (*Id*.)

Employees must be paid for all "hours worked," as that phrase is defined in the Wage Order and interpreted by California courts. Hours worked is defined in the applicable Wage Orders  as "the time during which an employee is subject to

**MEMORADNUM OF POINTS AND AUTHORITIES**

the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." (Wage Order 5-2001, Subd. 2(K); see also *Mendiola v. CPS Security Solutions, Inc.* (2015) 60 Cal. 4th 833. Under this standard, "it is only necessary that the worker be subject to the control of the employer in order to be entitled to compensation." *Morillion v. Royal Packing Co.* (2000) 22 Cal. 4th 575, 584. The *Morillion* Court reasoned that an employee is under the employer's control and entitled to compensation when the employer "'directs, commands or restrains' an employee." *Morillion, supra,* 22 Cal. 4th at 583, quoting from *Bono Enterprises, Inc. v. Bradshaw* (1995) 32 Cal. App. 4th 968, 975. Here, Plaintiff argued Defendant failed to pay for all wages when clocked out while under the control of Defendants. (Id.)

Plaintiff also argued Defendants failed to provide meal periods when Class Members were required to tend to customers during a lunch.

Plaintiff has also alleged other claims for unfair competition, failure to timely pay wages, pay stub violations and PAGA, with the majority of these claims flowing from Defendant's alleged failure to pay for off the clock work and meal/rest period violations. While Plaintiff believes in the strength of the allegations, there is no certainty they could prove sufficient systematic violations at Defendant's hands to certify the Class and ultimately prevail at trial. (Hawkins Decl., ¶¶ 20). Indeed Defendant has recently settled numerous cases wherein it claims to have implemented new policies and procedures to comply with California law. Additionally, Defendant presented numerous defenses regarding Plaintiff's allegations, that, if successful, would result in no liability to Defendants. For instance: Defendant's policy required all hourly employees to record their time accurately in its timekeeping system, which was RMS and later Kronos, and notify management of any inaccuracies reflected in RMS or Kronos. In addition, Defendant's verification procedure, which asked employees a series of questions, including to confirm whether they worked off the clock or were provided legally

- 9 -

**MEMORADNUM OF POINTS AND AUTHORITIES**

compliant meal and rest breaks, was another channel for employees to report issues internally. Defendant also had policies providing for 30-minute meal periods before the start of the 5th hour and another 30-minute meal period if worked more than 10 hours, and 10 minute rest breaks every four hours. Defendant also had pay codes "CA Meal/Break Pmt.," when meal period violations occurred. Management was charged with entering meal and rest break penalties when one was missed or not provided. Defendant's policies also provided for scheduling of meal breaks.

2.      **Risk, expense, complexity, and duration of further litigation**

Defendant vehemently denies and continues to deny each of the claims and contentions alleged by Plaintiff, including that class certification is appropriate. (Hawkins Decl., ¶¶ 22-40). Defendant asserted multiple factual and legal defenses to class certification and liability, and deny any wrongdoing or legal liability arising out of any of the facts or conduct alleged in the matter.

Defendant contradicted claims that employees were not allowed to work off the clock and that employees were to report all time including time worked during meal periods and during pre and post shift activities. Defendant also argued that employees were provided meal and/or rest periods and were aware of their right to breaks, or the choice not to take breaks if they choose, and contradicted that employees worked off the clock or were otherwise not paid wages. *White v. Starbucks*, 497 F. Supp. 2d 1080, 1085-87 (N.D. Cal. 2007) (granting summary judgment to the employer after employee testified that "nobody told him or instructed him not to take a rest period" and it was her choice not to take rest breaks). Defendants emphasized that "Proof an employer had knowledge of employees working through meal periods will not alone subject the employer to liability for premium pay; employees cannot manipulate the flexibility granted them by employers to use their breaks as they see fit to generate such liability." *Brinker Rest. Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1028 (2012) (citations omitted); *Serrano v. Aerotek, Inc.,* 21 Cal. App. 5th 773 (2008) (holding employer was not

**MEMORADNUM OF POINTS AND AUTHORITIES**

liable for alleged missed breaks where it notified employees of rest break requirements and encouraged employees to report if they missed breaks). Defendants also argued that, a missed break will not violate the law where the employee voluntarily missed, shortened, or postponed it, and that Plaintiff must demonstrate why each break was non-compliant. See *In re Walgreen Co. Overtime Cases,* 231 Cal. App. 4th 437, 443 (2014), ordered withdrawn (holding that under Brinker "you additionally must ask why the worker missed the break before you can determine whether the employer is liable. If the worker was free to take the break and simply chose to skip or delay it, there is no violation and no employer liability"). (Hawkins Decl., ¶¶ 28, 29).

