James R. Hawkins, Cal Bar No. 192925
Gregory Mauro, Cal Bar No. 222239
JAMES R. HAWKINS, APLC
9880 Research Drive, Suite 200
Irvine, California  92618
Telephone:  949.387.7200
Facsimile:  949.387.6676
Email: james@jameshawkinsaplc.com
          greg@jameshawkinsaplc.com
Attorneys for Plaintiffs ANTONIO
NAVARRATE individually and on
behalf of all others similarly situated

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| ANTONIO NAVARRETE, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>SPRINT/UNITED MANAGEMENT COMPANY, a Kansas Corporation; SPRINT CORPORATION, a Kansas Corporation;  and DOES 1-50, inclusive,<br><br>        Defendants. | Case No. 8:19-cv-00794-JLS-ADS<br>Hon. Josephine L. Staton<br><br>**DECLARATION OF JAMES HAWKINS ISO PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND REPRESENTATIVE ACTION SETTLEMENT**<br><br>Date: November 20, 2020<br>Time: 10:30 a.m.<br>Courtroom: 10A<br><br>Complaint Filed:  January 29, 2019<br>FAC: January 28, 2020<br>Trial Date: None Set |

**DECLARATION OF JAMES HAWKINS**

## DECLARATION OF JAMES R. HAWKINS

I, James Hawkins, declare as follows:

1.      I am an individual over the age of 18.  I am a partner at the Law Firm of James Hawkins, APLC ("Counsel" or "Class Counsel" or "Class Counsel").  I am one of the attorneys of record for named Plaintiff Antonio Navarrete ("Plaintiff" or "Class Representative"), who has filed this class action on behalf of the Class Members. I submit this Declaration in support of the Motion for Preliminary Approval ("Motion") of the class settlement agreement, which is filed concurrently herewith, along with the Memorandum of Points and Authorities.  I have personal knowledge of the facts set forth below, and if called to testify regarding them, I could and would do so competently.

2.      On January 29, 2019, Plaintiff filed this putative class action against Defendant seeking to represent all of Defendant's non-exempt employees in California who worked in retail stores alleging the following causes of action: (1) failure to pay minimum wages including overtime; (2) failure to provide meal periods; (3) failure to provide rest periods; (4) failure to timely pay wages; (5) unreimbursed expenses; (6) unfair competition; and (7) PAGA.  On February 11, 2019, Plaintiff exhausted his remedies with the LWDA regarding the PAGA claims and filed a separate PAGA action pending on April 5, 2019. A stipulation to amend the complaint to add claims for PAGA to this action was filed on January 28, 2020. (Dkt. No. 21). Defendant denies and continue to deny the allegations in this Action.

3.      Defendant owns retail stores in California which it sells cell phones and related products to its customers. Plaintiff and the Class Members worked at Defendant's various retail stores throughout California.

4.      Pursuant to the Settlement, the "Class" or "Class Members" means means all current and former non-exempt employees  of  Defendant  Sprint/United Management  Company  who  worked  in Defendant's retail stores in the State of California during the Class Period of February 25, 2016, through April 8, 2020. Defendant represents there are approximately 5,785 Class Members who worked

- 1 -

**DECLARATION OF JAMES HAWKINS ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

approximately 350,000 workweeks. (Settlement ¶ 2.5; 4.8). If the number of workweeks submitted by Defendant to the Settlement Administrator exceeds 350,000 by ten percent (10%), Plaintiff shall have the option in its sole discretion to rescind/void the Settlement. Class Members who do not exclude themselves will receive settlement payments from the NSA calculated and apportioned from the GSF based on their workweeks earned over the Class Period. Therefore, the more workweeks Class Members earned, the more they were alleged to have suffered violations.

5.      From the inception of the litigation, the parties have vigorously litigated their respective positions in connection with all aspects of this litigation. Such investigation has included, inter alia, the exchange of information and documents including information and documents which included production of over 800 pages of documents covering policies and procedures relating to the alleged claims, relevant policies on timekeeping, pay schemes, meal and rest periods, job descriptions and duties, Plaintiff's time and payroll records, time and pay records for a sampled group of the putative Class Members which consisted of tens of thousands of lines of data, Defendant's locations in California during the class period, and the compensation information relating to the Class Members such as workweeks worked.

6.      As more specifically discussed below, the discovery permitted Class Counsel to conduct extensive and comprehensive damages analyses and have a clear view of the strengths and weaknesses of their claims and defenses to determine potential liability for each of Plaintiff's claims.

7.      This information also resulted in numerous meet and confer sessions between Representative of the Parties. Counsel for the Parties have further investigated the applicable law as applied to the facts discovered regarding the alleged claims of Plaintiff and potential defenses thereto, and the damages claimed by Plaintiff on behalf of the Class. The parties also met and conferred regarding the

**DECLARATION OF JAMES HAWKINS ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

issues and merits of the case as well as the suitability of the named Plaintiff's claims for class treatment, the adequacy of the named Plaintiff to represent the proposed Class, and other class certification issues.

8.    Defendant has denied and continues to deny each of the claims and contentions alleged by Named Plaintiff in this lawsuit. Defendant has repeatedly asserted and continues to assert defenses thereto, and has expressly denied and continues to deny any wrongdoing or legal liability arising out of any of the facts or conduct alleged in the lawsuit. Defendant also has denied and continues to deny, inter alia, the allegations in the amended complaint.  Defendant has concluded that any further defense of this litigation would be protracted and expensive for all Parties. Substantial amounts of time, energy, and resources of Defendant have been and, unless this Settlement is made, will continue to be devoted to the defense of the claims asserted by Named Plaintiff. Defendant has, therefore, agreed to settle in the manner and upon the terms set forth in the Settlement Agreement to put to rest the claims as set forth in the Settlement Agreement.

9.    After conducting comprehensive review and analysis, many meetings, and ongoing exchanges of documents and information, on December 10, 2019, the Parties participated in a mediation session before mediator Gig Kyriacou, Esq., an experienced mediator who has mediated numerous wage-hour class actions.  At the conclusion of the mediation session, the Parties reach a settlement for $2,750,000 to resolve the Parties' dispute.  The Parties then worked to arrive at the final form of the Settlement Agreement that is now before this Court for preliminary approval.

10.    Based on those negotiations and a detailed knowledge of the issues present in this action, counsel for Plaintiffs and the purported class is convinced that this Settlement is in the best interest of the Class Members.

11.    The main thrust of Plaintiffs' claims against Defendant has centered around the failure to pay wages for off the clock work including minimum wage, overtime,  and meal periods under the California Labor Code.  Among other things, these claims have also resulted in the derivative claims as alleged in the amended

**DECLARATION OF JAMES HAWKINS ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

complaint.   Plaintiff alleged Defendant required Plaintiff and the Class Members to perform duties pre and post shift in the form of preparation and tear down work all while off the clock.  These practices also resulted in meal periods and rest periods being interrupted or untimely.  Further, due to the work demands of Defendant, it is alleged the rest periods and meal periods were not always provided according to California law and were either untimely, short or not provided at all.

12.   More specifically, damage calculations included the following data points: 1) average wage rate of $20; 2) average overtime rate of $30; 3) total workweeks equals 350,000; 4) average daily rate equals $160; 5) estimated employees who quit or discharged as defined in the settlement agreement is approximately 1,389.

13.   In light of the above and the nature of the litigation process in general, Plaintiff recognize that the issues of liability and class certification present significant uncertainty and risk.  If Plaintiff were unable to prevail on these claims, a judgment would be entered for Defendant, and members of the Class would receive nothing.   The proposed Settlement, in contrast, offers a guaranteed, significant value to the Class that fairly and reasonably accounts for the very real risks of litigation.   Based on the parties' own independent investigations and evaluation, I am of the opinion that the settlement for the consideration and on the terms set forth in the Settlement is within the range of approval, and is fair, reasonable, and adequate and is in the best interests of the Class in light of all known facts and circumstances and the expenses and risks inherent in litigation and certification.   The issues and arguments Class Counsel has encountered and overcome in arriving at the parties' negotiated settlement terms were many and complex, and required skillful advocacy that can arise only out of experience, professional perspective, and success.

14.   Subject to the Court's approval, the parties have agreed to settle this action for the Gross Settlement Fund ("GSF") of Two Million Seven Hundred and Fifty Thousand Dollars and Zero Cents (**$2,750,000.00**). This sum shall include all

- 4 -

**DECLARATION OF JAMES HAWKINS ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

payments made to class members that do not exclude themselves, the Court-approved enhancement award to the Class Representative in the amount of $5,000, the Court-approved Administration Costs in the amount of $55,000, and the Court-approved Class Counsel attorneys' fees in the amount of $916,666.67 or as otherwise approved by the Court and costs not to exceed $20,000, and PAGA award in the amount of $100,000 of which seventy five percent ($75,000 will be paid to the LWDA and $25,000 will be distributed to the  Settlement Class Members.  In the event the Court grants approval of these requested amounts, the total NSA available to be paid to Participating Class Members will be approximately $1,673,334.  The Settlement is not dependent on the Court awarding any particular amount to Class Counsel in attorneys' fees, costs, or expenses or to the Class Representative for the enhancement award, and the Net Settlement Amount distributable to the Class will increase if the Court awards lesser amounts than those requested for attorneys' fees, costs, expenses, and enhancement awards.

15.    The Settlement affords the Class prompt and substantial relief, while avoiding significant legal and factual obstacles that otherwise may have prevented them from obtaining any recovery at all.  Indeed, the outcome of class certification, trial and any attendant appeals, are inherently uncertain.

16.    This case also has the potential to impose enormous litigation costs on all of the parties, as Defendant is expected to continue challenging Plaintiff's allegations and to increase the pace of their investigation.  Although it is difficult to foresee the ultimate result of a trial, we anticipate an expensive, complex and time-consuming process.  We foresee the possibility of a lengthy and costly appeal regardless of the outcome of trial given the ever changing legal landscape governing this case.  In order to succeed on the merits, the Class would also need to prevail on the several hotly disputed legal and factual issues discussed herein.

17.    Through analysis and review of Defendant's timekeeping and payroll record production, in including Plaintiff's own evidence, Plaintiff's

**DECLARATION OF JAMES HAWKINS ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Counsel estimated Defendant's potential maximum damages and penalties exposure on claims for the failure to authorize and permit rest periods at $2,520,000[1], the meal period claim at $4,725,000[2], the minimum wage/OT Claim at claim at approximately $5.250.000[3].   Liquidated damages under FLSA would double this figure. (the FLSA overtime claim overlaps with the California Labor Code overtime claim).   *Id.*  Plaintiff valued the maximum LC section 226 at approximately $4,470,225[4], the LC 203 maximum claim at approximately $4,200,000[5], and the 2698 PAGA claim at approximately $8,900,000[6].   The value of the LC 2802 claim

---

[1] The estimated rest period damages were calculated by assuming a 10% violation rate per workweek at the average hourly rate of $20.00 of the number of qualifying shifts.  The rest period claim discounted by 90% given the viable defenses as discussed below and the likelihood of defeat on class certification given the great potential for individualized questions.

[2] The estimated meal period damages were calculated based on a 15% meal period violation rate multiplied by the average hourly rate and then multiplied by the total workshifts.

[3] This amount was calculated taking the average overtime rate of $30.00 and multiplying it by the average off the clock work time per workweek (0.5 hrs). Taking the OT rate to account for off the clock work assuming the individual worked more than 8 hours in a day or more than 40 hours in a workweek covers the minimum wage claims.  Average shifts were calculated at approximately 7.5 hours. This amount would decrease if the number of off the clock hours did not result in overtime hours.  Taking 0.5 hours of unpaid time per workweek multiplied by the $30 overtime rate would equal $5,250,000.  If nothing was recovered under California law, liquidated damages may be available if all eligible persons decided to opt in to the FLSA collective action and if the claimed violation rates could be proven by Plaintiff. Further, the regular rate claim was found to be of little to no value as Defendant maintained a policy of recalculating overtime rates to capture earned commissions over the same period in which overtime was worked.

[4] There is a cap of recovery at $4,000 per Class Member.  Taking approximately a 25% pay period violation rate multiplied by $100 would yield $4,470,225. These amounts were also discounted not only on the merits arguments but also by taking into account for the potential release of over 2000 class members for the LC 226 settled claim in the related *Caudle, et. al. v. Sprint, et. al.* USDC Northern District Case No. Case No. 3:17-cv-06874-WHA.

[5] This amount was calculated by taking into account the average daily wage of 160 X 30 x 3,500 X .25 = $4,200,000.  These amounts were discounted by taking into account for the higher "willfulness" prong standard and also for the potential release of over 2000 class members in the LC 203 class in the related *Caudle, et. al. v. Sprint, et. al.* USDC Northern District Case No. Case No. 3:17-cv-06874-WHA.

[6] Based on the statutory period, the PAGA Claim assumed approximately 178,000 total pay periods.  Thus the damages were calculated ($50 X 178,000) = $8,900,000 and value was based on all the defenses discussed herein and below as well as the possibility the court may award a lesser amount pursuant to LC 2699 (e) (2).  Thus the amount allocated for PAGA is the settlement is reasonable.

**DECLARATION OF JAMES HAWKINS ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

1   was valued at approximately $962,500[7] providing for  an average 5 miles per week

2   at 0.55 cents per mile multiplied by the 350,000 workweeks.

3        18.    Minimum wage laws require employers to pay non-exempt employees

4   for all hours worked.   In *Armenta v. Osmose, Inc*., 135 Cal. App. 4th 314

5   (2006), the California Supreme Court upheld the California Second Appellate

6   District's holding that employees who alleged that their employer had failed to pay

7   them for certain hours they worked off the clock had violated the state minimum

8   wage laws with respect to every hour they worked but were not paid. The employer

9   defended the claim with the argument that the employees' average hourly pay for

10  the workweek was greater than the minimum wage, which defeated any claim for

11  minimum wage under the federal "averaging method" for determining minimum

12  wages. Id at 314.  The *Armenta* court, however, rejected the averaging method and

13  instead adopted the position set forth in a DLSE Opinion Letter that California

14  requires that the minimum wage be paid for each and every hour worked. Id. at

15  324-25.   Accordingly, regardless of the total compensation an employee earns

16  during a week, or even during a single day, if there are hours the employee has

17  worked for which the employee was paid less than the minimum wage, then the

18  employer has violated Labor Code Section 1194 by failing, for the hours in

19  question, to pay minimum wage. (see also *Mendiola v. CPS Security Solutions, Inc.*

20  (2015) 60 Cal. 4th 833. Under this standard, "it is only necessary that the worker be

21  subject to the control of the employer in order to be entitled to compensation."

22  *Morillion v. Royal Packing Co.* (2000) 22 Cal. 4th 575, 584. The *Morillion* Court

23  reasoned that an employee is under the employer's control and entitled to

24  compensation when the employer "'directs, commands or restrains' an employee."

25  *Morillion, supra,* 22 Cal. 4th at 583, quoting from *Bono Enterprises, Inc. v.*

26  *Bradshaw* (1995) 32 Cal. App. 4th 968, 975.

27        19.    Here, Plaintiff argued Defendant failed to pay wages for all hours

28

- 7 -

**DECLARATION OF JAMES HAWKINS ISO MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

worked, which also resulted in overtime being owed. Plaintiff also argued the demands of Defendant caused Plaintiff to forego meal periods and rest periods.

20.    Plaintiff has also alleged other claims for unfair competition, unpaid expense reimbursement under Section 2802, and penalties for inaccurate wage statements under Section 226, waiting time penalties under Section 203, 204, and penalties under PAGA, with the majority of these claims flowing from minimum wage, overtime and meal period claims. While Plaintiff believes in the strength of their allegations and claims, there is no certainty they could prove sufficient systematic violations at Defendant's hands to certify the Class in the absence of a settlement. In addition, as discussed in more detail below, Defendant has presented numerous defenses to most claims, if successful, would result in no liability to Defendant.

21.    Plaintiff faced risk prevailing on the minimum wage and overtime claim. Because Defendant did not record hours worked for off the clock, the assumed rate for this claim would be 30 minutes per week as to all Class Members. Further discount was provided for this claim as arguably Defendant was only required to pay minimum wage for these claims which during the Class Period was less than $15.00 per hour.

22.    Defendant defended against the minimum wage claim by contending that amounts are not recoverable where such unpaid time was never reported and was not known to Defendant. Defendant produced time records for a sampled group of Class Members for the relevant time period, which are prima facie evidence of hours worked and as to be entered by the employees themselves. Defendant contends that its time records are accurate and encompass all compensable time. Defendant contended Plaintiff would be required to put forth evidence to meet their burden of establishing that these time records were inaccurate. Additionally, Defendant asserted that Plaintiff has the burden of proving that Defendant knew or should have known of any off-the-clock work for which Plaintiff alleges that the Class was not paid, and Defendant has contended

- 8 -

**DECLARATION OF JAMES HAWKINS ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

that its revised protocols and procedures implemented after several prior lawsuits regarding the same claims were resolved and also that such protocols provided in place required employees to accurately record their time and notify managers of time that was not accurately recorded.  Defendant further argued it had no reason to know individuals were working off the clock.  *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1051-52 (2012).

23.     Further, Defendant contends that Plaintiff's estimate as to 30 minutes per week per person for alleged off-the-clock work could not be justified by any set of facts.  Finally, Defendant has also asserted that even if it is found to have failed to pay any member of the Class any minimum wages due, liquidated damages are not appropriate because the act or omission giving rise to the action was in good faith, and Defendant had reasonable grounds for believing that the act or omission was not a violation of any provision of applicable law relating to minimum wage or overtime.  In support of this defense, Defendant has, among other things, produced documents demonstrating that it provided policies concerning accurate payment of wages and has continually asserted that its time records are accurate and cover all compensable time.  Defendant also argued that any potential damage recovery for minimum wage or overtime would be at the applicable minimum wage rate, not at the employee's regular rate of $20 per hour.

24.     There were also other issues with the overtime claim. For one, it is not reasonable to assume that all alleged off-the-clock time would have been paid at overtime rates, particularly given that the average workweek for some was less than 40 hours a workweek and less than 8 hours in a workday.  Instead, it is more reasonable to assume that no more than about 1/2 of any alleged off-the-clock time (assuming it could be proven in the first place) would be in the overtime threshold.  Therefore, if you assumed that all of the alleged off-the-clock time noted above was compensated at the minimum wage during the class period of either $9 (2016), $10 (2017), or $11 (2019) in 2020, then the alleged failure to pay wages for off the

**DECLARATION OF JAMES HAWKINS ISO MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

clock work would be reduced by at least 1/3 to ½ because the $20 average rate of pay would be about half if calculated at the state minimums.