Defendant further argued that Plaintiff will face significant challenges certifying a class. Defendant alleged there were different several positions at retail stores with varying levels of responsibilities and job duties. In addition, Defendant alleged that relevant differences existed across retail stores, across the state, with different layouts, sizes and operations, customer traffic, and management of operations. Defendant further noted a variety of opening and closing procedures a variety of break practices at different stores, differing postings reminding various groups of breaks that will complicate certification of a class outside of the settlement context. (Hawkins Decl., ¶ 30).

Defendant further argued Plaintiff would face difficult challenges showing a uniform unlawful policy. See also, e.g., *Duran v. U.S. Bank Natl. Ass'n,* 59 Cal. 4th 1, 26, 29. 34 (2014); see, e.g., *Brinker*, 53 Cal. 4th at 1052 (denying certification where plaintiffs failed to submit "substantial evidence" [rather than anecdotal evidence] of a "uniform, companywide policy" and observing that, in such circumstances, "proof of… liability would have to continue in an employee-by-employee fashion."); *Dailey v. Sears, Roebuck & Co.,* 214 Cal. App. 4th 974, 1002 (2013) (class certification properly denied where although the evidence suggested class members "did not regularly take uninterrupted meal periods and personally

- 11 -

**MEMORADNUM OF POINTS AND AUTHORITIES**

were never told they were entitled to meals and rest breaks", "[n]othing in [the plaintiff's] evidence indicates that [defendant] prohibits class members from taking uninterrupted meal and rest breaks, or that it has a uniform policy of requiring 'on-duty' meal and rest breaks");*Cortez v. Best Buy*, 2012 U.S. Dist. LEXIS 15190 (C.D. Cal. Jan. 25, 2012) (denying class certification for overtime and meal and rest break claims because no method offered to determine which employees were or were not given lawful breaks). (Hawkins Decl., ¶ 31).

Rather Defendant emphasized that statements of numerous retail employees illustrate no class-wide uniform policy of illegality. See *Gonzalez v. Millard Mall Servs.,* 281 F.R.D. 455, 463 (S.D. Cal. 2012) (denying class certification of meal and rest break claims brought by mall janitors where putative class members provided varying descriptions of meal and rest break procedures at each mall and/or regarding each supervisor). Defendant also argued that Plaintiff's claims are unlikely to be certified because proof of non-compliant breaks, "would have to continue in an employee-by-employee fashion, demonstrating who worked off the clock, how long they worked, and whether Defendant knew or should have known."); *Brinker*, 53 Cal. 4th at 1051-52; see also *Lampe,* 19 Cal. App. 5th at 841-42 (denying certification because each class member would be "required to individually litigate numerous and substantial questions to determine his [or her] right to recover following the class judgment"); see, e.g. *Castillo v. Bank of America Nat'l Assoc.,* 2018 U.S. Dist. LEXIS 132369 (C.D. Cal. Feb. 1, 2018) (motion to dismiss granted on class claims because the plaintiffs failed to allege the employer had a uniform practice throughout the state of requiring the alleged off-the-clock work.). (Hawkins Decl., ¶ 32).

Defendant also argued there is no common evidence that can demonstrate when a rest break was noncompliant. See, e.g., *Cummings v. Starbucks Corp.,* 2013 U.S. Dist. LEXIS 69260, *59 (C.D. Cal. Mar. 14, 2014) (denying certification on rest break claim because there was no "common method of proof that can

**MEMORADNUM OF POINTS AND AUTHORITIES**

demonstrate when employees were denied a second rest breaks, because rest breaks are not documented"); *In re Taco Bell Wage & Hour Actions*, 2012 U.S. Dist. LEXIS 168219 (E.D. Cal. Nov. 27, 2012). (Hawkins Decl., ¶ 33).