25.    With regards to the meal period and rest period claims, Defendant argued the issue of whether Defendant's scheduling resulted in a failure to provide meal and rest breaks or, alternatively, whether individual choices of Class members resulted in missed, late, and/or short meal and rest periods was highly individualized.  Defendant does not believe that any set of facts would justify the claimed violation rate.  Defendant also claimed its policies provided for meal periods and permitted and authorized rest periods, and that they consistently provided for appropriate opportunities for meal and rest periods.   Based upon these asserted defenses as to the meal and rest periods, Plaintiff assigned a 10% value to the rest periods and a 20% value of success on the meal period claims assuming a class was certified and what damages could be proven and taking into account all defenses.

26.    With regards to the FLSA claim, Plaintiff also faced issues of wilfullness and a two versus three year limitations period.  Further, since class were paid under California law for eight hours in a workday and over forty hours in a workweek, the FLSA claim was duplicative and prevented double recovery of overtime wages. Additionally, Defendant argued that it customarily paid overtime wages, had a policy and practice in place, and that when individuals claimed they were not paid for work or certain hours, Defendant had a policy in place to investigate the claim and pay the employees accordingly.  Further, the Class were required to record tier time accurately and speak with management if they felt they were not paid for their work time.

27.    Since the California Labor Code is more protective than the FLSA in that is provides for payment of over time over 8 hours in a workday and/or over 40 hours in a workweek, the California labor code claims for minimum wage and overtime encompass the FLSA claims.  Congress enacted the FLSA in 1938 to

**DECLARATION OF JAMES HAWKINS ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

establish nationwide minimum wage and maximum hours standards. *Moreau v. Kleynhagen,* 508 U.S. 22, 25 (1993).

28.    The FLSA requires employers to pay covered employees overtime compensation of one and one-half times the regular rate of pay for all hours worked in excess of forty hours per week California law requires employers to pay time-and-a-half for hours worked in excess of eight hours in any given workday. Cal. Lab. Code § 510(a); *Advanced-Tech Sec. Servs., Inc. v. Superior* Court, 163 Cal. App. 4th 700 (2008) (explaining that, in contrast to Cal. Lab. Code § 510(a), the FLSA "does not require overtime payments for a workday in excess of 8 hours.").

29.    Plaintiff would also need to prove willfulness under the FLSA to apply a 3 year versus 2 year limitations period pursuant to 29 U.S.C. §255.  This would potentially be difficult for Plaintiff to do given Defendant's assertion regarding its lack of knowledge of the alleged violations, given the comprehensive time records maintained by Defendant, and given the evidence presented by Defendant of such things as training on pay-related issues and timekeeping.  Absent a finding of a willful violation, the potential FLSA overtime recovery would probably be reduced by almost 1/3 for this reason alone.  Defendant further asserted that any alleged acts or omissions of Defendant were in good faith, and Defendant had reasonable grounds for believing that any alleged acts or omissions were not violations of the FLSA, and thus liquidated damages are not appropriate.  29 U.S.C. §§216, 260.

30.    Finally, Plaintiff potentially faced arguments from Defendant to the extent Defendant paid the Class Members premiums as defined in 29 U.S.C. §§207(e)(5), those premiums are creditable toward overtime compensation payable under the FLSA pursuant to 29 U.S.C. §207(h)(2). This means that where Defendant already paid an employee a premium for hours worked (such as for time worked over eight in a day), that premium is creditable toward overtime over 40 in a workweek.  Defendant's payroll records indicate that such types of premiums

- 11 -

**DECLARATION OF JAMES HAWKINS ISO MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

were paid and would therefore need to be credited against any overtime alleged to be due. As a result, the allocation is fair, reasonable and justified

31.     Counsel for Plaintiff was also faced with potentially valid defenses relating to the LC 226 claim and LC 203 claims.  For instance, with regards LC 226, Plaintiff would have to show "injury" prior to the enactment of SB1255 in 2012 effective 2013.  Effective 2013, LC 226 (a) provided for presumed injury if one of the nine enumerated categories of information were not present.

32.     Defendants also argued in support of their contention that there can be no section 226 claim for noncompliant wage statements based only on meal or rest period violations because section 226(a) does not require a wage statement to include itemized listings of premium payments. The California Supreme Court is currently deciding in *Naranjo et al. v. Spectrum Security Services, Inc.* No. B256232 (Cal. Ct. App. Sept. 26, 2019), whether the Court of Appeals ruling that actions to recover unpaid meal period premiums under Labor Code section 226.7 do not entitle employees to derivative penalties under Labor Code section 203 (waiting time penalties) or section 226 (inaccurate wage statements). The California Supreme Court is currently deciding this issue.  *Nguyen v. Baxter Healthcare Corp.*, No. 8:10-cv-01436 CJC (SSx), 2011 U.S. Dist. LEXIS 141135, 2011 WL 6018284, at *8 (C.D. Cal. Nov. 28, 2011).

33.     Further, Defendant argued the wage statements provided for all the categories of information pursuant to LC 226 (a) and thus no injury can be shown on a class basis as individual inquiries would dominate this claim.  Further, the penalties could only be recovered for the one-year limitations period.  Lastly, Plaintiff was also faced with arguments that pay stubs themselves were accurate and provided to the employees, even if they did not include the off the clock work. Class Counsel considered these arguments and valued this claim as discussed above.

34.     Further, Defendant also contends that Section 226(a) does not provide

- 12 -

**DECLARATION OF JAMES HAWKINS ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

that the requirements for an itemized wage statement or for maintaining records are violated merely because the statement and records, although otherwise provided and maintained, may have allegedly included an error in the payment to an employee. Finally, Defendant has argued that any failure with respect to wage statements was not knowing and intentional and thus the penalties provided by California Labor Code §226(e)(1) are inapplicable, particularly because Defendant contends that Plaintiff never informed Defendant's management that there were any uncorrected discrepancies or uncorrected errors in their pay or wage statements despite opportunity to do so

35.   Class Counsel also assessed the strengths and weaknesses of the LC § 203 claim.  Under this claim, the "willfulness" prong is a required element for success.  Defendant argued many if not most of the employees were paid all their wages upon discharge and denied any wages were owed.  Defendant also argued that LC 203 was derivative of the other claims of the Plaintiff, meaning that a recovery is only available if Plaintiff prevails on the underlying claims for alleged failure to pay wages.  Further, these amounts were discounted by taking into account the higher "willfulness" prong standard and also for the release of over potentially 2000 class members for LC 203 claim in the related *Caudle, et. al. v. Sprint, et. al.* USDC Northern District Case No. Case No. 3:17-cv-06874-WHA which release period is through June 2019.  Class Counsel recognized the risk of an adverse finding on certification and at trial as to this claim given Defendant's policies and procedures, and related prior settlements at the time of mediation.

36.   For example, if Defendant was successful on its defenses to the other underlying claims, Plaintiff cannot recover for the associated derivative § 203 claim.  Furthermore, if only minimum wages are recovered, the LC 203 penalty is alleged to be  limited to 30 days of pay at the minimum wage, not the regular wage rate, which would further reduce the recoverable amount by almost 1/3.  *Armenta v. Osmose, Inc.*, 135 Cal.App.4th 314, 326 (2005).  Given the many disputed issues of

- 13 -

1   fact, the time records maintained by Defendant, and other defenses, a finding of

2   willfulness could prove difficult, and thus the LC 203 valuations are appropriate.

3     37. Defendant also argued the PAGA claim provided for double recovery,

4   was confiscatory and oppressive and that the civil penalty was subject to Court

5   discretion which would reduce the amount for recovery from the maximum $200

6   per pay period to a nominal or zero penalty amount.  Defendant argued it acted in

7   good faith as evidenced by its policies and at all times complied with applicable

8   law.  Defendant further argued that any penalty should be at $50 per pay period, not

9   $200, because it had no prior notice of any alleged violations.  Finally, Defendant

10  contends that the PAGA claim would be unmanageable otherwise (disagreeing with

11  Plaintiff).  Further, the PAGA claim for penalties was dependent on the success of

12  the underlying claims of the aggrieved employees, and, even if successful, the

13  amounts were also uncertain.  *Amaral v. Cintas Corp*. No. 2 (2008) 163

    Cal.App.4th 1157.

14    38. Defendant argues that even were liability established, one does not

15  reach the second-tier penalty for that violation unless and until the employer is first

16  cited for the violation, and that Defendant has never been cited.  *See Amalgamated*

17  *Transit Union Local 1309, AFL-CIO v. Laidlaw Transit Servs., Inc.,* 2009 WL

18  2448430 *1, *9 (S.D. Cal. 2009) ("For the purposes of subsequent violation

19  penalties, the issue is not whether [defendant] willfully violated the Labor Code,

20  but rather whether a court or commissioner had notified it of any violation.");

21  *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1209 (2008) ("[u]ntil the

22  employer has been notified that it is violating a Labor Code provision (whether or

23  not the Commissioner or court chooses to impose penalties), the employer cannot

24  be presumed to be aware that its continuing underpayment of employees is a

25  'violation' subject to penalties" at a second tier); *Robinson v. Open Top Sightseeing*

26  *San Francisco, LLC*, No. 14-CV-00852-PJH, 2018 WL 895572, at *20 (N.D. Cal.

27  Feb. 14, 2018) (applying "initial" penalty to each violation of § 226 and §

28  2699(f)(2) because there was no evidence showing defendant was previously

- 14 -

**DECLARATION OF JAMES HAWKINS ISO MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

notified its practice violated § 226); *Willis v. Xerox Bus. Servs., LLC*, 2013 WL 605383, at *1, *6 (E.D. Cal. 2013) ("for a plaintiff to recover for a 'subsequent violation,' an employer must have notice that it has violated the Labor Code").  As such, Defendants contends that Plaintiff's calculation are inflated not only because the "stack" penalties for a single person during a single pay period, but because the penalties Plaintiff would award in each instances are at an inapplicable (doubled) rate.

39.    As discussed above, PAGA grants the Court discretion to lower any PAGA Penalty otherwise due.  *See* Labor Code section 2699 (e)(2).  The Court could reduce any penalty potentially due where, as Defendant contends, any technical violation of law would have been inadvertent and in good faith, particularly where the law is undefined and capable of differing interpretations.  Section 226, for example, is not violated where the employer acted in "good faith."  *See Pedroza v.PetSmart, Inc.,* 2012 WL 9506073 (C.D. Cal. June 14, 2012) ("The good faith defense to the willfulness element of these sections [226, 203] is clearly established under California law); *Woods v. Vector Mktg. Corp.*, 2015 WL 2453202, at *3 (N.D. Cal. May 22, 2015) ("The 'good faith dispute' rule has been extended  by courts to apply to California Labor Code Section 226. In *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504 (2018), the Court of Appeal affirmed a judgment after trial which only provided for a PAGA penalty of $5 per pay period.  Therefore, at trial, any PAGA penalties awarded could be significantly less than Plaintiff's calculation even where Plaintiffs prevailed on the PAGA claim.  If the amount of $5 per pay period from *Carrington v. Starbucks* is used, the potential recovery of civil penalties would be only $53,970, which is less than this settlement provides.

40.    Under PAGA, Courts have considerable discretion to reduce the penalty award.  In *Fleming v. Covidien*, 2011 U.S. Dist. LEXIS 154590 (C.D. Cal. 2011), a federal court reduced PAGA penalties from $2,800,000 to $500,000, a

- 15 -

**DECLARATION OF JAMES HAWKINS ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

reduction of 82.2%, because the court found maximum penalties "unjust" because the employees had suffered no injuries. Some trial courts have actually awarded no civil penalties, even when Labor Code violations are established.  See *Makabi v. Gedalia*, 2016 Cal. App. Unpub. 1489, *5-7 (2nd Dist. Ct. of App. Mar. 6, 2016) (no PAGA penalties were awarded by the Los Angeles County Superior Court) (unpublished decision); *In re Taco Bell Wage & Hour Actions*, 2016 U.S. Dist. LEXIS 48557, *40-43 (E.D. Cal. Apr. 6, 2016) (PAGA penalties denied after trial).

41.    In order to recover any PAGA penalties, Plaintiff would be required at trial to prove each of the underlying Labor Code violations.  See *Cardenas v. McLane Foodservice, Inc.*, 2011 U.S. Dist. LEXIS 13126, *10 (C.D. Cal. 2011) ("Given the statutory language [of PAGA], a plaintiff cannot recover on behalf of individuals whom the plaintiff has not proven suffered a violation of the Labor Code by the defendant.").  Here, Plaintiff would need to prove that each PAGA Group Member suffered all violations for each pay period the employee worked.

42.    However, considering all defenses to the underlying claims coupled with Class Counsel's view of likelihood of success, the reduced value of the PAGA claim based on risks discussed herein, the assigned PAGA payment value is reasonable and appropriate.

43.    With regards to the LC 2802 claim, Defendant's defenses to the expense claim include the following.  First, Defendant contended that Plaintiff could not recover mileage or other expenses when those expenses were not reported or otherwise known by Defendant—i.e., that, for purposes of § 2802, Plaintiff must put forth evidence establishing that Defendant either knew or had reason to know that the alleged expenses were incurred. *Stuart v. Radioshack Corp.*, 641 F.Supp.2d 901. 903 (N.D. Cal. 2009).  Defendant contends its management was not notified of unreimbursed expenses and had no other reason to know about alleged unreimbursed expenses.  Finally, in view of all of this, Defendant contended that

- 16 -

**DECLARATION OF JAMES HAWKINS ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

the amounts claimed by Plaintiff for unreimbursed expenses are far in excess of what could be justified by any set of facts.

44.     The Business and Profession Code, §17200 was dependent upon the success of the underlying claims.  Thus, Plaintiff assigned the same risk values as assigned for the underlying claims discussed above and the recovery would have been the same for the claims in which Plaintiff succeeded.

45.     As discussed above, after deductions for such considerations as to the defenses raised, the differences in the parties' divergent positions as to provable violation rates, the uncertainty of the litigation result, the potential for individualized issues, the expense and time that will be entailed to take this action through trial, and the requirements for establishing penalties, and considering Class Counsel's explanation of the risks of prevailing on each of the claims and the estimated likelihood of success on each of the claims, the potential GSF of $2,750,000 represents approximately 9% of the overall possible value and is fair and reasonable settlement of the estimated total possible liability of the Class' claims of approximately $31,000,000.

46.     As a result, the Settlement provides for an average individual settlement payment value of approximately $288 and a highest payout value of approximately $1,037.

47.     The settlement agreement also appropriately provides that any checks not negotiated within 90 days will be paid to the State of California Controller's Office.

48.     Plaintiff strongly believes that although class-wide damage recovery could be obtained, the inherent risks of continued litigation cannot be overlooked. In addition to considering the risk for success as to each claim, Plaintiff considered a number of variables which could potentially complicate Plaintiff's ability to certify the Rule 23 claims in the absence of a settlement.

49.     More specifically, Defendant argued certification defenses based upon variations in time spent performing job duties such as variation in

- 17 -

**DECLARATION OF JAMES HAWKINS ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Defendant's customers' needs and requirements and the attendant differences in Class member job duties as a result thereof; Defendant's assertion that its various defenses would require highly individualized inquiries to ultimately determine liability for any given Class member. See e.g., *In re Wells Fargo Home Mortg. Overtime Pay Litigation* (9th Cir. 2009) 571 F.3d 953.   Moreover, Defendant argued even if Plaintiff could obtain certification, prevailing on the merits of the claims asserted will require besting significant obstacles. Despite these large number of other defenses to certification, liability and damages raised by Defendant, Plaintiff was able to convince Defendant to settle this matter on grounds very favorable to the Class.  Therefore, the proposed GSF is respectfully believed to be well within the "ballpark" of reasonableness.

50.     Plaintiff's Counsel view this as a fair and reasonable settlement in light of the complexities of the case, the state of the law and uncertainties of class certification and litigation, the policies and practices Defendant has had in place or implemented, and the benefit to be recovered for the Class Members.  Given the risks inherent in litigation and the defenses asserted, Class Counsel believe this Settlement to be fair, adequate, and reasonable and to be in the best interests of the Class Members, such that it should be preliminarily approved.

51.     The Class Representative, Mr. Navarrete, has provided extensive supporting documents, and has assisted counsel in developing information which has been absolutely necessary to litigate and settle this case.  Plaintiff has provided a concurrently filed Declaration in Support of Plaintiff's Motion for Preliminary Approval ("Navarrete Decl.") detailing the efforts and time he has dedicated to prosecuting the class claims.  (*See generally*, Navarrete Decl.).  Plaintiff also conducted extensive record review and consultation with counsel in preparation for responding to discovery requests and to assist in evaluating and proving his claims, has prepared for a potential deposition with counsel, and has dedicated invaluable effort required to advance this matter to resolution. The Settlement provides for a request for the Court to approve an enhancement award to be paid to Plaintiff as the

- 18 -

**DECLARATION OF JAMES HAWKINS ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Class Representative in the amount of $5,000.00. The purpose is to compensate the Class Representative for his claims and to provide him an additional incentive payment, taking into consideration the risks, time, effort and expenses incurred by coming forward to provide invaluable information and negotiate and litigate this matter on behalf of all Class Members.  Additionally, Plaintiff's decision to serve as a Class Representative on behalf of the Class will conspicuously factor into his ability to secure a future job.  The payment of $5,000.00 to the Class Representative is a very small portion of the GSF, and is fair and justified as part of the Settlement given the amount of recovery Plaintiff secured on behalf of the Class.

52.     The parties' proposed Class Notice and Opt Out Form has been incorporated at Exhibit A and B to the Settlement.  The Class Notice plan will entail mailing the Class Notices to all known and reasonably ascertainable class members.  The Class Notices are consistent with the class certification notices approved by numerous state and federal courts, and are believed to be the best notice practicable under the circumstances of this case. The proposed class is ascertainable because all have worked for Defendant and can be identified through Defendant's employee and personnel files and records.

53.     The Class Notice also fulfills the neutrality requirement.  It summarizes the proceedings to date and the terms and conditions of the Settlement in an informative and coherent manner, and is accurate, objective, and understandable to Class Members, as is required under prevailing precedent.  The Notice clearly states the Settlement does not constitute an admission of liability by Defendant and recognizes the Court has not ruled on the merits.  It also states the final settlement approval decision has yet to be made.  Accordingly, the Notice of Class Action Settlement complies with the standards of fairness, completeness and neutrality required of a Class notice.

54.     The Notices also provide for the options of Class Members to object or opt out. The Notice also provides for the proposed enhancement to be paid to the representative.