Defendant also challenged the application of unfair competition claims. *Clark v. Super. Ct.,* 50 Cal. 4th 605, 610 (2010). Damages are not recoverable. (*Id.*) Under California law, the remedy for an alleged failure to provide breaks and timely final wages are penalties, not wages. See e.g.*, Kirby v. Immoos Fire Protection, Inc.,* 53 Cal. 4th 1244, 1256 (2012) (holding break premiums are damages, not wages for work performed); *Pineda v. Bank of America, N.A.,* 50 Cal. 4th 1389, 1401–02 (2010) (holding waiting time penalties are not recoverable under the UCL); *Francisco v. Emeritus Corp.,* 2017 U.S. Dist. LEXIS 220843 (C.D. Cal. Jul. 2014, 2017) (dismissing UCL claim based on break premiums); *Guerrero v. Halliburton Energy Servs. Inc.,* 231 F. Supp. 3d 797 (E.D. Cal. Feb. 3, 2017). (Hawkins Decl., ¶ 34).

Defendant also challenged the application of waiting time penalties to meal and rest break claims and also argued potentially 2000 class members released their LC 203 claims in the related case entitled *Joshua Caudle, et. al. v. Sprint, et. al.*, USDC Northern District Case No.: 3:17-cv-068474-WHA.  Waiting time penalties are not recoverable for meal or rest break premiums. See *Ling v. P.F. Chang's China Bistro, Inc.,* 245 Cal. App. 4th 1242, 1261 (2016); *Kirby,* 53 Cal. 4th at 1256 (the nonpayment of wages is "not the gravamen of a Section 226.7 violation. Instead [Section 226.7] defines a legal violation solely by reference to an employer's obligation to provide meal and rest breaks."). Any waiting time penalties also stopped accruing on the date the Complaint was filed, January 29, 2019. *See* 2002 Update of the DLSE Enforcement Polices and Interpretations Manual (revised), 4.5 (citing Code of Civil Procedure § 22); *Sillah v. Command Int'l Sec. Servs.,* 154 F. Supp. 3d 891, 918 (N.D. Cal. 2015).  Defendant also challenged ability of Plaintiff to represent this diverse group of employees.

**MEMORADNUM OF POINTS AND AUTHORITIES**

(Hawkins Decl., ¶ 35). *Naranjo et al. v. Spectrum Security Services, Inc.* No. B256232 (Cal. Ct. App. Sept. 26, 2019), the Appeals Court ruled that actions to recover unpaid meal period premiums under Labor Code section 226.7 do not entitle employees to derivative penalties under Labor Code section 203 (waiting time penalties) or section 226 (inaccurate wage statements). The California Supreme Court is currently deciding this issue.

Defendant also argued Plaintiff and the class members regularly took meal breaks, clocked out for meal breaks, and that most stores have a room for employees to eat their meals.  Defendants also argued that the vast majority of the time, Plaintiff and the Class Members receive completely uninterrupted duty-free meal periods and breaks, and that Plaintiff would be hard pressed to identify times when they worked while on a meal periods. (Hawkins Decl., ¶ 36).

Defendant also argued that Class Members are free to spend their meal breaks however they wish and can spend that time to eat, read or go to their cars, or leave the premises, or sleep. (Hawkins Decl., ¶ 37).

Defendant also argued that because putative class members record their meal periods, there is simply no common record of whether an employee actually chose to work through meal periods despite being provided meal periods. Defendant also argued if employees had any concerns that he or she was not provided with the opportunity to take a break, he or she could report this through the verifications that employees complete at the end of every pay period and/or daily.  In addition, Defendant argued that its policies encouraged employees to raise such concerns with management and/or Human Resources.  (Hawkins Decl. ¶ 38).

Accordingly, absent the present Settlement, the further conduct of this litigation will likely span several additional years and require the dedication of extensive resources, if class certification was granted, to establish the merits

- 14 -

**MEMORADNUM OF POINTS AND AUTHORITIES**

of all class claims at trial or through contested motion practice.

The issues and arguments Class Counsel has encountered and overcome in arriving at the parties' negotiated settlement terms were many and complex, and required skillful advocacy that can arise only out of experience, professional perspective, and success. The claims asserted are the types of claims Defendants have alleged depend upon highly individualized inquiries. Yet, Class Counsel has successfully advocated for an excellent resolution of claims that are complex, evidence intensive, and nuanced, and can be very challenging to certify. Class Counsel will also be required to dedicate significant time and resources to proving the merits of the claims, prevailing on them at trial, and withstanding any appellate challenges by Defendant. Class Counsel has invested substantial effort and numerous hours in litigating this action through complex meet and confer efforts. There is no doubt that future contested litigation will undoubtedly require continued investment of significant time and resources of all parties and the Court.