- 19 -

**DECLARATION OF JAMES HAWKINS ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

55.     The proposed Settlement Administrator ILYM Group, Inc. hereby submits a declaration of Sean Hartranft- outlining the administrator's experience, and curriculum vitae so the Court can evaluate the administrator is experienced and will carry out its duties in administering the Settlement.

56.     I and my firm have a great deal of experience in wage and hour class action litigation.  I have been certified and approved as class counsel in many other wage/hour class actions, and I am currently litigating numerous others before federal and state courts.  Although not an all inclusive list, over the years I have prosecuted the following class action matters as lead and/or co-lead counsel, all of which implicated similar law and facts to those associated with this Action:

a.     ***Carey, et. al. v. Arthur J. Gallagher, et. al.***, USDC, SOUTHERN DISTRICT- Case No.: 09-cv-0168.  Wage and Hour Class action seeking past wages of overtime for mis-classification of insurance claims adjusters employed by Gallagher Bassett, a third party administrator (TPA) in the State of California.  Certification granted.  Plaintiffs' counsel co-lead counsel.

b.     ***Dao v. 3M Company, et al.*** USDC, CENTRAL DISTRICT, Case No. CV-08-04554.  Wage and Hour Class Action case seeking past wages for "off the clock", overtime and meal and rest break violations for production workers in the State of California.  Plaintiff's Counsel appointed as Lead Counsel. Case settled, Final Approval granted, no objections and funds fully distributed.

c.     ***Ortiz v. Kmart***, USDC, CENTRAL DISTRICT, Case No. SACV 06-638 ODW.  Wage and Hour Class Action case seeking past wages for meal and rest period violations for retail employees in the State of California.  Plaintiff's counsel appointed co-lead counsel.  Case settled, Final

- 20 -

**DECLARATION OF JAMES HAWKINS ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Approval granted, no objections and funds fully distributed.

d.   ***Morgan v. Aramark Campus, LLC,*** USDC, CENTRAL DISTRICT, Case No. SACV08-00412.  Wage and Hour Class Action case seeking past wages for meal and rest period violations for retail employees in the State of California.  Plaintiff's Counsel appointed as Lead Counsel.  Case settled, Final Approval granted, no objections and funds fully distributed.

e.   ***West v Iron Mountain Information Management, Inc, et. al.;***   Los Angeles County Superior Court, Case No. BC393709.  Wage and Hour Class Action seeking past wages for overtime, meal and rest break violations for driver employees in the State of California.  Settlement for "binding arbitration."  Arbitration Award for Plaintiff Class.  Arbitration Award confirmed.  Plaintiff's counsel lead trial counsel and class counsel.

f.   ***Gonzalez v. Superior Industries International, Inc.***, et al., Los Angeles County Superior Court, Case No.  BC 357912.  Wage and Hour Class Action seeking past wages for overtime, meal and rest breaks violations for production employees in the State of California.  Plaintiff's counsel appointed as lead counsel.  Case settled, Final Approval granted, no objections and funds fully distributed.

g.   ***Acosta v. Fleetwood Travel Trailers of California, Inc.,*** et al., Riverside County Superior Court, Case No. RIC 440630.  Wage and Hour Class Action seeking past wages for overtime, meal and rest break violations for production employees in the State of California.  Plaintiff's counsel appointed as co-lead counsel.  Case settled, Final Approval

- 21 -

**DECLARATION OF JAMES HAWKINS ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

granted, no objections and funds fully distributed.

h.  ***Walker v. Sharkeez*, et al.,** Orange County Superior Court, Case No.   05CC00293. Wage and Hour Class Action seeking past wages for unlawful deductions, meal and rest break violations for restaurant employees in the State of California.  Plaintiff's counsel appointed as lead counsel. Case settled, Final Approval granted and funds fully distributed.

i.  ***Padron v. Universal Protection Service, et al*,** Orange County Superior Court, Case No. 05CC00013.  Wage and Hour Class Action seeking past wages for overtime, meal and rest break violations for security officers in the State of California.  Plaintiff's counsel appointed as co-lead counsel. Case settled, Final Approval granted, no objections and funds fully distributed.

j.  ***Martinez v. Securitas Security Services USA, et al.,*** Santa Clara Superior Court, Case No. 105-CV047499, et al. J.C.C.P. No. 4460.  Wage and Hour Class Action seeking past wages for meal and rest break violations for security officers employed by defendant in the State of California. Plaintiff's counsel and co-counsel.  Case settled, Final Approval granted and funds fully distributed.

k.  ***Velasquez-Lopez v. Hotel Cleaning Services, Inc. et al.,*** Riverside Superior Court, Case No. RIC 420909.  Wage and Hour Class Action seeking past wages for overtime, meal and rest break violations for housekeepers employed by defendant in the State of California.  Plaintiff's counsel appointed as lead counsel.  Case settled, Final Approval granted, no objections and funds fully distributed.

- 22 -

**DECLARATION OF JAMES HAWKINS ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

l.    ***Ruiz, et al. v. Unisourse Worldwide, Inc., et al.,*** USDC, CENTRAL DISTRICT, Case No. CV09-05848.  Wage and Hour Class Action seeking past wages for meal and rest period violations for non-exempt employees employed by defendant in the state of California.  Case settled.  Awaiting Preliminary Approval hearing.  Plaintiff has petitioned the Court for Lead Counsel.

m.    ***Herrador v. Culligan International Company, et al.,*** USDC, CENTRAL DISTRICT, Case No. SACV 08-680.  Wage and Hour Class Action seeking past wages for field and branch employees of defendant in the State of California.  Plaintiff's counsel appointed as lead counsel.  Case settled, Final Approval granted, no objections and funds fully distributed.

n.    ***Defries v. Domain Restaurants, et al.,*** Orange County Superior Court, Case No. 05CC00128.  Wage and Hour Class Action seeking past wages for restaurant employees of defendant in the State of California.  Plaintiff's counsel appointed as lead counsel.  Case settled, Final Approval granted, no objections and funds fully distributed.

o.    ***Denton v. BLB Enterprises, Inc., et al.,*** Orange County Superior Court, Case No. 07CC01292.  Wage and Hour Class Action seeking unpaid overtime, meal and rest break violations for security guards employed by defendant in the State of California.  Plaintiff's counsel appointed as lead counsel.  Case settled, Final Approval granted, no objections and funds fully distributed.

p.    ***Rios v. Sandberg Furniture Manufacturing Co., Inc, et al.,*** Los Angeles Superior Court, Case No. BC411477.  Wage

- 23 -

**DECLARATION OF JAMES HAWKINS ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

and Hour Class Action seeking unpaid meal and rest break violations for production employees employed by defendant in the State of California.  Plaintiff counsel appointed as lead counsel.  Case settled, Final Approval granted, no objections and funds fully distributed.

q.   ***McMurray v. Dave and Busters, Inc., et al.,*** Orange County Superior Court, Case No. 06CC00099.  Wage and Hour Class Action seeking past wages for meal and rest break violations for restaurant employees employed by defendant in the State of California.  Plaintiff's counsel appointed as co-lead counsel.  Case settled, Final Approval granted, no objections and funds fully distributed.

r.   ***Osuna v. DFG Restaurants, Inc., et al.,*** Los Angeles Superior Court, Case No. BC 330145.  Wage and Hour Class Action seeking past wages of overtime for mis-classification of managers employed by Defendant, DBA Carl's Jrs. in the State of California.  Plaintiff's counsel appointed as co-lead counsel.  Case settled, Final Approval granted, no objections and funds fully distributed.

s.   ***Burns v. Gymboree Operations, Inc.,*** **et al.,** San Francisco Superior Court, Case No. CGC-07-461612.  Wage and Hour Class Action seeking past wages for meal and rest break violations for retail employees employed by defendant in the State of California.
Plaintiff's counsel appointed lead counsel.  Case settled, Final Approval granted, no objections and funds fully distributed.

t.   ***Willems v. Diedrich Coffee, Inc., et al.,*** Orange County Superior Court, Case No. 07CC00015.  Wage and Hour

- 24 -

**DECLARATION OF JAMES HAWKINS ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Class Action seeking past wages of overtime for mis-classification of managers employed by Defendant in the State of California.  Plaintiff's counsel appointed lead counsel.  Case settled, Final Approval granted, no objections and funds fully distributed.

u.  ***Davila, et al. v. Beckman Coulter, Inc., et al.,*** Orange County Superior Court, Case No. 07CC01347.  Wage and Hour Class Action seeking past wages for overtime, meal and rest break violations for production workers employed by defendant in the State of California.  Plaintiff's counsel appointed lead counsel.  Cased settled, Final Approval granted, no objections and funds fully distributed.

v.  ***Perez v. Naked Juice Company of Glendora, Inc.,*** Los Angeles Superior Court, Case No. BC387088.  Wage and Hour Class Action seeking past wages for overtime, meal and rest period violations for production employees employed by defendant in the State of California.  Plaintiff counsel appointed as lead counsel.  Case settled, Final Approval granted, no objections and funds fully distributed.

w.  ***Coordination Proceeding Special Title [Rule 1550(b)] Wackenhut Wage and Hour Cases***, Los Angeles Superior Court, Case No. JCCP 4545.  Wage and Hour Class Action seeking past wages for overtime, meal and rest period violations for security guards employed by defendant in the State of California.  Certification granted.  Plaintiff's counsel appointed as co-lead counsel.  Writ taken.  Court stays action pending Appellate Court ruling.  Court of Appeal issues stay.

57.    The adequacy requirement for certification is also met.  The Class

- 25 -

**DECLARATION OF JAMES HAWKINS ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Representative and Settlement Class Counsel have prosecuted this action vigorously on behalf of the Settlement Class members.  The Class representative will receive a reasonable award for time and efforts assisting counsel with factual issues surrounding the case.  Other than this specific service payment to the Class Representative, all of the Settlement Class members will receive a proportionate share of the set settlement amount, as detailed above.   As a result, there is no conflict of interest between the Class Representative and the Settlement Class members.

58.    Class certification, as requested by the parties for the purposes of the settlement only, should be granted because Plaintiff alleges that the proposed Settlement Class members' claims all stem from the same alleged conduct, *i.e.*, that Defendant violated California law because it:  (1) it failed to pay minimum and overtime wages; (2) failed to provide rest periods and meal periods; (3) failed to timely pay wages; (4) failed to provide accurate itemized wage statements; (5) engaged in unfair competition; (6) failed to reimburse business expenses; (7) engaged in alleged unlawful deductions; and (8) PAGA.  In addition to compensatory damages, Plaintiff and the Settlement Class members seek attorneys' fees, costs, and interest.  Under these specific circumstances, the commonality requirement for class certification is satisfied.   The typicality requirement for certification is also met as it is alleged that the Class Representative and the proposed Settlement Class members were subjected to similar violations based upon similar conduct, policies and practices.

59.    Common questions of law and fact predominate over individual questions, and class-wide treatment of this dispute is superior to individual litigation.  Plaintiff alleges that the proposed Settlement Class in this case is sufficiently cohesive, since all Settlement Class members share a common nucleus of facts and potential legal remedies, and since all of the Settlement Class members and the Class Representative seek compensation for unpaid wages and other civil

**DECLARATION OF JAMES HAWKINS ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

and statutory penalties from Defendant for the llegations described in the complaint.  Common questions about compensation or lack thereof for work performed by Settlement Class members and the Settlement Class members' potential legal remedies are identical.   The alternative method of resolution is individual claims for relatively small amounts of damages, but individual cases would be uneconomical for potential plaintiffs because the cost of litigation dwarfs potential recovery.  Therefore, a class action is the preferred method of resolution.

60.     The Settlement Agreement authorizes Class Counsel to seek from the Court attorneys' fees what would be 33 1/3% of the GSF.   Any amounts not awarded in fees will be added to the Net Settlement Amount—i.e., the Settlement is not dependent on the Court awarding any particular amount to Class Counsel in attorneys' fees, costs, or expenses.   My firm have been the only counsels to represent Plaintiff and the Class Members in this matter, and we have borne the entire risk and cost of this litigation on a pure contingency basis.  The legal issues raised in this case were complex, and drew significantly upon the experience of Class Counsel and our extensive review and analysis of this Action.  In a complex action such as this, which resulted in not only agreed upon recovery to the Class, Class Counsel's proposed attorneys' fees are, at the very least, in keeping with the market rate for contingency fees, reasonable.

61.     Despite the complexity of the case, Class Counsel has, through the investment of substantial effort and the resources of our law firm, been able to secure an outstanding settlement on behalf of the Class Members.  Plaintiff would have faced substantial legal and factual obstacles in demonstrating that class certification was appropriate, and the difficulties inherent in managing and marshalling evidence for class action claims are exponentially multiplied when dealing with such a large number of employees.   Plaintiff will also be required to establish a significant amount of witness testimony, pattern and practice evidence, statistical evidence, sampling evidence, expert testimony, and other evidence in

**DECLARATION OF JAMES HAWKINS ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

order to evaluate and present arguments at both class certification and trial.  The further conduct of this litigation will likely span several additional years and require the dedication of extensive resources to first establish complex class certification and then to establish the merits of all class claims at trial or through contested motion practice.

62.    Class Counsel will provide its lodestar hours at the time it moves for final approval and attorneys' fees.

63.    On or about July 23, 2020, Plaintiff served the proposed settlement on the LWDA.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 17th day of July, 2020 at Irvine, California.

*/s/ James R. Hawkins*

James R. Hawkins

- 28 -

**DECLARATION OF JAMES HAWKINS ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# EXHIBIT 1

JAMES HAWKINS APLC
James R. Hawkins, Esq. (#192925)
Gregory Mauro, Esq. (#222239)
Michael Calvo, Esq. (#314986)
9880 Research Drive, Suite 800
Irvine, CA 92618
Tel.: (949) 387-7200
Fax: (949) 387-6676
Email: James@jameshawkinsaplc.com
Email: Greg@jameshawkinsaplc.com
Email: Michael@jameshawkinsaplc.com

Attorneys for Plaintiff Antonio Navarrete,
individually and on behalf of all others similarly situated

EMILY T. PATAJO, Bar No. 250212
epatajo@littler.com
JYOTI MITTAL, Bar No. 288084
jmittal@littler.com
LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
Telephone:  310.553.0308
Fax No.:    310.553.5583

Attorneys for Defendant
SPRINT/UNITED MANAGEMENT COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO NAVARRETE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SPRINT/UNITED MANAGEMENT COMPANY, a Kansas Corporation; SPRINT CORPORATION, a Kansas Corporation;  and DOES 1-50, inclusive,<br><br>Defendants. | Case No. 8:19-cv-00794-JLS-ADS<br>Hon. Josephine L. Staton<br><br>**JOINT STIPULATION AND CLASS AND REPRESENTATIVE ACTION SETTLEMENT AGREEMENT AND RELEASE**<br><br>Complaint Filed:  February 28, 2019<br>Trial Date: None Set |

- 1 -

This Class and Representative Action Settlement Agreement and Stipulation ("Settlement" or "Settlement Agreement") is made and entered into by Plaintiff Antonio Navarrete, individually and as representative of the Class, as defined below) ("Plaintiff" or "Class Representative"), on the one hand, and Defendant Sprint/United Management Company ("Defendant").

This Agreement is subject to the approval of the Court, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, 28 U.S.C. § 1711 *et seq*. and California Labor Code section 2699, and is made for the sole purpose of attempting to consummate settlement of this Action on a class-wide and representative basis subject to the following terms and conditions. As detailed below, in the event the Court does not enter an order granting approval of the PAGA Settlement, as defined below, final approval of the Class Settlement, as defined below, or the conditions precedent are not met for any reason, this Agreement is void and of no force or effect whatsoever.

NOW THEREFORE, in consideration of the promises and warranties set forth below, and intending to be legally bound and acknowledging the sufficiency of the consideration and undertakings set forth below, Plaintiff, individually and as representative of the Class, and Defendant agree that the Action shall be, and is finally and fully compromised and settled on the following terms and conditions:

## 1.   FACTUAL AND PROCEDURAL BACKGROUND OF ACTION

1.1.   On or about January 29, 2019, Plaintiff Antonio Navarrete filed a putative class action in the Superior Court of California, County of Orange County entitled: *Antonio Navarrete, individually on behalf of himself and others similarly situated, v. Sprint/United Management Company, a Kansas Corporation, Sprint Corporation, a Kansas Corporation, and DOES 1-50, inclusive*, Case No. 30-2019-01047754-CU-OE-CXC.

1.2.   The Complaint alleges the following causes of action: (1) Failure to Pay Wages including Overtime (Labor Code §§ 510 and 1194, and the IWC Wage Order);

JOINT STIPULATION AND CLASS AND REPRESENTATIVE ACTION SETTLEMENT AGREEMENT AND RELEASE

(2) Failure to Provide Meal Periods (Labor Code §§ 226.7 and 512, and the IWC Wage Order); (3) Failure to Authorize Rest Periods (Labor Code § 226.7 and IWC Wage Order); (4) Failure to Timely Pay Wages Due (Labor Code §§ 201-203); (5) Failure to Provide Accurate Wage Statement (Labor Code § 226); (6) Failure to Indemnify Necessary Business Expenses (Labor Code § 2802; (7) Unfair Competition (Business & Professions Code § 17200).

1.3.    On April 5, 2019, Plaintiff filed a related complaint for Penalties Pursuant to Labor Code § 2699 in the Superior Court of California, County of Orange County entitled: *Antonio Navarrete, individually on behalf of himself and others similarly situated, v. Sprint/United Management Company, a Kansas Corporation, Sprint Corporation, a Kansas Corporation, and DOES 1-50, inclusive*, Case No. 30-2019-01062047.

1.4.    On April 30, 2019, Defendant removed the class action to the United States District Court, Central District of California, where the action is currently pending as Case No. 8:19-cv-00794-AG-ADS.

1.5.    The Complaint seeks injunctive relief, as well as recovery of compensatory damages, penalties, interest, and attorneys' fees and costs.

1.6.    On January 29, 2020, Plaintiff filed via stipulation a First Amended Complaint adding a cause of action for Penalties Pursuant to Labor Code § 2699 ("PAGA") ("Amended Complaint").

1.7.    Prior to mediation, the Parties engaged in discovery, including an exchange of information and documentation about *inter alia:* the number of current and former putative class members who worked during the relevant time period; Defendant's operational structure, including breakdown of locations; Defendant's timekeeping, meal period and rest break policies; documents evidencing Defendant's communications, training materials, and procedures for managing payment for all hours worked, meal periods and rest breaks; electronic time and pay records for

putative class members; and other relevant information, including Plaintiff's personnel and payroll file. In or about 2015, Sprint resolved two class action lawsuits with the same claims asserted in this Action. *Bui v. Sprint*, Eastern District of California, Case No. 2:14-cv-02461-TLN-AC, involved a California-only class. *Guilbaud v. Sprint*, Northern District of California, Case No.: 3:13-cv-04357, involved a California-only class and a nationwide FLSA class. As a result of the settlements and release of claims in *Bui* and *Guilbaud,* the Class Period does not begin until February 25, 2016.