### 3. Risk of maintaining class action status throughout the trial

Plaintiff and Class Counsel recognize that the issues of liability and class certification present significant uncertainty and risk, and the proposed Settlement has accounted for this fact. If Plaintiff were unable to certify or otherwise prevail on the class claims, a judgment would be entered for Defendant, and the Class Members would receive nothing. The proposed Settlement, in contrast, offers a guaranteed reasonable value to the Class Members that fairly and reasonably accounts for the very real risks of continued litigation. Plaintiff will also be required to establish a significant amount of witness testimony, pattern and practice evidence, statistical evidence, sampling evidence, expert testimony, and other evidence in order to evaluate and present arguments at trial if class certification was granted. (*Id.*). Defendant vigorously contested liability, the amount of claimed damages, and the propriety of Class certification, and would have continued to do so through trial. (Hawkins Decl., ¶¶ 14-51).

- 15 -

**MEMORADNUM OF POINTS AND AUTHORITIES**

Although Plaintiff believes the claims are strong on their face, all of Plaintiff's claims on a class-wide basis faced a finding of potential individualized issues at certification.  (*Id.*).  Defendant contended that the issue of whether or not an employee worked off the clock without pay, was properly provided with all required meal periods and rest breaks on any given day is highly dependent on individualized facts and numerous credibility determinations, and should not be susceptible to class wide determination.

As a result of the parties' positions, their understanding of the merits of their claims and defenses, the anticipated further lengthy duration of this litigation and the expenses and resources it will require, and Plaintiff's contemplation of the considerable risk that Defendants could defeat certification and prevail on its defenses, thus defeating any and all recovery for the Class Members, Plaintiff and Class Counsel believe it is prudent to settle the claims on the terms set forth in the Settlement Agreement.

### 4.      The amount offered in settlement

Here, Defendants will pay a GSF of $2,750,000.  After Court-approved deductions of the items referenced above, an estimated $1,673,334 will be available for distribution to the Participating Class Members.  (Hawkins Decl., ¶ 14).  While it is possible that the Class Members would have collected more than the GSF if Plaintiff prevailed on the class claims at trial, the negotiated GSF represents approximately 9% of the potential recovery available for the class claims which results in an average value of approximately $288 and highest payout value of approximately $1,037. (Hawkins Decl., ¶¶ 45, 46).

Through analysis and review of Defendant's timekeeping and payroll record production, in including Plaintiff's own evidence, Plaintiff's Counsel estimated Defendant's potential maximum damages and penalties exposure on claims for the failure to authorize and permit rest periods at $2,520,000, the meal period claim at $4,725,000, the minimum wage/OT Claim at approximately

**MEMORADNUM OF POINTS AND AUTHORITIES**

$5.250,000. (Hawkins Decl. at ¶¶ 17). Liquidated damages if recoverable and depending on the number of opt-ins and willfulness under FLSA could potentially double this figure. (the FLSA overtime claim overlaps with the California Labor Code overtime claim). *Id.* Plaintiff valued the maximum LC section 226 at approximately $4,470,225, the LC 203 maximum claim at approximately $4,200,000, and the 2698 PAGA claim at approximately $8,900,000. The value of the LC 2802 claim was valued at approximately $962,500. (see Hawkins Decl. at ¶¶11-46 for analysis). These values totaled approximately 31 million in alleged exposure.

Given the defenses raised by Defendant and the further risk of losing at certification and/or trial, and the time and resource commitment it would entail, the general facial compliance of Defendant's practices and timekeeping records, the Settlement amount is reasonably balanced with the strength of Plaintiff's claims to provide a fair recovery on behalf of the class. (*See, e.g., Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("in balancing, "a proposed settlement is not to be judged against a speculative measure of what might have been awarded in a judgment in favor of the class."") (citation omitted); *see also, id.* at 527 ("it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial.") (citations omitted)).