1.8.    On December 10, 2019, the Parties participated in an all-day mediation with mediator Gig Kyriacou in Burbank, California in which the matter resolved after lengthy and fully informed negotiations took place.

1.9.    The Parties believe this Settlement is a fair, adequate and reasonable Settlement of this Action and have arrived at this Settlement after lengthy, extensive arms-length negotiations, facilitated by an experienced wage and hour class action mediator, taking into account all relevant factors, present and potential.  This Settlement Agreement shall not be construed in favor of or against any of the Parties by reason of their participation in the drafting of this Settlement Agreement.

1.10. Defendant has denied and continues to deny each and all of the allegations, claims, and contentions alleged by Plaintiff in the Action. Defendant has expressly denied and continues to deny all charges of wrongdoing or liability against it arising out of any of the conduct, statements, acts or omissions alleged in the Action. Defendant contends that it complied in good faith with California wage and hour laws and has dealt legally and fairly with Plaintiff and Class Members. Defendant further denies that, for any purpose other than settling the Action, these claims are appropriate for class or representative treatment. Nonetheless, Defendant has concluded that further proceedings in the Action would be protracted and expensive and that it is desirable that the Action be fully and finally settled in the manner and upon the terms

- 4 -

and conditions set forth in this Agreement in order to dispose of burdensome and protracted litigation, to permit the operation of Defendant's business without further expensive litigation and the distraction and diversion of its personnel with respect to matters at issue in the Action. Defendant has also taken into account the uncertainty and risks inherent in any litigation, especially in complex cases such as the Action. Defendant has, therefore, determined that it is desirable and beneficial to it that the Action be settled in the manner and upon the terms and conditions set forth in this Stipulation

1.11. Plaintiff, on behalf of himself and the Class, along with Defendant, and subject to the approval of the Court, stipulate that the case will be compromised and settled pursuant to the terms and conditions set forth in this Settlement Agreement and that after the date of the Court's final approval of this Settlement Agreement, judgment shall be entered, subject to the continuing jurisdiction of the Court as set forth below, subject to the recitals set forth above which by this reference become an integral part of this Settlement Agreement, and subject to the following definitions, terms and conditions:

## 2. **DEFINITIONS**

As used in this Agreement, the following terms shall have the meanings specified below. To the extent terms or phrases used in this Agreement are not specifically defined below, but are defined elsewhere in this Agreement, they are incorporated by reference into this definition section.

2.1 "**Action**" means the class action litigation titled *Antonio Navarrete, individually on behalf of himself and others similarly situated, v. Sprint/United Management Company, a Kansas Corporation, Sprint Corporation, a Kansas Corporation, and DOES 1-50, inclusive*, pending in the United States District Court for the Central District of California, Case No. 8:19-cv-00794-AG-ADS, and all pleadings filed therein.

JOINT STIPULATION AND CLASS AND REPRESENTATIVE ACTION SETTLEMENT AGREEMENT AND RELEASE

2.2    "**Administrative Expenses**" include all costs and expenses associated with and paid to the Settlement Administrator, which are anticipated not to exceed $55,000.00.

2.3    "**Agreement**" means this Joint Stipulation and Class and Representative Action Settlement Agreement and Release, including any attached exhibits.

2.4    "**Claims**" means all claims for wages and related penalties actually alleged or that could have been alleged in the Action by the Plaintiff, on behalf of himself and the Class Members, based on the facts alleged in the Amended Complaint, including but not limited to: (1) Failure to Pay Wages including Overtime (Labor Code §§ 510 and 1194, and the IWC Wage Order); (2) Failure to Provide Meal Periods (Labor Code §§ 226.7 and 512, and the IWC Wage Order); (3) Failure to Authorize Rest Periods (Labor Code § 226.7 and IWC Wage Order); (4) Failure to Timely Pay Wages Due (Labor Code §§ 201-203); (5) Failure to Provide Accurate Wage Statement (Labor Code § 226); (6) Unfair Competition (Business & Professions Code § 17200); (7) Penalties Pursuant to Labor Code § 2699; and (8) Failure to Pay Wages pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. Additionally, for those Class Members who do not timely and/or properly submit an Opt-Out Request, "Claims" shall include all claims for failure to Pay Wages under the Federal Labor Standards Act.

2.5    "**Class**" or "**Class Members**" means all current and former non-exempt employees of Defendant Sprint/United Management Company who worked in Defendant's retail stores in the State of California during the Class Period of February 25, 2016, through April 8, 2020. Defendant represents there are approximately 5,785 Class Members who worked approximately 350,000 workweeks.

2.6    "**Class Counsel**" means James Hawkins and Gregory Mauro of James Hawkins APLC, 9880 Research Drive, Suite 200, Irvine, California 92618.

2.7    "**Class Counsel's Fees and Expenses**" means the amount awarded to

- 6 -
JOINT STIPULATION AND CLASS AND REPRESENTATIVE ACTION
SETTLEMENT AGREEMENT AND RELEASE

DocuSign Envelope ID: 8F0B8CC2-0960-4D51-8602-A0203C3F0C93

Class Counsel by the Court to compensate them for their fees in prosecuting the Action, not to exceed $916,666, plus reasonable costs actually incurred, not to exceed $20,000.00, as determined by the Court.

2.8    "**Class Notices**" means the two versions of the Notices of PAGA and Class Action Settlement, one directed to Class Members who are also PAGA Releasees and one directed to Class Members who are not PAGA Releasees, as set forth in the form of **Exhibits A and B** attached hereto, or as otherwise approved by the Court, which are to be mailed to Class Members and PAGA Releasees.

2.9    "**Class Representative**" means Plaintiff Anthony Navarrete.

2.10   "**Class Settlement**" means the non-PAGA portion of the settlement embodied in this Agreement, which is subject to Court's preliminary and final approval.

2.11   "**Complaint**" means the Class Action Complaint and the First Amended Class Action Complaint filed in the Action by Plaintiff, in the United States District Court, Central District.

2.12    "**Court**" means the United States District Court for the Central District of California.

2.13   "**Defendant**" means Sprint/United Management Company.

2.14   "**Defense Counsel**" or "**Counsel for Defendant**" means Emily Patajo and Jyoti Mittal of Littler Mendelson, P.C.

2.15   "**Effective Date**" of this Agreement means the date when all of the conditions set forth in Paragraph 6.7 have occurred.

2.16   "**Employee's Taxes and Required Withholdings**" means the employee's share of any and all applicable federal, state or local payroll taxes, including those collected under authority of the Federal Insurance Contributions Act ("FICA"), FUTA and/or SUTA on the portion of any Plaintiff Class Member's Individual Settlement Payment that constitutes wages.  The Employee's Taxes and

JOINT STIPULATION AND CLASS AND REPRESENTATIVE ACTION SETTLEMENT AGREEMENT AND RELEASE

Required Withholdings will be withheld from and paid out of the Net Settlement Fund.

2.17   "**Employer's Taxes**" means and refers to the employer's share of corporate federal, state and/or local payroll taxes, including Medicare taxes, Social Security taxes, federal unemployment taxes, state unemployment insurance taxes, and employment training taxes, that is owed on the portion of any Plaintiff Class Member's Individual Settlement Payment that constitutes wages and any Incentive Award that constitutes wages. The Employer's Taxes shall be paid separate and apart from the Gross Settlement Fund.

2.18   "**Final Approval Hearing**" means the hearing held to determine whether the Court will enter a Final Approval Order finally approving this Settlement.

2.19   "**Final Approval Order**" means the Court's entry of an Order finally approving and granting final judgment of this Settlement.

2.20   "**Gross Settlement Fund**" means the agreed upon non-reversionary settlement amount totaling $2,750,000 to be paid by Defendant in full settlement of the Released Claims and the PAGA Claims asserted in the Action, including the Administrative Expenses, Class Counsel's Fees and Expenses, any Court approved Incentive Award, the PAGA Payment, Employee's Taxes and Required Withholdings, the Net Settlement Fund and all other costs associated with the Settlement.

2.21   "**Incentive Award**" means any additional monetary payment provided to Anthony Navarrete in his capacity as Class Representative, not to exceed $5,000.00, for his efforts and risks on behalf of the Class in the Action, as determined by the Court

2.22   "**Individual Settlement Payment**" means the amount which is ultimately distributed to each Plaintiff Class Member from the Net Settlement Fund, net of any Employee's Taxes and Required Withholdings, separate and distinct from

DocuSign Envelope ID: 4F0B8CC2-0969-4DE1-8602-A5203C3F0C93

the Plaintiff Class Member's share of the PAGA Payment.

2.23   "**Mailing Date**" means the date that the Settlement Administrator initially mails by Regular United States Mail the Class Notices to the Class Members and the PAGA Releasees.

2.24   "**Net Settlement Fund**" means the portion of the Gross Settlement Fund available for distribution to Plaintiff Class Members after deduction of Class Counsel's Fees and Expenses, the Incentive Award, the Administrative Expenses, all Employees' Taxes and Required Withholdings which must be remitted on Individual Settlement Payments and the Incentive Award, and the PAGA Payment.

2.25   "**Notice of Objection**" means a written request by a Class Member to object to this Settlement, which must be completed and filed or mailed in the manner set forth in this Settlement Agreement and the Notice of Settlement.

2.26   "**Notice Period**" means the forty-five (45) calendar day period which begins on the Mailing Date. An Opt-Out Request must be returned to the Settlement Administrator with a postmark dated during the Notice Period to be valid and effective. An objection must be filed with the Court during the Notice Period to be considered.  A written notice disputing the number of Workweeks Worked must be returned to the Settlement Administrator with a postmark dated during the Notice Period for the Plaintiff Class Member to receive the Individual Settlement Payment.

2.27   "**Opt-Out Request**" means a written request from a Class Member requesting exclusion from the Class in accordance with the terms of the Agreement and the Class Notices.

2.28   "**PAGA Claims**" means all disputes, claims, and/or causes of action set forth in Paragraph 5.5.

2.29   "**PAGA Payment**" means the payment to the State of California LWDA and the PAGA Releasees in settlement of all claims for PAGA penalties.

2.30   "**PAGA Payment Check**" means the check issued to each PAGA

JOINT STIPULATION AND CLASS AND REPRESENTATIVE ACTION
SETTLEMENT AGREEMENT AND RELEASE

Releasee for his/her share of the PAGA Payment.

2.31 "**PAGA Releasee**" means an individual who was employed by Defendant at any time as a non-exempt employee from January 29, 2018, through and including April 8, 2020.

2.32 "**PAGA Settlement**" means the PAGA portion of the Net Settlement Fund embodied in this Agreement, which is subject to Court's approval.

2.33 "**PAGA Settlement Period**" means the period beginning on January 29, 2018 through April 8, 2020.

2.34 "**PAGA Pay Periods**" means the number of Pay Periods worked by Class Members between January 29, 2018 and April 8, 2020. Defendant represents there are 178,809 Pay Periods.

2.35 "**Parties**" means Plaintiff, individually and on behalf of all Class Members and all PAGA Releasees and Defendant.

2.36 "**Plaintiff**" means Antonio Navarrete.

2.37 "**Plaintiff Class Member**" means each Class Member who has not timely and properly opted out of the Class Settlement pursuant to Paragraph 4.6 of this Agreement.

2.38 "**Preliminary Approval Order and Order Approving PAGA Settlement**" means an order from the Court: (1) preliminarily approving the Class Settlement; and (2) approving the PAGA Settlement.  .

2.39 "**Released Claims**" or "**Settled Claims**" mean all disputes, claims, and/or causes of action set forth in Paragraph 5.4.

Other than as provided in Paragraphs 5.4 and 5.5, it is understood and agreed that this Agreement will not release any person, party or entity from claims, if any, by Class Members for workers compensation, unemployment, or disability benefits of any nature, nor does it release any claims, actions, or causes of action which may be possessed by Class Members under state or federal discrimination statutes,

JOINT STIPULATION AND CLASS AND REPRESENTATIVE ACTION
SETTLEMENT AGREEMENT AND RELEASE

specifically Cal. Fair Employment and Housing Act, Cal. Government Code § 12940, *et seq.*; the Unruh Civil Rights Act, Cal. Civil Code §51, *et seq.*; the California Constitution; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq.*; the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.*; the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.*; and all of their implementing regulations and interpretive guidelines.

2.40   "**Released Parties**" means Defendant Sprint/United Management Company, its subsidiaries, parents and affiliates, employee benefit plans sponsored or maintained by any of the foregoing, its attorneys, and its respective successors and predecessors in interest; all of their respective officers, directors, employees, administrators, fiduciaries, trustees, beneficiaries and agents; and each of their past, present and future officers, directors, shareholders, members, employees, agents, principals, heirs, representatives, accountants, auditors, consultants, insurers and reinsurers.

2.41   "**Settlement**" means the settlement of the Action effectuated by this Agreement between the Parties (including the Class Settlement and PAGA Settlement).

2.42   "**Settlement Administrator**" means ILYM Group, Inc. who is an experienced, neutral third-party administrator that is approved by the Court responsible for administration of the Settlement and related matters.

2.43   "**Settlement Period**" means the period from February 25, 2016, through April 8, 2020.

2.44   "**Settlement Proceeds Distribution Deadline**" means a date that is 14 business  (14) days after the Effective Date.

2.45   "**Workweeks**" means the number of weeks of employment in California for each Class Member (excluding vacation and leaves of absence) as a non-exempt, retail employee from February 25, 2016 to April 8, 2020. The Settlement

- 11 -

Administrator will calculate the number of Workweeks by calculating the number of weeks in which each Class Member earned non-vacation wages from Defendant in California between February 25, 2016 to April 8, 2020. Any Class Member with less than one complete week of employment will be credited with one workweek. Defendant represents there are approximately 350,000workweeks during the Settlement Period.

## 3.   CLASS CERTIFICATION AND CLASS COUNSEL

3.1   <u>Class Certification</u>.  Solely for the purposes of this Settlement, the Parties stipulate and agree that in order for this Settlement to occur, the Court must certify the following class as defined in section 2. 5: all current and former non-exempt employees of Sprint/United Management Company, who worked in Defendant's retail stores in the State of California at any time from February 25, 2016, through and including April 8, 2020.

3.2   For settlement purposes only, the Parties agree that the Class as defined in 2.5 herein and which will run through April 8, 2020, may be certified in the Action pursuant to Federal Rule of Civil Procedure 23.  The Parties are not certifying any PAGA claims.  In support of this Agreement, Plaintiff will request that the Court certify for settlement purposes the Class as to all non-PAGA claims that have been asserted, which Defendant shall not oppose or object to.

3.3   The Parties intend their Class Settlement to be contingent upon the preliminary and final approval of each and every term of this Agreement, without material or substantive modification, unless the Parties agree to such modification. Except as expressly set forth in this Agreement, if the Court does not so approve this Agreement, the Parties intend this Agreement to become null and void, and unenforceable, in which event the settlement terms set forth herein, including any modifications made with the consent of the Parties, and any action taken or to be taken in connection with this Agreement shall be terminated and shall become null and void

JOINT STIPULATION AND CLASS AND REPRESENTATIVE ACTION
SETTLEMENT AGREEMENT AND RELEASE

and have no further force or effect, and the Class certified pursuant to this Agreement will be decertified for all purposes.

    3.4    <u>Appointment Of Class Representative</u>.  Solely for the purposes of this Settlement, the Parties stipulate and agree Plaintiff Antonio Navarrete shall be appointed as a representative for the Class.

    3.5    <u>Appointment Of Class Counsel</u>.  Solely for the purposes of this Settlement, the Parties stipulate and agree that James Hawkins and Gregory Mauro of James Hawkins APLC shall be appointed as Class Counsel for the Class.

## 4.    NOTICE AND SETTLEMENT ADMINISTRATION PROCESS

    4.1    <u>Identification of Class Members and PAGA Releasees</u>.  Within thirty (30) days after entry of the Preliminary Approval Order and Order Approving PAGA Settlement, Defendant shall provide to the Settlement Administrator a list of PAGA Releasees and Class Members that includes: (1) the names, last known addresses, last known personal telephone numbers (if known), and social security numbers of each Class Member/PAGA Releasee; (2) the total number of Workweeks worked by each Class Member and the total number of PAGA Pay Periods worked by each PAGA Releasee; and (3) such other information that the Settlement Administrator requires to identify Class Members and PAGA Releasees. Defendant agrees to provide the list in an electronic format reasonably acceptable to the Settlement Administrator.  The Settlement Administrator will keep the list confidential, use it only for the purposes described herein, and return it to Defendant upon completion of the settlement administration process.

    4.2    <u>Individual Settlement Payment Calculation</u>. Based on the information in the PAGA Releasee/Class Member list and the formula set forth in Paragraph 7 below, the Settlement Administrator shall promptly calculate the share of PAGA Payment to every PAGA Releasee and an estimated Individual Settlement Payment for every Class Member, to be included in the individualized Class Notices to be sent to that

JOINT STIPULATION AND CLASS AND REPRESENTATIVE ACTION
SETTLEMENT AGREEMENT AND RELEASE

DocuSign Envelope ID: B50B8CC2-0969-4DE1-8602-A0303C3F0C93

Class Member, and shall prepare and mail a spreadsheet setting forth those calculations to Defense Counsel no fewer than five (5) days before mailing the Class Notices to Class Members.  The Class Notices will inform each Class Member of his/her right to do nothing, dispute the number of Workweeks worked, opt out of the non-PAGA payment and release of non-PAGA claims or to object to the non-PAGA payment and release of non-PAGA claims.  It will also inform Class Members that if they first request exclusion from, and opt out of, the Class Settlement and then object, the objections would not be considered valid and that if the Class Members object and then request exclusion from, and opt out of the Class Settlement, the Class Members would be deemed to have waived their objection.

4.3    <u>PAGA Payment Check</u>. Payment to the PAGA Releasees of their portion of the PAGA Payment shall be paid to each of them by way of a single check ("PAGA Payment Check").  The PAGA Payment Check represents the portion of the civil penalties awarded directly under PAGA.