Plaintiff respectfully submits the proposed Settlement is fair, reasonable, and adequate, given the inherent risks of litigation, the risk that class certification may be denied, and the costs of pursuing the litigation through trial and subsequent appeals. (Hawkins Decl., ¶ 53, 54). Additionally, as each Class Member's settlement payments are dependent on his or her total workweeks over the Class Period in proportion to other Class Members workweeks during the Class Period, Class Members will receive a proportionate share of the settlement. (*Id.*).

**MEMORADNUM OF POINTS AND AUTHORITIES**

**5.      Extent of discovery completed and stage of the proceedings**

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." (*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 528 (C.D. Cal. 2004)).  This putative class action has been in litigation over a year and a half years.   Both sides have engaged in extensive investigation, including production of voluminous timekeeping and payroll records and other data, policies and procedures, training and relevant personnel file documents. (Hawkins Decl., ¶¶ 5-10).

Although sufficient discovery has been conducted to ensure that the Settlement is fair, adequate and reasonable, there remains substantial litigation ahead without settlement, including extensive deposition and motion practice relating to discovery of additional contested class information, briefing and preparation for trial, further expert discovery and disclosures, class certification, trial preparation, and the trial itself.

Armed with all of the relevant information, and with the help of an experienced mediator, counsels for the parties have participated in a lengthy, serious and informed negotiations and mediation with a highly regarded wage and hour mediator. (Hawkins Decl., ¶¶ 5-11). It was only after the parties conducted multiple conferences of counsel and exchanged communications with the mediator that the parties agreed to the Settlement terms now before the Court for preliminary approval.  (*Id.*).  This class action has reached the stage where the parties and their counsels have a clear view of the strengths and weaknesses of their claims and defenses sufficient to support their decision to agree to the Settlement and its negotiated terms.

**6.      The experience and views of counsel**

"Great weight" is normally given to the opinion of counsel regarding class settlement.  (*DIRECTV*, 221 F.R.D. at 528).  The Settlement was a product of serious, informed, and non-collusive negotiations overseen by a well-

- 18 -

**MEMORADNUM OF POINTS AND AUTHORITIES**

1  respected mediator.  The Class is represented by experienced counsel, and the

2  parties exchanged a significant amount of documents and information such that

3  Class Counsel can make an informed recommendation about the proposed

4  settlement.

5  Counsel for Plaintiff and the Class Members has represented,

6  litigated, mediated and settled numerous wage and hour class actions before

7  numerous state and federal courts, and has sufficient knowledge of the strengths

8  and weaknesses of the methods of compensation to evaluate the fairness of the

9  proposed Settlement.  (Hawkins Decl.,¶¶ 10, 12, 51, 59).  Class Counsel is highly

10  experienced in complex wage and hour class action litigation, and believes the

11  Settlement to be fair.  (Hawkins Decl., ¶ 59).  Plaintiff respectfully submits the

12  Settlement should be entitled to a presumption of fairness and granted

13  preliminary approval.

14  **B.    The Requirements for Conditional Certification Are Satisfied**

15  Parties may settle a class action before class certification and stipulate that

16  a defined class be conditionally certified for settlement purposes.  (*See, e.g.,*

17  *Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003)).  Under Rule 23(a) of the Federal

18  Rules of Civil Procedure (e.g., Rule 23(a)), a class action is appropriate when there

19  is sufficient:  1) numerosity that joinder of all members is impracticable; 2)

20  common questions of law or fact to the class; 3) typicality between the claims of

21  the class representative and the class members; and 4) the class representative and

22  class counsel will fairly and adequately protect the interests of the class.  (*Id.*).

23  Upon satisfying Rule 23(a) requirements, Rule 23(b) (3) allows for certification if

24  there is sufficient predominance of the class member's claims over those of

25  individuals, and a class action is superior to other available methods for fairly and

26  efficiently adjudicating the controversy. (Rule 23(b) (3)).  Plaintiff respectfully

27  submits that conditional certification is appropriate because the Settlement

28  Agreement satisfies the requirements of both Rule 23(a) and Rule 23(b) (3).

- 19 -

**MEMORADNUM OF POINTS AND AUTHORITIES**

### 1.   The Class is sufficiently numerous

The Settlement Class is comprised of approximately 5,800 present and former employees of Defendant during the class period.  It would be impracticable to attempt to join all these Class Members given the efficiencies afforded by class treatment, and numerosity is sufficient under Rule 23(a) (1).