4.4    <u>Notice Procedure</u>. Within twenty (20) days after receipt of the list of Class Members/PAGA Releasees described in Paragraph 4.1 above, the Settlement Administrator shall mail the Class Notices to each Class Member/PAGA Releasee whose address information is known. Prior to this mailing, the Settlement Administrator shall conduct a National Change of Address check as to each address. The mailing shall be sent by first-class U.S. Mail, postage pre-paid. The date that the Settlement Administrator mails the Class Notices is the Mailing Date. It shall be conclusively presumed that each and every Class Member whose Class Notice are not returned to the Settlement Administrator as undeliverable within thirty (30) calendar days after the Mailing Date has received the Class Notices.

4.4.1  The Settlement Administrator shall promptly re-mail any Class Notice returned by the Post Office with a forwarding address. It shall be conclusively presumed that those Class Members/PAGA Releasees whose re-mailed Class Notice

are not returned to the Settlement Administrator as undeliverable within thirty (30) days after re-mailing has received the Class Notice.

The Settlement Administrator shall conduct one additional address search/check via an appropriate skip tracing search for any Class Notice returned by the Post Office as "undeliverable." If an updated address is found, the Settlement Administrator shall promptly re-mail the Class Notice to that address one time.

4.4.2   Class Counsel shall provide to the Court, at or before the Final Approval Hearing, a declaration from the Settlement Administrator confirming that the Class Notices were mailed to all Class Members as required by this Agreement, as well as any additional information Class Counsel and Defense Counsel both deem appropriate to provide to the Court.

4.4.3   The Class Notice shall state the formula to be used in calculating Individual Settlement Payments as calculated by the Settlement Administrator. A Plaintiff Class Member may seek to challenge his or her estimated Individual Settlement Payment set forth in his or her Class Notice.  Such challenges must: (i) be in writing; (ii) state the full name of the Class Member seeking the challenge; (iii) include a statement that the Class Member is seeking to challenge his or her estimated Individual Settlement Payment set forth in the Class Notice; (iv) state the number of Class Workweeks worked that the Class Member believes he or she has worked; (v) signed by the Class Member seeking the challenge; and (v) mailed to the Settlement Administrator with a postmark date on or before the expiration of the Notice Period.  A Plaintiff Class Member challenging his or her Individual Settlement Payment may produce documentary evidence to the Settlement Administrator for consideration and/or challenge. The Settlement Administrator will resolve the challenge and make a final and binding determination without hearing or right of appeal. The personnel records, including payroll records, of Defendant shall be considered by the Settlement Administrator as the presumptive best evidence of the

- 15 -

number of Class Workweeks worked. Such challenges must be mailed to the Settlement Administrator with a postmark date on or before the expiration of the Notice Period.

The Class Notice shall explain that if a Class Member does not opt out of the Class Settlement, such Class Member will receive the Individual Settlement Payment pursuant to the terms of this Agreement. The Parties intend that reasonable means be used to maximize the probability that all Class Members shall receive the Class Notice.

4.4.4 Within ten (10) days after the close of the Notice Period, the Settlement Administrator will provide Defense Counsel with a report by name and last four digits of Social Security Number listing the amount of all Individual Settlement Payments to be made to the Plaintiff Class Members, a list by name of all Class Members who timely opted out under Paragraph 4.6, below, and a list by name of all Plaintiff Class Members who timely objected under Paragraph 4.8 below. Within that same time period, the Settlement Administrator will provide to Class Counsel a report stating the total number of Plaintiff Class Members, the total number of Class Members who timely opted out under Paragraph 4.6, below and the total number of Plaintiff Class Members who timely objected under Paragraph 4.8 below.

4.5 <u>Class Settlement Payment</u>. Any Class Member who wishes to become a Plaintiff Class Member and receive an Individual Settlement Payment must not opt out of the Class.

4.6 <u>Opt-Out Procedure</u>. Any Class Member who wishes to be excluded from the Class Settlement may seek exclusion under this paragraph. However, no PAGA Releasee can seek exclusion from the PAGA portion of the settlement. Unless a Class Member timely and properly opts out of the Class Settlement described in this Agreement, he/she shall be a Plaintiff Class Member and shall be bound by all the terms and conditions of this Agreement, and shall also be bound by the Court's Order

- 16 -

enjoining all Plaintiff Class Members from pursuing, or seeking to reopen, any of the Settled Claims against the Released Parties. A Class Member will not be entitled to opt out of the Class Settlement established by this Agreement unless he or she submits a timely Opt-Out Request as provided in this paragraph. An Opt-Out Request must be: (i) made in writing; (ii) state the full name of the Class Member seeking exclusion; (iii) include a statement that the Class Member seeking exclusion from the Settlement requests exclusion from the Class and does not wish to participate in the Settlement; (iv) signed by the Class Member seeking exclusion from the Settlement; and (v) mailed to the Settlement Administrator with a postmark date on or before the expiration of the Notice Period.

The Opt-Out Request must be completed by the Class Member seeking exclusion from the Class Settlement. Any Class Member who properly submits a timely, complete and valid Opt-Out Request using this procedure will not be entitled to an Individual Settlement Payment and will not be bound by the Settlement or have any right to object, appeal or comment thereon, except that a Class Member that is also a PAGA Releasee will be bound by the release of PAGA Claims set forth in this Agreement and will be issued the PAGA Releasee's share of the PAGA Payment.

PAGA Releasees will not have the opportunity to opt out or object to the PAGA Payment and/or release of PAGA Claims although the PAGA Payment will be subject to Court approval.

4.6.1 Upon receipt of any Opt-Out Request within the Notice Period, the Settlement Administrator shall review the request to verify the information contained therein, and to confirm that the request complies with the requirements of this Agreement.

4.6.2 Any Class Member who fails to submit a timely, complete and valid Opt-Out Request shall be barred from opting out of this Agreement or the Settlement. The Settlement Administrator shall not review or consider any Opt-Out

- 17 -

Request postmarked after the end of the Notice Period. It shall be conclusively presumed that, if an Opt-Out Request is not postmarked on or before the end of the Notice Period, or is not received by the Settlement Administrator, the Class Member did not make the request in a timely or valid manner. Under no circumstances shall the Settlement Administrator have the authority to extend the deadline for Class Members to submit an Opt-Out Request.

               4.6.3 The Settlement Administrator shall give Class Counsel and Defense Counsel a weekly update on the number of Opt-Out Requests it receives that week.

         4.7    <u>Excessive Opt-Out Requests</u>.  If five percent (5%) or more of Class Members timely opt out of the Class Settlement, Defendant shall have the sole and absolute discretion to rescind/void the Settlement within twenty (20) days after receiving from the Settlement Administrator the final list of opt-outs. Defendant agrees to meet and confer in good faith with Class Counsel before rescinding or voiding the Settlement. In the event that Defendant elects to rescind/void the Settlement, they shall provide written notice of such rescission to Class Counsel. Such rescission shall have the same effect as a termination of this Agreement for failure to satisfy a condition of settlement, and the Agreement shall become null and void and have no further force or effect, and the Class certified pursuant to this Agreement will be decertified for all purposes.  If Defendant chooses to terminate this Agreement under this provision, it shall be responsible to pay the Settlement Administrator's fees and costs incurred to that point.  If Defendant chooses to terminate this Agreement under this provision, the Parties may re-negotiate settlement terms.

         4.8    <u>Excessive Workweeks</u>.  If the number of Workweeks submitted by Defendant to the Settlement Administrator exceeds 350,000 by ten percent (10%), Plaintiff shall have the option in its sole discretion to rescind/void the Settlement within twenty (20) days after Defendant's submission of the number of Workweeks

JOINT STIPULATION AND CLASS AND REPRESENTATIVE ACTION
SETTLEMENT AGREEMENT AND RELEASE

to the Settlement Administrator.  In the event that Plaintiff elects to rescind/void the Settlement, they shall provide written notice of such rescission to Defendant's Counsel.  Such rescission shall have the same effect as a termination of this Agreement for failure to satisfy a condition of settlement, and the Agreement shall become null and void and have no further force or effect, and the Class certified pursuant to this Agreement will be decertified for all purposes.  If Plaintiff chooses to terminate this Agreement under this provision, he shall be responsible to pay the Settlement Administrator's fees and costs incurred to that point.  If Plaintiff chooses to terminate this Agreement under this provision, the Parties may re-negotiate settlement terms.

4.9    Objections to Class Settlement.  Any Plaintiff Class Member may object to the Class Settlement. Plaintiff Class Members who wish to object must send their written objections to the Court only by the close of the Notice Period. All objections will be scanned into the electronic case docket and the Parties will receive electronic notices of filing. An objection must state the specific grounds on which it is being made and all supporting facts. The Class Notice will state in substance:

> Any member of the settlement Class who has not opted out can ask the Court to deny approval of the settlement by filing an objection. You can't ask the Court to order a larger settlement; the Court can only approve or deny the settlement. If the Court denies approval, no additional settlement payments will be sent out and the lawsuit will continue. If that is what you want to happen, you must object.

> You may object to the proposed settlement in writing, except you may not object to the PAGA Payment and release of PAGA Claims. You may also appear at the Final Approval Hearing, either in person or through your attorney. If you appear through your own attorney, you are responsible for paying that attorney. All written objections and supporting papers must (a) clearly identify the case and number (*Navarrete v. Sprint/United Management Company, at al.*, Case No.  8:19-cv-00794-AG-ADS), (b) be submitted to the Court either by mailing them to the Class Action Clerk, United States District Court for the Central District of California, Southern Division, 411 W. 4th Street, Santa Ana, CA 92701, or by filing them in person at any location of the United States District Court for the Central District of California, and (c) be filed or postmarked on or before [insert date of the close of the Notice Period].  Class Members who fail to timely mail or file such a written statement of objection shall be foreclosed from making any objection to this Settlement.

JOINT STIPULATION AND CLASS AND REPRESENTATIVE ACTION
SETTLEMENT AGREEMENT AND RELEASE

Class Members who fail to timely file and serve such a written statement of objection shall be foreclosed from making any objection to this Settlement. Only Class Members may object to the Class Settlement. If an objector intends to appear at the Final Approval Hearing, either in person or through an attorney of his/her choice, he or she must also serve and file with his or her objection, a Notice of Intention to Appear. This Paragraph shall be strictly applied and enforced. Failure to comply with its terms shall render an objection ineffective and waived.

4.10  <u>Funding and Distribution of Settlement</u>.  Within ten (10) calendar days after the Effective Date, Defendant shall transfer to the Settlement Administrator an amount equal to the Gross Settlement Fund plus its share of the Employer's taxes. The delivery of the Gross Settlement Fund to the Settlement Administrator plus its share of Employer's taxes shall constitute full and complete discharge of the entire obligation of Defendant under this Agreement. Once Defendant has made such payments, it will be deemed to have satisfied all terms and conditions under this Agreement, shall be entitled to all protections afforded to Defendant under this Agreement, and shall have no further obligations under the terms of the Agreement regardless of what occurs with respect to those sums.  Additionally, no Released Party shall have any further obligation or liability to the Plaintiff, PAGA Releases or Class Members under this Agreement.

4.10.1 The distribution of the PAGA Payments and Individual Settlement Payments to Plaintiff Class Members shall occur on the Settlement Proceeds Distribution Deadline. The Settlement Administrator shall be deemed to have timely distributed all such payments to the Class if it places in the mail Individual Settlement Payments for all Plaintiff Class Members and the PAGA Payments to the PAGA Releasees and the State of California LWDA by the applicable deadlines set forth in this Agreement or by the deadlines set by the Court. No person shall have any claim against the Settlement Administrator, Defendant, Class Counsel, Defense Counsel, or

any other agent designated by the Plaintiff or Defendant based upon the distribution of Individual Settlement Payments and the PAGA Payments made substantially in accordance with this Agreement or further orders of the Court.

4.10.2 Each Individual Settlement Payment check will contain language in substantially the following form: "I understand that by cashing, depositing, or otherwise negotiating this check I will be deemed to have opted into *Antonio Navarrete, individually on behalf of himself and others similarly situated, v. Sprint/United Management Company, a Kansas Corporation, Sprint Corporation, a Kansas Corporation, and DOES 1-50, inclusive*, Case No. 8:19-cv-00794-AG-ADS for purposes of the federal Fair Labor Standards Act (FLSA) release to the extent required to do so under applicable law for purposes of the court-approved settlement therein." Individuals who have timely and properly filed and completed an opt in form in the lawsuit *Amaraut, et. al. v. Sprint/United Management Company*, USDC Case No.: 3:19-cv-00411-WQH-AHG shall receive Individual Settlement Payment checks that do not contain the language above and shall not be deemed to have released their FLSA claim and shall not be entitled to an FLSA credit with an additional 5% of their Workweeks under section 7.2.4.

4.10.3 Any settlement checks that are not claimed or not negotiated within 90 days after distribution by the Settlement Administrator shall be void. Any funds not distributed after the expiration of the settlement checks shall escheat to the State of California Controller's Office to be held in the name of the Class Member who is the payee of the check.

4.10.4 Except as otherwise stated in this Agreement, the Settlement Administrator's distribution of Class Counsel's Fees and Expenses and the Incentive Award from the Gross Settlement Fund shall occur on the Settlement Proceeds Distribution Deadline. Upon such payment, Defendant, the Released Parties, Defense Counsel, and the Settlement Administrator shall have no further liability or

responsibility to Plaintiff, Class Counsel or to any vendors or third parties employed by the Plaintiff or Class Counsel.

4.10.5 Defendant shall not be obligated to make any payments contemplated by this Agreement until the conditions set forth in this Agreement occur.

4.11 <u>CAFA Notice</u>. The Court's subject matter jurisdiction over the Action is based on CAFA. Pursuant to the requirements of the CAFA, within ten (10) days after this Settlement is filed in Court, Defendant will serve the United States Attorney General and appropriate state officials with a notice of the Settlement. The notice shall comply with the requirements of the CAFA

## 5. **RELEASE PROVISIONS**

5.1 <u>Non-Admission of Liability</u>. The Parties enter into this Agreement to resolve the dispute that has arisen between them and to avoid the burden, expense and risk of continued litigation. In entering into this Agreement, Defendant does not admit, and specifically denies, that it has violated any federal, state, or local law; violated any regulations or guidelines promulgated pursuant to any statute or any other applicable laws, regulations or legal requirements; breached any contract, violated or breached any duty; engaged in any misrepresentation or deception; or engaged in any other unlawful conduct with respect to the Plaintiff or any Class Member and/or PAGA Releasee. Neither this Agreement, nor any of its terms or provisions, nor any of the negotiations connected with it, shall be construed as an admission or concession by Defendant of any such violations or failures to comply with any applicable law. Except as necessary in a proceeding to enforce the terms of this Agreement, this Agreement and its terms and provisions shall not be offered or received as evidence in any action or proceeding to establish any liability or admission on the part of Defendant or to establish the existence of any condition constituting a violation of, or a non-compliance with, federal, state, local or other applicable law.

5.2 <u>Dismissal of Claims.</u> Subject to final Court approval and the conditions

specified in this Agreement and entry of judgment and retention of the case for enforcement purposes, and in consideration of the mutual covenants and promises set forth herein, Plaintiff and all Plaintiff Class Members shall dismiss with prejudice all Released Claims, to the greatest extent permitted by law, and Plaintiff and all PAGA Releasees shall dismiss with prejudice the PAGA Claims to the greatest extent permitted by law.

5.3     Conditional Nature Of Stipulation For Certification.   Solely for the purposes of this Settlement, the Parties stipulate and agree to the certification of the Claims asserted on behalf of Class.  Should for whatever reason the Settlement not become effective, the fact that the Parties were willing to stipulate to certification of the Action as part of the Settlement shall have no bearing on, and shall not be admissible in connection with, the issue of whether the Action, or any claim or class, should be certified in a non-Settlement context in this Action or in any other lawsuit. Defendant expressly reserves its right to oppose claim or class certification in this or any other action should this Settlement not become effective.

5.4     Release of All Settled Claims.   As of the Effective Date and to the maximum extent permitted by law, Plaintiff and all Class Members who do not timely and properly opt-out or who have opted-in to the *Amaraut, et. al. v. Sprint/United Management Company* , USDC Case No.: 3:19-cv-00411-WQH-AHG hereby do and shall be deemed to have fully, finally, and forever released, settled, compromised, relinquished and discharged any and all of the Released Parties of and from all of the following claims that arose at any time during the Settlement Period to the maximum extent permitted by law:

5.4.1 Any claims for unpaid wages (including but not limited to minimum wages, regular wages and overtime pay), improper itemized wage statements, improper payroll records maintenance and failure to pay all wages due at the time of termination;

JOINT STIPULATION AND CLASS AND REPRESENTATIVE ACTION SETTLEMENT AGREEMENT AND RELEASE

5.4.2  Any claims under California Labor Code sections 201 through 203, 226, 226.7, 510, 512, 1194, and, 2802 and related provisions contained in the California Wage Orders; the California Business and Professions Code predicated on such Labor Code sections and California Wage Orders, including but not limited to Business and Professions Code section 17200 *et seq.*; and any claims under the Fair Labor Standards Act for unpaid wages (including minimum wages, regular wages and overtime pay), improper itemized wage statements, improper payroll records maintenance and failure to pay all wages due at the time of termination; Individuals who timely and properly filed a completed opt in form in the lawsuit *Amaraut, et. al. v. Sprint/United Management Company*, USDC Case No.: 3:19-cv-00411-WQH-MDD shall not be deemed to have released their FLSA claim and shall not be entitled to an FLSA credit with an additional 5% of their Workweeks under section 7.2.4.

5.4.3  Any claims for damages, penalties, interest, attorney's fees and costs, injunctive relief, declaratory relief, restitution, fraudulent business practices, which were alleged or which could have been alleged based in whole or in part on the factual or legal allegations and/or claims in the Action and/or Plaintiff's January 29, 2019 LWDA Letter.

All claims set forth in this Paragraph 5.4.3 shall be collectively referred to as the "Released Claims" or "Settled Claims."

5.5  <u>Release of PAGA Claims</u>. Upon the Court's approval of the PAGA Payment and this release of PAGA Claims, Plaintiff and the PAGA Releasees and all persons purporting to act on the PAGA Releasees' behalf or purporting to assert a claim under or through them, hereby do and shall be deemed to have fully, finally, and forever released, settled, compromised, relinquished and discharged any and all of the Released Parties of and from any and all PAGA claims premised in whole or in part on any of the claims set forth in sections 5.4.1 through 5.4.3 above that arose at any time from January 29, 2018 (collectively, the "PAGA Claims") through April

DocuSign Envelope ID: B50B8CC2-0969-4D51-8602-A0303C3F0C93

8, 2020.  The PAGA Releasees will be issued a check for their share of the PAGA Payment and will not have the opportunity to opt out of, or object to, the PAGA Payment and release of the PAGA Claims set forth in this Paragraph.  The PAGA Releasees are bound by the release of the PAGA Claims regardless of whether they cash their PAGA Payment Check.