### 2.   There are questions of law and fact common to the Class

The requirement for common questions of law and fact under Rule 23 (a) (2) is satisfied by a low threshold showing.  (*Hanlon*, 150 F.3d at 1019-1020 (emphasizing the "minimal requirements" and "permissive" construction of Rule 23(a) (2)).  Plaintiff submits there are several common questions of law and fact corresponding to the seven causes of action of the operative Complaint and the prayer for relief.  Common questions, such as whether or not Defendant's failure to provide lawful meal periods, pay meal period premiums, pay all wages for off the clock work, timely pay wages upon separation, provide accurate itemized wage statements, violates the California Labor Code and related provisions, predominate and can be resolved and proven for all Class Members by reference to uniformly applied policies and practices and common company records.  (Hawkins Decl. ¶¶ 64, 65).  The class claims are well-suited for class resolution as they present common questions of law and fact.

### 3.   Plaintiff's claims are typical of those of the Class members

Typicality under Rule 23(a)(3) requires the class representative's claims to be "reasonably co-extensive with those of absent class members; they need not be substantially identical." (*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.1998)).  Plaintiff's individual claims are identical to those of the Class Members because they are class-wide claims for:  (1) Failure to Pay Wages including overtime; (2) failure to reimburse mileage; (3) Failure to Provide Rest Periods; (4) Failure to Provide Meal Periods; (5) Failure to Timely Pay Wages; (6) Violations of the Unfair Competition Laws; which have also given rise to (7) a

- 20 -

**MEMORADNUM OF POINTS AND AUTHORITIES**

PAGA cause of action under Labor Code Section 2698 *et seq.* (Hawkins Decl., ¶ 65; Ex. 2-Navarrete Declaration). Plaintiff has asserted that each of these class claims are based upon Defendant's uniformly applied policies and practices, and the legal standards and requirements for proving the subject wage and hour claims under the California Labor Code are the same for Plaintiff's individual claims and those of all Class Members. (*Id.*).

### 4.   Plaintiff and Class Counsel are adequate

Adequacy under Rule 23(a) (4) concerns whether the class representative will "fairly and adequately protect the interests of the class." This inquiry involves two questions: "(1) do the named Plaintiff and their counsel have any conflicts of interest with other class members and (2) will the named Plaintiff and their counsel prosecute the action vigorously on behalf of the class?" (*Hanlon*, 150 F.3d at 1020). Both requirements are satisfied here.

There is no antagonism between Plaintiff as the Class Representative and the Class Members because they all assert the same underlying claims for the same relief based upon the same violations arising from the same policies and practices. (*See generally* Plaintiff Navarrete Decl.) Plaintiff's declaration provides further support for the adequacy to serve as Class Representative, recognizes the requested incentive award is subject to Court approval, and establishes what was done to provide significant assistance to undersigned counsel in prosecuting the class claims against Defendant and arriving at the proposed Settlement.

Counsel for Plaintiff and the Class Members have represented, mediated and settled numerous wage and hour class actions before state and federal courts, and have extensive experience in litigating complex class actions such as this. (Hawkins Decl., ¶ 56). Numerous Courts have found Plaintiff's counsel to be adequate to serve as a class counsel under either Rule 23 or Section 382 of the California Code of Civil Procedure, and Plaintiff's counsel has achieved excellent results for the classes it has represented. (*Id.*).

- 21 -

**MEMORADNUM OF POINTS AND AUTHORITIES**

### 5.     Common questions predominate over individual

The predominance requirement under Rule 23(b) (3) is also satisfied here, as Plaintiff believes that common questions of law and fact predominate over individual questions.  (*See, e.g., Hanlon,* 150 F.3d at 1022).   Plaintiff alleges that the proposed Class in this case is sufficiently cohesive, since all Class Members share a common nucleus of facts and potential legal remedies as alleged in the Complaint.  (Hawkins Decl., ¶¶ 57-59).  Plaintiff also alleges that common questions about payment of wages, or lack thereof, for worked performed by Class Members predominate over individual questions, and the Class Members' potential legal remedies are identical rather than individualized.  (*Id.*).  These common issues present a significant aspect of the case and permit determination of liability on a class-wide basis, and thus predominate under Rule 23(b) (3) over any individualized inquiries.  (*See Hanlon*, 150 F.3d at 1022).