      5.6   <u>Communication to the Class</u>.  The Parties agree for settlement purposes only that, because the Class Members are so numerous, it is impossible or impracticable to have each Class Member execute this Agreement. Accordingly, the Class Notices will advise all Class Members of the binding nature of the release of claims and such notices shall have the same force and effect as if the Agreement were executed by each Class Member.

      5.7   <u>Representation by Plaintiff</u>.  The Plaintiff and Class Counsel represent, covenant, and warrant that they have not directly or indirectly assigned, transferred, encumbered or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or rights herein released and discharged, except as set forth herein.

      5.8   <u>Plaintiff's Complete And General Release</u>.  As to Plaintiff only, the releases set forth in Paragraphs 5.4 and 5.5 above are intended to collectively settle any and all of the Settled Claims and PAGA Claims, whether known or unknown, that he may have against the Released Parties for any acts or omissions occurring on or before the issuance of a Preliminary Approval Order and Order Approving PAGA Settlement. Therefore, as to the Settled Claims and PAGA Claims, Plaintiff waives any and all rights conferred upon him under section 1542 of the California Civil Code, which provides as follows:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

- 25 -

DocuSign Envelope ID: B5DB3CC2-D9C9-4DE1-8602-A9303C3F0C93

In giving this release, Plaintiff acknowledges that he has been fully compensated in connection with his employment by Defendant and the termination of his employment and Plaintiff agrees to execute a confidential settlement agreement with a global release in which he will be provided separate consideration as set forth in Paragraph 2.21 above.

5.9    No Pending Or Future Lawsuits By Plaintiff.    Other than this Action, Plaintiff represents that he does not have any pending lawsuits, administrative complaints or charges against Defendant or the Released Parties in any local, state or federal court or administrative agency.   Plaintiff further acknowledges that all claims raised therein, if any, shall be fully and finally extinguished by virtue of this Settlement Agreement and the Court's Final Approval Order.   Plaintiff further represents that he will not bring any action in the future in which he seeks to recover any damages from Defendant or the Released Parties relating to or arising from Plaintiff's employment up to April 8, 2020, other than an action to enforce his rights under this Settlement Agreement.

5.10    Settlement Approval And Implementation Procedures.    As part of this Settlement, the Parties agree to the following procedures for obtaining the Court's Preliminary Approval of the Settlement, notifying Class Members of the Settlement, obtaining the Court's Final Approval of the Settlement and processing Individual Settlement Payments.

5.11    Release of Claims by Class Counsel. Upon receipt of Class Counsel's Fees and Expenses, as ordered by the Court on final approval of the Class Settlement, Class Counsel shall fully and finally release Defendant and the Released Parties from any and all claims for attorneys' fees and expenses arising from the Action and any claims released by the Plaintiff and Class Members related to the action, whether known and unknown, whether under federal, state and/or local law, statute, ordinance, regulation, common law, or other source of law. Class Counsel's Released Claims and

JOINT STIPULATION AND CLASS AND REPRESENTATIVE ACTION
SETTLEMENT AGREEMENT AND RELEASE

PAGA Claims include, but are not limited to, claims for attorneys' fees and expenses arising from or dependent on the California Civil Code, the California Code of Civil Procedure, the California Labor Code; the Wage Orders of the California Industrial Welfare Commission; California Business and Professions Code sections 17200, *et seq.*; California Labor Code sections 2698, *et seq.*; the California common law of contract and tort, and the Fair Labor Standards Act.

5.12   Labor Code Sections Do Not Apply To Releases. The Parties agree that California Labor Code sections 206.5 and 2804 do not invalidate any provision of this Agreement, because among other things, the claims and Released Claims and PAGA Claims are disputed and contested, and the Settlement was bargained for at arms' length and approved by the Court.

## 6.   COURT APPROVAL AND EFFECTIVE DATES

6.1   Preliminary Approval and Order Approving PAGA Settlement.  Upon execution of this Agreement, the Plaintiff shall file a motion in the Action requesting that the Court enter a Preliminary Approval Order and Order Approving PAGA Settlement as follows:

6.1.1   Approving the PAGA Settlement, including the PAGA Payment, distribution plan of the PAGA Payment, and the release of the PAGA Claims set forth in this Agreement and preliminarily approving for settlement purposes only the remaining portions of the proposed Settlement;

6.1.2 Dismissing the PAGA Claims asserted in the Action with prejudice as to the Plaintiff and all PAGA Releasees and permanently enjoining all PAGA Releasees from pursuing or seeking to reopen the PAGA Claims against the Released Parties;

6.1.3 Preliminarily approving the appointment of the Plaintiff as representative of the Class for settlement purposes only;

- 27 -

JOINT STIPULATION AND CLASS AND REPRESENTATIVE ACTION SETTLEMENT AGREEMENT AND RELEASE

6.1.4  Preliminarily approving the appointment of Class Counsel as counsel for the Class for settlement purposes only;

6.1.5  Appointing and approving the Settlement Administrator as chosen by the Parties and approved by the Court, to administer the claims and settlement payment procedures required by this Agreement;

6.1.6  Approving the form of the Class Notices, and requiring that individualized Class Notice be sent to Class Members;

6.1.7  Approving the plan for the provision of notice to Class Members, as stated herein and in the Class Notices;

6.1.8  Scheduling the Final Approval Hearing for consideration of class certification for settlement purposes and final approval of this Agreement;

6.1.9  Approving the procedure for Class Members to challenge the estimated Individual Settlement Payment set forth in the Class Notice and the date after which no Class Member shall be allowed to submit a challenge;

6.1.10 Approving the procedure for Class Members to opt out of the Class Settlement and the date after which no Class Member shall be allowed to submit a request to opt out; and

6.1.11 Approving the procedure for Plaintiff Class Members to object to the Class Settlement and the date after which no Class Member shall be allowed to object.

6.2   Should the LWDA provide notice of intent to investigate the alleged violations set forth in Plaintiff's January 10, 2019 LWDA Letter, this Agreement is deemed null and void.

6.3   <u>Binding Effect of Agreement on Class Members</u>. Upon the Court's entry of its Final Approval Order, all Plaintiff Class Members shall be bound by this Agreement, and the Action and the Settled Claims shall be dismissed with prejudice and released as against the Released Parties to the greatest extent permitted by law.

JOINT STIPULATION AND CLASS AND REPRESENTATIVE ACTION
SETTLEMENT AGREEMENT AND RELEASE

In addition, unless a Class Member effectively opts out of the Settlement, he or she shall be bound by the Court's Order enjoining all Plaintiff Class Members from pursuing or seeking to reopen Settled Claims against the Released Parties to the greatest extent permitted by law.  Upon the Court's entry of its Final Approval Order and Judgment regarding the PAGA Payment and the release of the PAGA Claims, all PAGA Releasees shall be bound by the release of the PAGA Claims and the PAGA Claims shall be dismissed with prejudice and released as against all the Released Parties to the greatest extent permitted by law.

6.4   Non-Interference With Settlement Procedure. The Parties and their counsel agree that they shall not seek to solicit or otherwise encourage Class Members to submit an Opt-Out Request or an objection to the Settlement or to appeal from the Preliminary Approval Order and Order Approving PAGA Settlement, Final Approval Order or Final Judgment.

6.5   Final Approval Order and Judgment. The Plaintiff (or the Plaintiff jointly with Defendant) will request that the Court enter, after the Final Approval Hearing finally approving the Class Settlement, a Final Approval Order and Judgment. The Plaintiff (or the Plaintiff jointly with Defendant) will request that the Final Approval Order certify the Class for settlement purposes; find that this Agreement is fair, just, equitable, reasonable, adequate and in the best interests of the Class; permanently enjoin all Plaintiff Class Members from pursuing or seeking to reopen Settled Claims against the Released Parties; and require the Parties to carry out the provisions of this Agreement.  Plaintiff agrees to provide his motion for final approval of the class settlement to Defendant for review no later than seven (7) days before the filing date.

6.6   Entry of Final Judgment. The Plaintiff (or the Plaintiff jointly with Defendant) will request that the Court enter, after the Final Approval Hearing, a Final Approval Order and Judgment as agreed to by the Parties.

6.7   Effective Date Of Agreement. The "Effective Date" of the Class

- 29 -

JOINT STIPULATION AND CLASS AND REPRESENTATIVE ACTION
SETTLEMENT AGREEMENT AND RELEASE

Settlement portion of this Agreement shall be the latter of the last date by which all appeals of the Judgment could be filed or when actual appeals are exhausted such that the Judgment becomes final. The Effective Date is conditioned upon all of the following occurring:

6.7.1   This Agreement has been signed by the Parties and Class Counsel;

6.7.2   The Court has entered a Preliminary Approval Order and Order Approving PAGA Settlement;

6.7.3   The Class Notice has been mailed to the Class Members as ordered by the Court in this Action;

6.7.4   The Court has entered a Final Approval Order and Judgment ; and,

6.7.5

6.7.6   Settlement Administrator has provided Defense Counsel with written wire/bank transfer instructions, including the Settlement Administrator's address, the bank name, bank address, account number, account name, ABA number, and SWIFT Code.

The effective date of the PAGA Settlement portion of this Agreement, including the release of the PAGA Claims, shall be the date the approving Court has approved the PAGA Payment and release of the PAGA Claims set forth in this Agreement.

6.8   Automatic Voiding of Agreement if Settlement Not Finalized. If for any reason the Settlement set forth in this Agreement does not become final, the Settlement shall be null and void and all orders, judgment, and dismissal entered pursuant to this Agreement shall be vacated, and the Parties will be returned to the status quo prior to entering this Agreement with respect to the Action, as if the Parties had never entered into this Agreement, and the settlement class certified pursuant to this Agreement will be decertified for all purposes, except where the approving Court has approved the PAGA Payment and release of the PAGA Claims set forth in this

JOINT STIPULATION AND CLASS AND REPRESENTATIVE ACTION
SETTLEMENT AGREEMENT AND RELEASE

Agreement and Defendant has issued the PAGA Payment, the release of the PAGA Claims shall be binding. In addition, in such event, the Agreement (including all exhibits, drafts and related documents, papers, and communications) and all negotiations, court orders and proceedings relating thereto shall be without prejudice to the rights of any and all Parties hereto, and evidence relating to the Agreement (including all exhibits, drafts and related documents, papers, and communications) and all negotiations shall not be admissible or discoverable in the Action or otherwise, except where the approving Court has approved the PAGA Payment and release of the PAGA Claims set forth in this Agreement and Defendant has issued the PAGA Payment, the release of the PAGA Claims shall be binding.

    6.9    <u>Confidentiality and Non-Disparagement and Returning Documents</u>. The Parties agree that the terms of the Agreement shall be confidential until the filing of Plaintiff's Motion for Preliminary Approval. This confidentiality agreement shall not prevent any counsel from conferring with and advising clients who have retained them, provided that the clients agree to abide by this temporary confidentiality agreement.

    6.9.1  The Plaintiff agrees that he shall not promote, or publicize the filing of this Action, the Parties' Settlement, this Agreement and its terms, or the negotiations leading to this Agreement with anyone other than the Court. Notwithstanding the foregoing, the Plaintiff may disclose the terms of this Agreement to his spouse, Class Members, to those persons to whom disclosure is necessary for the preparation of tax returns and other financial reports, and to persons to whom disclosure is ordered by a court of competent jurisdiction or otherwise required by law.  Plaintiff agrees that he may disclose the terms of the Settlement to his spouse, but only so long as he first obtains his spouse's express agreement to maintain information in confidence.

    6.9.2  The Parties and their counsel agree that they will not issue any

press releases, engage in any communications, or take any other action that would directly or indirectly provide the press or media or any litigation reporting service with information about this Action, this Agreement, or the Parties' Settlement or would otherwise enable or allow the press or other media or any litigation reporting service to learn or obtain such information; except that Defendant shall have the right to disclose the Settlement and information related thereto as may be required under federal or state securities laws, under generally accepted accounting principles, or in Defendant's judgment are required under the ordinary course of business, and Defendant shall also have the right to respond in reasonably general terms to inquiries from the media and investment-related entities. Plaintiff and his counsel agree not to post any information concerning this Settlement on the internet or social media, including Facebook, Twitter, Instagram and Snapchat.  The Parties and their counsel further agree that they will not post any information regarding this Agreement or the Settlement on their internet websites or take any such action that would cause or allow such information to be posted on any other internet website or on the web.

6.10   Invalidation of Agreement for Failure to Satisfy Conditions. The terms and provisions of this Agreement are not recitals, but are deemed to constitute contractual terms. In the event that any of the material terms or conditions set forth in this Agreement are not fully and completely satisfied, this Agreement shall terminate and all terms of the Agreement including, but not limited to, the conditional certification of the Class, the payment of Individual Settlement Amounts to Plaintiff Class Members, the payment of attorneys' fees and costs to Class Counsel, the Incentive Award to the Plaintiff, and the payment of the PAGA Payment shall be null and void. In such event, nothing in this Agreement shall be used, construed or admissible as evidence by or against any Party or Released Party as a determination, admission, or concession of any issue of law or fact in this Action, or in any other proceeding for any purpose; and the Parties do not waive, and instead expressly

- 32 -

reserve, their respective rights to prosecute and defend this Action as if this Agreement never existed. In addition, notwithstanding the generality of the foregoing, if this Agreement is terminated for failure to satisfy any of the terms or conditions of this Agreement, Defendant shall not be obligated to create or maintain any type of settlement fund, and shall not be obligated to pay any amount in the Gross Settlement Fund to any Class Member and/or PAGA Releasee, to Class Counsel, to the Settlement Administrator, to the State of California or to the Plaintiff.  In event the approving Court has approved the PAGA Payment and release of the PAGA Claims set forth in this Agreement and Defendant has issued the PAGA Payment, the release of the PAGA Claims shall be binding.

## 7.    **SETTLEMENT PAYMENT PROVISIONS**

7.1    <u>Allocation of Gross Settlement Fund</u>. Subject to Court approval and the conditions specified in this Agreement, and in consideration of the mutual covenants and promises set forth herein, Defendant agrees to make a total settlement payment under this Agreement in the amount of $2,750,000 (the "Gross Settlement Fund"). The Gross Settlement Fund includes, but is not limited to, payments to be made for (1) Class Counsel's Fees and Expenses; (2) the Plaintiff's Incentive Award; (3) Administrative Expenses; (4) PAGA Payment; and (5) Net Settlement Fund. The Parties agree, subject to Court approval, that the Gross Settlement Fund shall be apportioned as follows:

7.2    At the Final Approval Hearing, Class Counsel will apply to the Court for an award of attorneys' fees incurred by Class Counsel in an amount not to exceed $916,666.00, which equals one-third of the Gross Settlement Fund. At the Final Approval Hearing, Class Counsel will also apply to the Court for recovery of actual costs incurred by Plaintiff's counsel in the Action, not to exceed $20,000.  Defendant will not oppose such application provided that Class Counsel does not seek to recover

JOINT STIPULATION AND CLASS AND REPRESENTATIVE ACTION
SETTLEMENT AGREEMENT AND RELEASE

more than the maximum amounts as stated in this Paragraph. Approval of the Settlement shall not be contingent upon approval of the attorneys' fee award or the costs award.

These fees and costs are included in, and shall come from, the Gross Settlement Fund. The Class Counsel's Fees and Expenses approved by the Court shall encompass:  (a) all work performed and costs and expenses incurred by, or at the direction of, any attorney purporting to represent the Class and/or PAGA Releasees through the date of this Agreement; (b) all work to be performed and costs to be incurred in connection with approval by the Court of the Settlement and the termination of this Action; (c) all work to be performed and costs and expenses, if any, incurred in connection with administering the Settlement through the termination of the Action, with prejudice; and (d) may be based inter alia on the Common Fund Doctrine and/or the Catalyst Theory.

Class Counsel must provide Defendant with IRS Forms W-9, so that Defendant may issue IRS Forms 1099 misc. To the extent attorneys' fees are not approved in the full amount of $916,666.00, as set forth above, then the amount not approved will be a part of the Net Settlement Fund for distribution to the Plaintiff Class Members on a pro rata basis. Similarly, to the extent costs sought by Class Counsel are not approved in their entirety, any sum not approved will be a part of the Net Settlement Fund for distribution to the Plaintiff Class Members on a pro rata basis. Except as provided in this Paragraph, upon final approval, each Party shall bear his or its own attorneys' fees, costs, and expenses incurred in the prosecution, defense, and settlement of the Action.

7.2.1  At the Final Approval Hearing, Class Counsel will apply to the Court for an Incentive Award in the amount of up to $5,000.00 to be paid to the Plaintiff for his services and for assuming the risks associated with this litigation. Defendant will not oppose such application. Approval of the Settlement shall not be

- 34 -

JOINT STIPULATION AND CLASS AND REPRESENTATIVE ACTION
SETTLEMENT AGREEMENT AND RELEASE

contingent upon approval of the Incentive Award.

Any Incentive Award is included in, and shall come from, the Gross Settlement Fund. If the Court approves and awards an Incentive Award in an amount less than the $5,000.00, as set forth above, the amount not approved will be a part of the Net Settlement Fund for distribution to the Plaintiff Class Members on a pro rata basis. The Incentive Award payable to the Plaintiff shall be in addition to any Individual Settlement Payments he may receive.

Subject to Court approval, an amount of $75,000.00 shall be paid to the State of California LWDA. This amount is 75% of the $100,000.00 PAGA Payment that the Parties have agreed is to be paid in settlement of all claims for civil penalties under the Labor Code Private Attorneys General Act of 2004, Labor Code sections 2698, *et seq.* ("PAGA"). The remaining 25% of the $100,000 PAGA payment, which amounts to $25,000.00 of the PAGA Payment shall be distributed pro rata to all PAGA Releasees, based on the number of PAGA Pay Periods worked by a PAGA Releasee, as a fraction of the total PAGA Pay Periods worked of all PAGA Releasees. The portion of the PAGA payment to the PAGA Releasees shall be treated entirely as penalties. PAGA Releasees will not have the opportunity to opt out or object to the PAGA Payment and/or release of PAGA Claims set forth in this Agreement although the PAGA Settlement will be subject to Court approval. In the event the LWDA rejects this allocation, the Parties will meet and confer with the Court and the LWDA to reach a penalty allocation acceptable to all parties that does not materially alter the terms of Settlement, nor require Defendant to pay more than the Gross Settlement Fund. At the same time that Plaintiff files his Motion for Preliminary Approval, Plaintiff shall send a copy of the Agreement to the LWDA pursuant to the 2016 amendments to PAGA. The PAGA Payment shall be paid from the Gross Settlement Fund. There are approximately 178,809 PAGA Pay Periods.