### 6.     Class resolution is superior to other available methods

Class-wide treatment of this dispute is superior to individual litigation under Rule 23(b) (3).  The alternative method of resolution to granting conditional certification and preliminarily approving the Settlement Agreement would require approximately 5,800 individual claims for relatively small amounts of damages.  (Hawkins Decl., ¶ 59).  However, individual cases would be uneconomical for potential plaintiffs and their counsel because the cost of litigation dwarfs their potential recovery.  (*Id.*).  All these individual cases would also be looked upon unfavorably by Defendants and the Court because it would cause an extensive duplication of efforts and resources.  A class action is the superior method of resolution under Rule 23(b) (3) is well-justified.

### C.     The Proposed Class Notice Is Adequate

Plaintiff and Class Counsel respectfully submit that the parties' proposed Notice of Class Action (Settlement, Exhibit A and B) comport with the procedural and substantive requirements of Rule 23. Under Rule 23, due process requires that

**MEMORADNUM OF POINTS AND AUTHORITIES**

class members receive notice of the settlement and an opportunity to be heard and participate in the litigation. (*See* Rule 23(c) (2) (B); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985)).

The Settlement Agreement provides for a notice plan that includes mailing a notice to all Class Members based upon the last known addresses in Defendant's records along with a NCOA search to confirm or find updated or forwarding addresses for any Class Members. (Settlement, ¶ 4.4; Hawkins Decl. ¶¶ 52-54). The parties have agreed to an experienced Settlement Administrator, ILYM Group, Inc., who provided a competitive bid and is experienced in class action settlement administration and will mail the Notice. The Notices that are returned as undeliverable, will be re-mailed to the forwarding address.  (Settlement, ¶ 7.2.1; see also concurrently filed declaration of Sean Hartranft-ILYM Group).  As required by the Settlement, the Notice provides the procedures for Class Members to make to object or exclude themselves from the Settlement.  (Settlement ¶¶ 4.4, 4.5, 4.6). The Notice informs Class Members they have forty-five (45) days to exclude or object to the Settlement.  Plaintiff and Class Counsel respectfully submit the proposed Class Notice satisfies the requirements of Rule 23(c) (2) (B).

It is also requested that the Court approve ILYM Group Inc., as the Administrator and preliminarily approve administration expenses of $55,000 as reasonable.

### D.      Requested Fees, Costs, and Enhancement Are Reasonable

As the Class Representative, Plaintiff is an adequate Class Representative as he has provided extensive supporting documents, and assisted counsel greatly. (Hawkins Decl., ¶¶ 60-62; *see also generally*-Navarrete Decl.).

Plaintiff and Class Counsel also submit the requested attorneys' fees in the amount of 33 1/3% of the GSF) is fair and reasonable, and Defendant does not object to this fee request. Counsel requests that the Court determine the appropriateness of the fee award based upon the percentage of the common fund

**MEMORADNUM OF POINTS AND AUTHORITIES**

approach.  (*See Williams v. MGM-Pathe Commun. Co*., 129 F.3d 1026, 1027 (9th Cir. 1997) (finding the lower court abused its discretion by improperly awarding attorneys' fees based upon the class members' claims against the fund)).  Class Counsel also requests reasonable costs up to $20,000 subject to documentation. Class Counsel has been the only counsel to represent Class Members in this matter, and has borne the entire risk and costs of litigation on a pure contingency basis. (Id.).

## V.   NOTICE TO THE LWDA

On July 23, 2020, notice of the settlement was served upon the LWDA. (Hawkins Decl., ¶ 60).

## VI.   CONCLUSION

Plaintiff, without opposition from Defendant, respectfully submits that the proposed settlement is fair, adequate, and reasonable and is in the best interests of the Class Members.  In view of the foregoing and the documents submitted herewith, the parties respectfully request that the Court grant preliminarily approval of the terms of their Settlement Agreement, approve the form and content of the related Notice, conditionally certify the Class, appoint Plaintiff as the Class Representative, counsel as Class Counsel, and ILYM Group, Inc., as the Administrator, and enter the [Proposed] Order concurrently provided for the Court's review and approval.

Dated: July 17, 2020                              JAMES HAWKINS APLC

By: /s/ Gregory Mauro
_____
James R. Hawkins, Esq.
Gregory Mauro, Esq.

Attorneys for Plaintiff ANTONIO NAVARRETE and for Members of the Class and Subclasses

**MEMORADNUM OF POINTS AND AUTHORITIES**