7.2.2  Subject to Court approval, an amount of $55,000.00 will be set

- 35 -

aside from the Gross Settlement Fund to cover any of the Settlement Administrator's Administrative Expenses. The Parties agree to use ILYM Group, Inc. as the Settlement Administrator.  If any portion of the $55,000 amount for ILYM Group, Inc.  expenses remains unused, it will go to the Net Settlement Fund.

7.2.3 The Settlement Administrator shall calculate the Employers' Taxes and inform Defendant of the amount of Employers' Taxes to be paid by Defendant separate and apart from the Gross Settlement Fund.

7.2.4 After deducting the amounts specified in Paragraphs 7 each Plaintiff Class Members shall be entitled to a pro rata portion of the remaining amount of the Gross Settlement Fund, which is known as the Net Settlement Fund. Individual Settlement Payments shall be awarded to Plaintiff Class Members from the Net Settlement Fund based on the number of Class Workweeks Worked by the Plaintiff Class Member, as a fraction of the total Class Workweeks worked of all Plaintiff Class Members.

Any Class Members who separated their employment with Defendant between February 25, 2016 and April 8, 2020 will be credited with an additional 5% of their Workweeks for the LC 203 claim. Any individual who worked any time during the FLSA Period from February 25, 2016, through and including April 8, 2020 and who did not timely and properly file and complete an opt in form in the lawsuit *Amaraut, et. al. v. Sprint/United Management Company*, USDC Case No.: 3:19-cv-00411-WQH-AHG will be credited with an additional 5% of their Workweeks.  The Parties agree that the entire amount of the Net Settlement Fund, less applicable Employee's Taxes and Required Withholdings, shall be distributed to Plaintiff Class Members. Any Class Member who is not a Plaintiff Class Member shall not receive an Individual Settlement Payment but if he/she is a PAGA Releasee, such individuals will still receive his/her pro rata share of the PAGA Payment to the PAGA Releasees.

7.3    Taxation of Settlement Proceeds. All Individual Settlement Payments

JOINT STIPULATION AND CLASS AND REPRESENTATIVE ACTION
SETTLEMENT AGREEMENT AND RELEASE

paid to Plaintiff Class Members and any Incentive Award to Plaintiff shall be paid in a net amount after applicable state and federal withholdings, including payroll taxes, have been deducted.

   7.3.1 The Parties agree that thirty-three and one-third percent (33⅓%) of the Individual Settlement Payment distributed to each Plaintiff Class Member will be considered wages, and will be reported as such to each Plaintiff Class Member on an IRS Form W-2. The Parties agree that thirty-three and one-third percent (33⅓%) of the Individual Settlement Payment distributed to each Plaintiff Class Member will be considered civil penalties, and will be reported as such to each Plaintiff Class Member on an IRS Form 1099 misc., if applicable. The Parties agree that thirty-three and one-third percent (33⅓%) of the Individual Settlement Payment distributed to each Plaintiff Class Member will be considered interest and will be reported as such to each Plaintiff Class Member on an IRS Form 1099 misc., if applicable. The foregoing tax allocation shall apply to sums paid to Plaintiff.  The Parties further agree that the PAGA payment distributed to each PAGA Releasee will be treated entirely as civil penalties, and will be reported as such to each PAGA Releasee on an IRS Form 1099 misc., if applicable.

   7.3.2 The Settlement Administrator shall calculate, withhold from each Individual Settlement Payment and the Incentive Award, and remit to applicable governmental agencies sufficient amounts as may be owed by the Plaintiff Class Members and Plaintiff for applicable employee taxes. The Settlement Administrator will issue appropriate tax forms to each Plaintiff Class Member and PAGA Releasee consistent with the foregoing breakdown.

   7.3.3 The Parties agree that the Gross Settlement Fund will qualify as a settlement fund pursuant to the requirements of section 468(B)(g) of the Internal Revenue Code of 1986, as amended, and section 1.468B-1. *et seq*. of the income tax regulations. Furthermore, the Settlement Administrator is hereby designated as the

"Administrator" of the qualified settlement funds for purposes of section 1.46B-2(k) of the income tax regulations. As such, all taxes imposed on the gross income of the Gross Settlement Fund and any tax-related expenses arising from any income tax return or other reporting document that may be required by the Internal Revenue Service or any state or local taxing body will be paid from the Gross Settlement Fund.

7.3.4     All Parties represent that they have not received, and shall not rely on, advice or representations from the other Party or her/its agents regarding the tax treatment of payments under federal, state or local law.

7.4     <u>No Credit Toward Benefit Plans</u>. Except as otherwise required by applicable plan documents, the Individual Settlement Payments, Incentive Award and PAGA Payment made to Plaintiff, Class Members and PAGA Releasees under this Agreement shall not be utilized to calculate any additional benefits under any benefit plans to which any Plaintiff, Class Members and/or PAGA Releasees may be eligible including, but not limited to: retirement plans, profit-sharing plans, bonus plans, 401(k) plans, stock purchase plans, vacation plans, sick leave plans, PTO plans, pension plans, or any other benefit plan. It is the Parties' intention that this Agreement will not affect any rights, contributions, or amounts to which Plaintiff, Class Members and PAGA Releasees may be entitled under any benefit plans.

## 8.     GENERAL PROVISIONS

8.1     <u>Notices</u>. All notices, requests, demands and other communications required or permitted to be given pursuant to this Agreement shall be in writing, and shall be delivered personally or by first class mail to the Settlement Administrator appointed by the Court and to counsel at their respective addresses as set forth below:

## CLASS COUNSEL

James R. Hawkins
Gregory Mauro
Michael Calvo

JAMES HAWKINS APLC
9880 Research Drive, Suite 800
Irvine, CA 92618

**DEFENSE COUNSEL**

Emily T. Patajo
Jyoti Mittal
Littler Mendelson, P.C.
2049 Century Park East, 5th Floor
Los Angeles, CA 90067.3107

    8.2   <u>Nullification Of Settlement Agreement</u>.  In the event: (1) the Court does not enter the Preliminary Approval Order as provided herein; (2) the Court does not enter a Final Approval Order as provided herein; (3) the Settlement does not become final for any other reason; or (4) Judgment is not entered by the Court dismissing the lawsuit as to all Claims as to all Class Members with prejudice, this Settlement Agreement shall be null and void and any order entered by the Court in furtherance of this Settlement shall be treated as void from the beginning.  In such case, the Parties shall be returned to their respective statuses as of the date and time immediately prior to the execution of this Settlement Agreement and the Parties shall proceed in all respects as if this Settlement Agreement had not been executed.

    8.3   <u>Exhibits And Headings</u>.  The terms of this Settlement Agreement include the terms set forth in the **Exhibits A and B** attached, which are incorporated by this reference as though fully set forth herein. **Exhibits A and B** to this Settlement Agreement are an integral part of the Settlement. The descriptive headings of any paragraphs or sections of this Settlement Agreement are inserted for convenience only and do not constitute a part of this Settlement Agreement.

    8.4   <u>Interim Stay Of Proceedings</u>.  The Parties agree to stay all proceedings in the Action, except such proceedings necessary to implement and complete the Settlement, pending the Final Approval Hearing to be conducted by the Court.

    8.5   <u>Amendment Or Modification</u>.  This Settlement Agreement may be

- 39 -

amended or modified only by a written instrument signed by Defense and Class Counsel or their successors-in-interest.

8.6     Entire Agreement.     This Settlement Agreement and the attached **Exhibits A and B** constitute the entire agreement among the Parties, and no oral or written representations, warranties or inducements have been made to any Party concerning this Settlement Agreement or its **Exhibits A and B** other than the representations, warranties and covenants contained and memorialized in the Settlement Agreement and its **Exhibits A and B**.

8.7     Authorization To Enter Into Settlement Agreement.     The person or persons signing this Settlement Agreement on behalf of Defendant represents and warrants that he/she/they are authorized to sign this Settlement Agreement on behalf of Defendant.  Plaintiff represents and warrants that he is authorized to sign this Settlement Agreement and that he has not assigned any Claim covered by this Settlement to a third-party.  Plaintiff, by signing this Settlement Agreement, is bound by the terms herein and further agrees not to submit any Request for Exclusion from or Notice of Objection to the Settlement.  Any such Request for Exclusion or Notice of Objection shall therefore be void and of no force or effect.

8.8     Signature of all Class Members Unnecessary to be Binding.  The Parties agree that because the Class Members are numerous, it is impossible or impractical to have each Class Member execute this Agreement.  The Notice will advise all Class Members of the binding nature of the release provided herein and shall have the same force and effect as if the Agreement were executed by each Class Member.  The only Class Members who will not be bound by the terms of this Agreement are those who submit a timely and valid Request for Exclusion.

8.9     Binding On Successors And Assigns.  This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors or assigns of the Parties hereto, as previously defined.

- 40 -

DocuSign Envelope ID: 8F0B3CC2-0969-4D51-8602-A0203G3F0C93

8.10   <u>Captions</u>. The captions and section numbers in this Agreement are inserted for the reader's convenience, and in no way define, limit, construe, or describe the scope or intent of the provisions of this Agreement.

8.11   <u>California Law Governs</u>.  All terms of this Settlement Agreement shall be governed by and interpreted according to the laws of the State of California.

8.12   <u>Publicity</u>.  Plaintiff and Class Counsel agree that they will not issue any press releases, initiate any contact with the press, respond to any inquiry from the press about this case, or otherwise publicize this Action, the facts of this Action, or the outcome of the mediation or Settlement.  With the exception of a general description of the case and total settlement amount, with no party identifying information, Plaintiff and Class Counsel also agree not to publish the terms of the settlement or any related information on their website(s), for advertising purposes and/or in publication materials generally available to the public.  This provision shall not prevent Class Counsel from referring to this Settlement in court-filed "adequacy of counsel" showings in other class and representative actions.

8.13   <u>Confidentiality Prior to Preliminary Approval</u>.  Plaintiff and Class Counsel agree that they will not disclose the terms of the Agreement unless and until the Agreement is filed with the Court in connection with a motion for Preliminary Approval.

8.14   <u>Mutual Cooperation</u>. The Parties agree to fully cooperate with each other to accomplish the terms of this Agreement, including but not limited to, execution of such documents and to take such other action as may be necessary to implement the terms of this Agreement. The Parties to this Agreement shall use their best efforts, including all reasonable efforts contemplated by this Agreement and any other reasonable efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein.

8.15   <u>Mutual Preparation</u>. The Parties have had a full opportunity to negotiate

JOINT STIPULATION AND CLASS AND REPRESENTATIVE ACTION
SETTLEMENT AGREEMENT AND RELEASE

DocuSign Envelope ID: 8F0B3CC2-0969-4D51-8602-A0303C3E0C93

the terms and conditions of this Agreement. Accordingly, this Agreement shall not be construed more strictly against one party than another merely by virtue of the fact that it may have been prepared by counsel for one of the Parties, it being recognized that, because of the arms-length negotiations between the Parties, all Parties have contributed to the preparation of this Agreement.

8.16   <u>Severability</u>. The Parties to this Agreement agree, covenant, and represent that each and every provision of this Agreement shall be deemed to be contractual, and that they shall not be treated as mere recitals at any time or for any purpose. Therefore, the Parties further agree, covenant, and represent that each and every provision of this Agreement shall be considered severable, except for the release provisions of Paragraph 5 of this Agreement. If a court of competent jurisdiction finds the release provisions of Paragraph 5 of this Agreement to be unenforceable or invalid as against a Class Member, then this Agreement shall become voidable and the payments made pursuant to this Agreement to that Class Member shall be returned to Defendant by that Class Member as to whom the release provisions have been found unenforceable or invalid. If a court of competent jurisdiction finds any provision, other than the release provisions of Paragraph 5, or part thereof to be invalid or unenforceable for any reason, that provision, or part thereof, shall be severed from the Agreement, and all of the remaining provisions of this Agreement shall remain in full force and effect.

8.17   <u>Warranties and Representations</u>. With respect to themselves, each of the Parties to this Agreement and or their agent or counsel represents, covenants and warrants that (a) they have full power and authority to enter into and consummate all transactions contemplated by this Agreement and have duly authorized the execution, delivery and performance of this Agreement; and (b) the person executing this Agreement has the full right, power and authority to enter into this Agreement on behalf of the party for whom he/she has executed this Agreement, and the full right,

JOINT STIPULATION AND CLASS AND REPRESENTATIVE ACTION
SETTLEMENT AGREEMENT AND RELEASE

power and authority to execute any and all necessary instruments in connection herewith, and to fully bind such party to the terms and obligations of this Agreement.

8.18    <u>Representation by Counsel</u>. The Parties acknowledge that they have been represented by counsel throughout all negotiations that preceded the execution of this Agreement, and that this Agreement has been executed with the consent and advice of counsel. Further, the Plaintiff and Class Counsel warrant and represent that there are no liens on the Agreement, and that Defendant may distribute funds to the Class Members, Class Counsel, and the Plaintiff as provided by this Agreement.

8.19    <u>Action to Enforce Agreement</u>. In any suit or court action to enforce the terms of this Agreement, the prevailing party shall be entitled to recover his or its attorneys' fees and costs.

8.20    <u>Authorization by Plaintiff</u>. The Plaintiff authorizes Class Counsel to sign this Agreement and further agrees not to request to be excluded from the Class and not to object to any terms of this Agreement. Any such request for exclusion or objection shall therefore be void and of no force or effect.

8.21    <u>Counterparts</u>.  This Settlement Agreement shall become effective upon its execution by all of the undersigned.  Plaintiff, Class Counsel and Defendant may execute this Settlement Agreement in counterparts, which shall have the same force and effect as if each had signed the same instrument.  Copies of the executed Settlement Agreement shall be effective for all purposes as though the signatures contained therein were original signatures.

IN WITNESS WHEREOF, the Parties and their counsel have executed this Agreement on the date below their signatures or the signature of their representatives. The date of the Agreement shall be the date of the latest signature.

IT IS SO STIPULATED AND AGREED.

Dated: July <u>7/15/2020</u>, 2020

_____
ANTONIO NAVARRETE

JOINT STIPULATION AND CLASS AND REPRESENTATIVE ACTION SETTLEMENT AGREEMENT AND RELEASE

1

2

3    Dated: July _____, 2020        By:_____

4

5                                ON BEHALF OF SPRINT/UNITED MANAGEMENT COMPANY

6    Dated: July _____, 2020        LITTLER MENDELSON, P.C.

7

8                         By:_____
                                EMILY PATAJO, ESQ.

9                         Attorneys for Defendant Sprint/United Management Company.

10

11

12    Dated: July ___16___, 2020      JAMES HAWKINS APLC

13                         By:_____

14                                JAMES R. HAWKINS, ESQ.
                                GREGORY MAURO, ESQ.

15                                MICHAEL CALVO, ESQ.
                                Attorneys for Plaintiff ANTONIO

16                                NAVARRETE, individually and on behalf of all others similarly situated.

17

18

19

20   4826-8640-8387.1 099449.1009

21

22

23

24

25

26

27

28

JOINT STIPULATION AND CLASS AND REPRESENTATIVE ACTION SETTLEMENT AGREEMENT AND RELEASE

1

2

3

Dated: July ___23___ , 2020          By: _____

                                         JORGE E GRACIA

4

5

ON BEHALF OF SPRINT/UNITED
MANAGEMENT COMPANY

6    Dated: July ___21___ , 2020         LITTLER MENDELSON, P.C.

7

By: _____

8                                        EMILY PATAJO, ESQ.

9

Attorneys for Defendant Sprint/United
Management Company.

10

11

12   Dated: July ___16___ , 2020         JAMES HAWKINS APLC

13

By: _____

14                                       JAMES R. HAWKINS, ESQ.
                                         GREGORY MAURO, ESQ.
15                                       MICHAEL CALVO, ESQ.
                                         Attorneys for Plaintiff ANTONIO
16                                       NAVARRETE, individually and on
                                         behalf of all others similarly situated.

17

18

19

20   4826-8640-8387.1 099449.1009

21

22

23

24

25

26

27

28

- 44 -

JOINT STIPULATION AND CLASS AND REPRESENTATIVE ACTION
SETTLEMENT AGREEMENT AND RELEASE

# EXHIBIT A

# EXHIBIT A

## NOTICE OF CLASS ACTION SETTLEMENT

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| ANTONIO NAVARRETE, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>SPRINT/UNITED MANAGEMENT COMPANY, a Kansas Corporation; SPRINT CORPORATION, a Kansas Corporation;  and DOES 1-50, inclusive,<br><br>        Defendants. | Case No. 8:19-cv-00794-JLS-ADS<br><br>**NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION AND HEARING DATE FOR FINAL COURT APPROVAL** |

### PLEASE READ THIS NOTICE.

A class action lawsuit against defendant Sprint/United Management Company has been preliminarily approved for settlement.  In the lawsuit, Plaintiff alleges that Sprint/United Management Company failed to pay its non-exempt employees who worked in its retail stores in the State of California all wages owed including overtime, failed to provide accurate itemized wage statements, failed to provide meal and rest breaks, failed to pay all wages in a timely manner at termination, and failed to reimburse business expenses and claims for related penalties. Sprint/United Management Company denies Plaintiff's allegations and contends that it complies with applicable law.  **You have been identified by Sprint/United Management Company's records as a member of the settlement class in the above-entitled class action, and as such are subject to the settlement agreement preliminarily approved by the Court. Please read this notice carefully.  It may affect your legal rights.**

| YOUR LEGAL RIGHTS AND OPTIONS WITH RESPECT TO THE SETTLEMENT | |
|---|---|
| **Participate in the Settlement – Do Nothing** | If you want to remain in the Class, be bound by the Settlement and **receive your Individual Settlement Payment** then **you need not do anything.** |
| **Exclude Yourself From the Settlement** | If you do not want to be bound by the Settlement, you must follow the instructions in Section __ to exclude yourself.  If you exclude yourself, **you will not receive any of the Settlement proceeds, and you will not release any claims against Sprint.** |
| **Object to the Settlement** | If you want to object to the Settlement, you must follow the instructions in Section ___.  If you object, you will still be bound by the terms of the Settlement, if approved by the Court. |

## WHAT INFORMATION IS IN THIS NOTICE

1.   Why Should You Read This Notice?............................................................ Page 1
2.   What Is The Case About? ......................................................................... Page 2
3.   Background of Settlement.......................................................................... Page 2
4.   Why Did Sprint Agree To This Settlement?............................................... Page 2
5.   The Proposed Settlement .......................................................................... Page 2
6.   What Am I Releasing?............................................................................... Page 3
7.   How Do I Exclude Myself from the Settlement?....................................... …Page 4
8.   What Must I Do To Object To The Settlement? .........................................Page 4
9.   Who are the Attorneys and the Claims Administrator?................................Page 4
10.  Notice of Hearing on Final Approval. .......................................................Page 5
11.  Examination of Papers and Inquiries.................................................... …… Page 5

### 1.  Why Should You Read This Notice?

You should read this notice because you are entitled to receive money from a class action settlement.  You have been identified as a Class Member of the Class as defined below:

> All current and former non-exempt employees of Defendant Sprint/United Management Company who worked in Defendant's retail stores in the State of California during the Class Period of February 25, 2016 through April 8, 2020.

### 2.  What is the Case About?

On or about January 29, 2019, Plaintiff Antonio Navarrete filed a putative class action in the Superior Court of California, County of Orange County entitled: *Antonio Navarrete, individually on behalf of himself and others similarly situated, v. Sprint/United Management Company, a Kansas Corporation, Sprint Corporation, a Kansas Corporation, and DOES 1-50, inclusive*, Case No. 30-2019-01047754-CU-OE-CXC.  The Complaint alleges the following causes of action: (1) Failure to Pay Wages including Overtime (Labor Code §§ 510 and 1194, and the IWC Wage Order); (2) Failure to Provide Meal Periods (Labor Code §§ 226.7 and 512, and the IWC Wage Order); (3) Failure to Authorize Rest Periods (Labor Code § 226.7 and IWC Wage Order); (4) Failure to Timely Pay Wages Due (Labor Code §§ 201-203); (5) Failure to Provide Accurate Wage Statement (Labor Code § 226); (6) Failure to Indemnify Necessary Business Expenses (Labor Code § 2802); (7) Unfair Competition (Business & Professions Code § 17200). On April 30, 2019, Defendant removed the class action to the United States District Court, Central District of California, where the action is currently pending as Case No. 8:19-cv-00794-AG-ADS. The action resolves claims for recovery of compensatory damages, penalties, interest, and attorneys' fees and costs and causes of action for: (1) Failure to Pay Wages including Overtime (Labor Code §§ 510 and 1194, and the IWC Wage Order); (2) Failure to Provide Meal Periods (Labor Code §§ 226.7 and 512, and the IWC Wage Order); (3) Failure to Authorize Rest Periods (Labor Code § 226.7 and IWC Wage Order); (4) Failure to Timely Pay Wages Due (Labor Code §§ 201-203); (5) Failure to Provide Accurate Wage Statement (Labor Code § 226); (6) Failure to Indemnify Necessary Business Expenses (Labor Code § 2802); (7) Unfair Competition (Business & Professions Code § 17200); (8) Penalties Pursuant to Labor Code § 2699; and (9) Failure to Pay Wages pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*

Sprint denies any liability or wrongdoing of any kind associated with the claims alleged in the Action. Sprint contends, among other things, that it complied at all times with the California Labor Code and the Business and Professions Code, and that all Class Members were timely paid all wages due to them, were provided meal and

rest periods as required by California law, were reimbursed necessary business expenses, and were provided accurate wage statements.

### 3. Background of Settlement.

Plaintiff and his counsel believe that the claims asserted in the Action have merit.  However, Plaintiff's counsel recognizes the expense, length and uncertainty of continued litigation.  Although Sprint denies that it committed any wrongdoing, Sprint believes that further litigation would be protracted, expensive, and contrary to its best interests.  Thus, the parties entered into settlement negotiations which resulted in the settlement.  The Court has determined on a preliminary basis that the settlement is fair, reasonable, and adequate and in the best interests of the Class.  The Court file contains the settlement documents that provide more information about the Action and the settlement.

### 4. Why Did Sprint Agree To This Settlement?

Sprint has denied, and continues to deny, the factual and legal allegations in the Action and believes that it has multiple valid defenses to Plaintiff's claims.  By agreeing to settle, Sprint is not admitting that it has any liability on any of the factual allegations or claims in the Action or that the Action can or should proceed as a class action.  Sprint has agreed to settle the Action as part of a compromise with Plaintiff.  If for any reason the settlement fails, Sprint reserves the right to contest all factual and legal allegations in the Action.

### 5. The Proposed Settlement.

Without admitting any wrongdoing and to avoid litigating these claims, Sprint has agreed to pay a total of Two Million Seven Hundred and Fifty Thousand Dollars ($2,750,000) ("Maximum Gross Settlement Amount") to settle this Action.  Sprint also has agreed to pay up to $55,000 for the purpose of administering this settlement. Out of the Maximum Gross Settlement Amount, the Plaintiff will ask for an Enhancement Payment of $5,000 for his services as a Class Representative.  The lawyers for the class, called Class Counsel, will ask for $916,666 for attorney fees and up to $20,000 for costs.  The parties have also allocated $100,000 from the Maximum Gross Settlement Amount for penalties under the Private Attorneys General Act of 2004 ("PAGA"), pursuant to Labor Code section 2698, *et seq.*, of which $75,000 will be payable to the LWDA and $25,000 will be included in the Net Settlement Fund.  The Court may approve these payments or a smaller amount.  Any reduction in these amounts will be included in the Net Settlement Fund.  The money remaining is the "Net Settlement Fund" which will be available for distribution to Class Members, based on the formula set forth below.  The payment of all employee payroll taxes and all other legally required withholdings will be paid from the Net Settlement Fund except for the employer share of taxes on the wage portion of the payments to Class Members.

All Class Members who do not submit a timely and valid Request for Exclusion will receive an Individual Settlement Payment.  Each Class Member's Individual Settlement Amount will be calculated as follows:

(i)      For purposes of this Agreement, the Administrator shall define a Workweek as any week in which the Class Member worked any time for Defendant during the Class Period. Defendant's Workweek data will be presumed to be correct, unless a particular Class Member proves otherwise to the Administrator by credible evidence. The Individual Settlement Amount will be determined by dividing the Net Distribution Fund by the total number of workweeks for the entire Settlement Class resulting in the Workweek Value; and then multiplying the Workweek Value by the number of Workweeks worked by each Class Member. Defendant represents that there are approximately 350,000 workweeks during the Class Period. This calculation is based upon the records in Defendant's possession, custody or control and includes all weeks worked regardless of how many hours or days a Class Member worked in a given week. Each Class Member

shall receive a gross payment equal to his or her workweeks multiplied by the value of a Workweek.  To the extent that any Class Member excludes him or herself from the Settlement and there are unclaimed funds remaining in the Net Settlement Fund, each Class Member shall be entitled to receive a pro-rated increase based on their total number of workweeks as compared to the total number of workweeks for all Class Members.  In addition, Class Members will receive an additional sum if they fall in the following categories:

       (ii)   Any Class Member who separated his or her employment with Defendant during the Class Period will receive an additional five percent (5%) of his or her Total Workweeks to compensate the Class Member for his or her waiting time penalty claim.

       (iii)Any Class Member who did not timely and properly file a completed opt in form in another lawsuit and who worked between February 25, 2016 and April 8, 2020, will receive an additional five percent (5%) of his or her Total Workweeks to compensate the Class Member for his or her FLSA claim.

       Note**[The following paragraph is to be included in the notice only as to those individuals who worked during the PAGA Period of January 29, 2018 to April 8, 2020.]

       Subject to Court approval, an amount of $75,000.00 shall be paid to the State of California LWDA. This amount is 75% of the $100,000.00 PAGA Payment that the Parties have agreed is to be paid in settlement of all claims for civil penalties under the Labor Code Private Attorneys General Act of 2004, Labor Code sections 2698, *et seq.* ("PAGA"). The remaining 25% of the $100,000 PAGA payment, which amounts to $25,000.00 of the PAGA Payment shall be distributed pro rata to all PAGA Releasees, based on the number of PAGA Pay Periods by a PAGA Releasee, as a fraction of the total PAGA Pay Periods of all PAGA Releasees.  The portion of the PAGA payment to the PAGA Releasees shall be treated entirely as penalties.  PAGA Releasees will not have the opportunity to opt out or object to the PAGA Payment and/or release of PAGA Claims set forth in this Agreement although the PAGA Settlement will be subject to Court approval. In the event the LWDA rejects this allocation, the Parties will meet and confer with the Court and the LWDA to reach a penalty allocation acceptable to all parties that does not materially alter the terms of Settlement, nor require Defendant to pay more than the Gross Settlement Fund.  At the same time that Plaintiff files his Motion for Preliminary Approval, Plaintiff sent a copy of the Agreement to the LWDA pursuant to the 2016 amendments to PAGA.

**Sprint's records indicate that while working as a Class Member in California during the Class Period of February 25, 2016 to April 8, 2020 you worked _____ Workweeks. Sprint's records further indicate that you separated your employment during the Class Period.  As a result you have been allocated _____ additional Workweeks. Sprint's records further indicate you worked during the FLSA period and therefore have been allocated _____ additional Workweeks. Your PAGA payment is:_____.**

**Therefore, your estimated total settlement payment is:_____.**

If you dispute the foregoing information, you may provide written documentation to the Settlement Administrator establishing the weeks you worked and/or your employment status that you contend are applicable.  Such information must be provided to the Administrator on or before _____, 2020.  The Claims Administrator will then advise Sprint of the dispute and Sprint will have an opportunity to present written documentation to the Settlement Administrator.  The allocation of additional Workweeks to any individual Class Member as a result of this process will require a re-calculation of the value of a Workweek and will impact the overall allocation of the settlement among the Class Members.

One third (1/3) of a Class Members' Individual Settlement Payment will be allocated to alleged unpaid wages for which an IRS Form W-2 will issue, one third (1/3) will be allocated to alleged penalties for which an IRS Form 1099 will issue and one third (1/3) will be allocated to alleged interest for which an IRS Form 1099 will issue.

100% of the PAGA Payment will be allocated as penalties for which an IRS Form 1099 will be issued.  Class Members are responsible for paying taxes on any amounts received. This Notice is not tax advice and you should consult your tax advisor.  Checks will be valid and negotiable for 90 days; after that, checks will be cancelled and any uncashed funds will be transmitted by the Settlement Administrator to the State of California Controller's Office, Unclaimed Property Fund, in accordance with California law regarding such escheatment.

**Class Members who do not timely exclude themselves from the Settlement will be bound by the settlement, except the FLSA release, even if they do not cash their settlement checks.**

Your settlement check will include the following: "I understand that by cashing, depositing, or otherwise negotiating this check I will be deemed to have opted into *Antonio Navarrete, individually on behalf of himself and others similarly situated, v. Sprint/United Management Company, a Kansas Corporation, Sprint Corporation, a Kansas Corporation, and DOES 1-50, inclusive*, Case No. 8:19-cv-00794-AG-ADS  for purposes of the federal Fair Labor Standards Act (FLSA) release to the extent required to do so under applicable law for purposes of the court-approved settlement therein." If you who have timely and properly filed and completed an opt in form in the lawsuit *Amaraut, et. al. v. Sprint/United Management Company*, USDC Case No.: 3:19-cv-00411-WQH-AHG, you will receive a settlement check that does not contain the language above and you will not be deemed to have released your FLSA claim and you will not be entitled to an FLSA credit with an additional 5% of your Workweeks

## 6. What Am I Releasing?

You **will be releasing** all claims you may have related to the allegations in the Action as described in the Agreement.  In summary, this includes any and all claims for wages, benefits and related penalties actually alleged or that could have been alleged in the Action during the Class Period based on the facts alleged in the First Amended Complaint, including but not limited to: (1) Failure to Pay Wages including Overtime (Labor Code §§ 510 and 1194, and the IWC Wage Order); (2) Failure to Provide Meal Periods (Labor Code §§ 226.7 and 512, and the IWC Wage Order); (3) Failure to Authorize Rest Periods (Labor Code § 226.7 and IWC Wage Order); (4) Failure to Timely Pay Wages Due (Labor Code §§ 201-203); (5) Failure to Provide Accurate Wage Statement (Labor Code § 226); (6) Unfair Competition (Business & Professions Code § 17200; (7) Unreimbursed Expenses pursuant to Labor Code § 2802; (8) Penalties Pursuant to Labor Code § 2699; and (9) Failure to Pay Wages pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*  Upon the Court's approval of the PAGA Payment and this release of PAGA Claims, Plaintiff and the PAGA Releasees and all persons purporting to act on the PAGA Releasees' behalf or purporting to assert a claim under or through them, hereby do and shall be deemed to have fully, finally, and forever released, settled, compromised, relinquished and discharged any and all of the Released Parties of and from any and all PAGA claims premised in whole or in part on any of the claims set forth above that arose at any time from January 29, 2018 (collectively, the "PAGA Claims") through April 8, 2020.  The PAGA Releasees will be issued a check for their share of the PAGA Payment and will not have the opportunity to opt out of, or object to, the PAGA Payment and release of the PAGA Claims set forth in this Paragraph.  The PAGA Releasees are bound by the release of the PAGA Claims regardless of whether they cash their PAGA Payment Check. Individuals who opt-into *the Amaraut, et. al. v. Sprint/United Management Company*, USDC Case No.: 3:19-cv-00411-WQH-MDD shall not be deemed to have released their FLSA claim and shall not be entitled to an FLSA credit with an additional 5% of their Workweeks.

## 7. How Do I Exclude Myself From the Settlement?

You may request to be excluded from the Settlement.  **Class Members who request to be excluded from the Settlement will NOT receive any money <u>nor will they have released their claims</u>.**  To request to be excluded from the Settlement, you <u>must</u> prepare and submit a written request with your name, address, and last four digits of your social security number.  The request must state: "I want to exclude myself from the Settlement in *Antonio Navarrete, individually on behalf of himself and others similarly situated, v. Sprint/United Management Company, a Kansas Corporation, Sprint Corporation, a Kansas Corporation, and DOES 1-50, inclusive*, United States District Court, Central District of California, Case No. 8:19-cv-00794-AG-ADS.  I understand that by requesting to be excluded from the Settlement, I will receive no money from the Settlement." The request must be signed by you and mailed to the Claims Administrator postmarked on or before _____.  If you request to be excluded from the Settlement, you cannot submit objections as described in the next section.

## 8.  What Must I Do if I Want To Object To the Settlement?

Any Settlement Class Member may object to the Settlement, or to any settlement term. You can't ask the Court to order a larger settlement; the Court can only approve or deny the settlement. If the Court denies approval, no settlement payments will be sent out and the lawsuit will continue.

Settlement Class Members must object in writing and may do so on their own or through their own attorney.  A Notice of Objection: (1) must contain your full name, address and last four digits of the social security number, and (2) must be signed by you.  The Notice of Objection should also state the case name and number, *Antonio Navarrete, individually on behalf of himself and others similarly situated, v. Sprint/United Management Company, a Kansas Corporation, Sprint Corporation, a Kansas Corporation, and DOES 1-50, inclusive*, United States District Court, Central District of California, where the action is currently pending as Case No. 8:19-cv-00794-AG-ADS, the basis for the objection and if you intend to appear at the Final Approval Hearing.

Any objection must be postmarked by _____, and sent to the Claims Administrator.

## 9.  Who are the Attorneys and the Claims Administrator?

<u>**Attorneys for Plaintiff and the Class are:**</u>
James Hawkins
Gregory Mauro
James Hawkins APLC
9880 Research Drive, Suite 200
Irvine, California 92618
Telephone:

<u>**Attorneys for Sprint Building are:**</u>
Emily Patajo
Jyoti Mittal
LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067
Telephone: (310) 553-0308

<u>**The Claims Administrator is:**</u>
**ILYM Group, Inc.**
Sprint/United Management Corp.
C/O _____
TO BE ADDED
XXX, California XXXXX
Phone: (___) ___-____

**10.  Notice of Hearing on Final Approval.**

A Final Fairness Hearing will be held on _____, 2020, at _____ ___.m. in Courtroom 10A, of the United States District Court, Central District of California, located at 411 W. 4th Street, Santa Ana, California 92701, to determine whether the proposed Settlement is fair, reasonable, and adequate.  You do not need to appear at this hearing.  The hearing may be continued without further notice.

**11.  Examination of Papers and Inquiries.**

This Notice summarizes the proposed settlement. For the precise terms and conditions of the settlement, please see the settlement agreement available at www._____.com, by contacting class counsel at the address or telephone number provided in Section 10, by accessing the Court docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cacd.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court, Central District of California, _____, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT.

**EXHIBIT B**

**EXHIBIT B**

| | |
|---|---|
| ANTONIO NAVARRETE, individually and on behalf of all others similarly situated,<br><br>                      Plaintiffs,<br><br>     *v.*<br><br>SPRINT/UNITED MANAGEMENT COMPANY, a Kansas Corporation; SPRINT CORPORATION, a Kansas Corporation;  and DOES 1-50, inclusive,<br><br>                  Defendants. | Case No. 8:19-cv-00794-JLS-ADS<br>Hon. Josephine L. Staton<br><br><br>**OPT OUT FORM** |

**THIS FORM MUST BE POSTMARKED NO LATER THAN <mark>xxx.</mark>**

**YOU <u>DO NOT</u> HAVE TO COMPLETE THIS FORM TO PARTICIPATE IN THE SETTLEMENT.**

**ONLY RETURN THIS FORM IF YOU WANT TO OPT OUT AND EXCLUDE YOURSELF FROM THE SETTLEMENT.**

Name (First, Middle, Last)

| |
|---|
| [preprinted by claims administrator] |

| | |
|---|---|
| **EXCLUDE YOURSELF** | <u>Get no payment</u>.  This is the only option that allows you to maintain your claims and, if you wish, to file your own lawsuit against Defendant for the claims released in this Settlement. |

**If you wish to Opt Out and be excluded from** the above-captioned lawsuit (the "Class Action"), you must mail this "Opt-Out Form" to the Claims Administrator, at the address below, requesting to be excluded from the Settlement.  To be considered valid, your Opt-Out Form must be signed by you, and contain your name and address.  To be considered timely, your Opt-Out Form must be postmarked no later than _____, 2020.  Late opt-out requests will not be considered.

If you file a timely and valid "Opt-Out Form", you will no longer be a member of the Class, and you will not be eligible to receive money under the Settlement or object to the terms of the Settlement.  However, you will not be bound by the terms of the Settlement except for the PAGA release if final approval is granted, and may pursue any claims you may have, at your own expense, against Defendant.

Dated: _____ 

_____
(signature)

_____
(typed or print name)

_____
(address)

_____
(telephone number)

_____
(last four digits of social security number)

If you exclude yourself, mail the completed form by _____, 2020 to:

c/o ILYM Group, Inc.
[ADDRESS and phone number]