James R. Hawkins, Cal Bar No. 192925
Gregory Mauro, Cal Bar No. 222239
JAMES R. HAWKINS, APLC
9880 Research Drive, Suite 200
Irvine, California 92618
Telephone: 949.387.7200
Facsimile: 949.387.6676
Email: james@jameshawkinsaplc.com
        greg@jameshawkinsaplc.com
Attorneys for Plaintiffs ANTONIO
NAVARRETE individually and on
behalf of all others similarly situated

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| ANTONIO NAVARRETE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SPRINT/UNITED MANAGEMENT COMPANY, a Kansas Corporation; SPRINT CORPORATION, a Kansas Corporation; and DOES 1-50, inclusive,<br><br>Defendants. | Case No. 8:19-cv-00794-JLS-ADS<br>Hon. Josephine L. Staton<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; ATTORNEYS' FEES, COSTS, SERVICE AWARDS, AND ADMINISTRATION COSTS**<br><br>[Proposed Order and Declarations of Class Counsel James Hawkins, Administrator Nathalie Hernandez, and Plaintiff Navarrete filed concurrently herewith]<br><br>Date: August 13, 2021<br>Time: 10:30 a.m.<br>Courtroom: 10A<br><br>Complaint Filed: January 29, 2019<br>FAC: January 28, 2020 |

- 0 -

**MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# **TABLE OF CONTENTS**

I.      INTRODUCTION……………………………………..…………………1

II.     THE CLASS…………………..…………………….........................1

    A.      The Settlement Class ……………………………………………1

III.    MEDIATION AND SUMMARY OF PROPOSED SETTLEMENT…………..…2

    A.      Mediation…………………………………………………..……2

    B.      The Settlement Terms………………………………………….…2

IV.     PRELIMINARY APPROVAL AND CLASS NOTICE……………...…………4

V.      FINAL APPROVAL OF THE SETTLEMENT SHOULD BE GRANTED…...….4

    A.      Class Settlements are Subject to Court Review and Approval………..…….4

    B.      Class Action Settlement Approval Has Three Steps………………….…….5

    C.      The Court Should Exercise Discretion to Approve a Settlement…………..5

    D.      The Settlement is Fair, Adequate, and Reasonable……………………..6

    E.      The Settlement Satisfies Ninth Circuit Final Approval Standards……..…..7

        1.      Strength of Plaintiff's Case and the Risk, Expense, Complexity and Likely Duration of Further Litigation…………………………….……7

        2.      The Stage of Proceedings and Extent of Discovery Support Settlement………………………………………………….…..9

        3.      The Experience and Views of Counsel…………………………9

        4.      Objections and Reactions to the Settlement …………………….....11

VI.     THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES AND LITIGATION EXPENSES AND THE CLASS REPRESENTATIVE ENHANCEMENT PAYMENTS………..……………………………...……..12

    A.      A Percentage Fee Award is Warranted……………………..………….....12

    B.      One- Third of the Common Fund Is A Reasonable Fee……………….15

    C.      Ninth Circuit Factors for Evaluation Reasonableness of the Fee Request…………………………………….………………………17

        1.      The Results Achieved Support the Fee Request……………………17

1

2.      Strength of Plaintiff's Case and the Risk, Expense, Complexity and Likely Duration of Further Litigation…………….…………….18

3.      The Contingent Nature of the Fee and the Financial Burden Carried…………………………………………………….…………19

4.      Awards in Similar Cases……………….…………………….20

5.      The Reaction of the Class Supports the Fee Request……………..21

D.      Although Not Required, Class Counsel's Fee Request Is Reasonable when Cross-Checked With the Lodestar……………………………………21

1.      Class Counsel's Hourly Rates Are Reasonable…………………..22

2.      Class Counsel's Total Hours are Reasonable………………….…23

E.      Class Counsel's Litigation Expenses Should be Reimbursed……….…….23

F.      The Class Representative Enhancement Payment Is Reasonable………..24

G.      The Administration Expenses Are Reasonable……………...……….24

VII.    CONCLUSION………………………………………...……………………25

Memorandum of Points & Authorities ISO Motion for Final Approval

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF AUTHORITIES**

## **CASES**

*Aguirre v. Genesis Logistics, Inc.*,

    2014 U.S. Dist. LEXIS 184617 (C.D. Cal. Nov. 29, 2017) ...……….……….16,20

*Barbosa v. Cargill Meat Solutions Corp*,

    297 F.R.D. 431 (E.D. Cal. July 2, 2013)………………….……………..……..22

*Bowles v. Dep't of Ret. Sys.*,

    847 P.2d 440 (Wash. 1993)………………………………………………….13

*Boyd v. Bank of America Corp*.,

    2014 U.S. Dist. 162880 (C.D. Cal. Nov. 18, 2014)………...…….……..……..20

*Boyd v. Bechtel Corp*.,

    485 F. Supp. 610 (N.D. Cal. 1979)…………………….……....……….9,10,11

*Brown v. American Honda Motor Co., Inc*.,

    2010 U.S. Dist. LEXIS 145475 (C.D. Cal. July 29, 2010)…..……………..…..11

*Chavez v. Netflix, Inc.*

    162 Cal. App. 4th 43(2008)……………………..………………………….15

Children's *Hospital and Med. Center v. Bonta*,

    97 Cal. 4th 740 (2002)……………………………...……….……22

*Class Plaintiffs v. City of Seattle*,

    955 F.2d 1268 (9th Cir. 1992)………………….……...…….……..…………..7

*Dennis v. Kellog Co.*,

    455 U.S. 326 (1980)………………………………………………………..15

*Dunleavy v. Nadler*,

    213 F.3d 454  (9th Cir. 2000)………………………………………………..5

*Ellis v. Naval Air Rework Facility* .

    87 F.R.D. 15, (N.D. Cal. 1980)……………………………….…...…....10

*Emmons v. Quest Diagnostics Clinical Labs., Inc.*,

    2017 U.S. Dist. LEXIS 272249 (E.D. Cal. 2017)………………….………..12

*Fisher Bros. v. Cambridge Lee Industries, Inc.*
    630 F.Supp. 482 (E.D. Pa. 1985)……………………………..…..…………..10
*Flannery v. California Highway Patrol,*
    61 Cal. App. 4th 629 (1998)……………………………………………………22
*Garner v. State Farm Auto Ins. Co.,*
    2010 U.S Dist. LEXIS 49477 (N.D. Cal. Ap. 22, 2010)…………….…………..6
*Glass v. UBS Financial Services, Inc.,*
    2007 WL 221862 (N.D. Cal. Jan. 26, 2007)………………….…….…...……21
*Grillo v. Key Energy Services, LLC,*
    2017 U.S. Dist. LEXIS 42682 (C.D. Cal. Oct. 13, 2017)……………….......…16,20
*Guar. Nat'l Bank v. Roper,*
    445 U.S. 326 (1980)……………………………………………..…….....16
*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998)……………………………………………...6
*Harris v. Marhoefer,*
    24 F.3d 16 (9th Cir. 1994)……………………………….……………..…..24
*Hensley v. Eckerhart,*
    461 U.S. 424 (1983)…………………………………………..…………..17
*Hopson v. Hanesbrands Inc.,*
    2009 U.S. Dist. LEXIS 33900 (N.D. Cal. Apr. 3, 2009)…………….…………22
*In re Activision Securities Litigation,*
    723 F. Supp. 1373……………………………….…….…..……......14,15,16
*In Re DJ Orthopedics, Inc. Secs. Litig.,*
    2004 U.S. Dist. LEXIS 11457 (S.D. Cal. June 21, 2004)………....……………24
*In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.,*
    2005 U.S. Dist. LEXIS 13627 (C.D. Cal. June 10, 2005)……………………17,21
*In re Mego Fin. Corp. Sec. Litig.,*
    213 F. 3d 454 (9th Cir. 2000)……………………………..…………….…17

4

*In re Omnivision Technologies, Inc.*,

    559 F. Supp. 2d 1036 (N.D. Cal. 2007)……………………………..…....…10,11,14

*In Re Oracle Secs. Litig.*,

    131 F.R.D. 688 (N.D. Cal. 1990)…………………………………………………14

*In re Pacific Enterprises Security Litigation*,

    47 F.3d 373 (1995 U.S. App. LEXIS 2330)………………………..………....…16

*In re Quantum Health Resources, Inc.*

    962 F. Supp. 1254 (1997)…………………………………...……18,19

*Karapetyan v. ABM Industries Incorporated and ABM Security Services, Inc*,

    2015 U.S. Dist. LEXIS 24210 (C.D. Cal. Sept. 7, 2017) ……..……...………15,20

*Ketchum v. Moses*,

    24 Cal.4th 1122 (2001)…………………………………………..…………..…22

*Laffitte v. Robert Half International, Inc.*,

    1 Cal.5th 480 (2016)…………………………………………………………12,13

*Linney v. Cellular Alaska Partnership*,

    151 F.3d 1234 (9th Cir. 1998)………………………………..…………5,17

*Lopez v. Youngblood*,

    2011 WL 10483569 (9th Cir. 1998)……………………………………..……21

*Mangold v. California Public Utils. Comm'n*,

    67 F.3d 1470 (9th cir. 1995)……………………………………………...…12

*Margolin v. Regional Planning Commission*,

    134 Cal.App.3d 999 (1982)……………………………………………..…..22

*Martin v. AmeriPride Servcs*.,

    2011 U.S. Dist. Lexis 61796 (S.D. Cal. June 9, 2011)……………..............……..11

*Moore v. Jas. H. Matthews & Co.*,

    682 F.2d 830 (9th Cir. 1982)…………………………………………….…23

*Murillo v. Pac. Gas & Elec. Co.*,

    266 F.R.D. 468 (E.D. Cal. 2010)……………………………………….………5

Memorandum of Points & Authorities ISO Motion for Final Approval

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,

    221 F.R.D. 523 (C.D. Cal. 2004)………………………………….......…10,16

*Norman v. Housing Auth.*,

    836 F.2d 1292  (11th Cir. 1988)…………………………………………..23

*Officers for Justice v. Civil Serv. Comm'n. of the City and County of San Francisco*

    688 F. 2d 615 (9th Cir. 1982), cert. den. (1983) 459 U.S. 1217…..………….…5,6,18

*Paul, Johnson, Alston & Hunt v. Graulty*,

    886 F.2d 268 (9th Cir. 1989)…………………………….…….....…..14

*PLCM Group, Inc. v. Drexler*,

    22 Cal. 4th 1084 (2000)…………………………………….………..22

*Powers v. Eichen*,

    229 F.3d 1249 (9th Cir. 2000)………………….…………………….…17

*Rodriguez v. West Publishing Corp.*,

    563 F.3d 948 (9th Cir. 2009). ………………………….......…5,6,24

*Shiferaw v. Sunrise Senior Living Management, Inc.*,

    2016 U.S. Dist. LEXIS 187548 (C.D. Cal. Jul. 17, 2017) ……….…...….……16,20

*Skelton v. General Motors Corp.*,

    860 F. 2d 250 (7th Cir. 1988)……………….…………….……..19

*Smith v. CRST Van Expedited, Inc.*,

    2013 WL 163293 (S.D. Cal. Jan. 14, 2013)………….…………………..15

*Staton v. Boeing Co.*,

    327 F. 938 (9th Cir. 2003). …………………………...…..……5,22

*Taylor v. Shippers Transp. Express, Inc.*,

    2015 WL 12658458 (C.D. Cal. May 14, 2015) …………………….……20

*Torrisi v. Tucson Elec. Power Co.*,

    8 F.3d 1370 (9th Cir. 1993)…………………………...……...7

*Vasquez v. Coast Valley Roofing, Inc.*

    266 F.R.D. 482, 491 (E.D. Cal. 2010)……………………………………14

*Vizcaino v. Microsoft Corp.*,

    290 F.3d 1043 (9thx Cir. 2002)……………………………......……….passim

Memorandum of Points & Authorities ISO Motion for Final Approval

*West v. Circle K Stores, Inc.*,

  2006 U.S. Dist. LEXIS 76558 (E.D. Cal. Oct. 19, 2006)………..…….…..……..23

*Wooldridge v. Marlene Industries Corp*

  898 F.2d 1169 (6th Cir. 1990)……………………………………….……....…23


## **STATE RULES AND STATUTES**

PAGA Private Attorney General Act…………………………………………...…3,8,25


## **FEDERAL RULES**

Fed. R. Civ. P. Rule 23(e)…………………………………...……………………...…5

Fed. R. Civ. P. Rule 23(e)(1)(C)…………….………..….…….…………….…..……5


## **SECONDARY SOURCES**

1 Alba Conte, Attorney Fee Awards (3d ed. 2004) …………..……………………5,19

Manual for Complex Litigation (Fourth), …………..……………..….……....…5,16

*Newberg*, §§ 13:39……………………………………………………………...…5

Newberg, § 15:83…………………………………………………………………14

Memorandum of Points & Authorities ISO Motion for Final Approval

## I.    INTRODUCTION

Plaintiff Navarrete as appointed Class Representatives ("Plaintiff" or "Class Representative") seeks final approval of a Gross Settlement Fund ("GSF") of Two Million Seven Hundred and Fifty Thousand Dollars and Zero Cents (**$2,750,000.00)** on behalf of the 5,984 Class Members[1] employed by Defendants in California during the period of February 25, 2016, through April 8, 2020. ("Class Period", "Settlement Class").   The Settlement was preliminarily approved on March 2, 2021. [Dkt. No. 43.].  Pursuant to the Court's Preliminary Approval Order, the Court-approved revised Notice of Class  Action Settlement was disseminated to the Class on April 21, 2021, informing them of their rights and benefits under the Settlement and of the deadline  to submit requests for exclusion or objections.  At the close of the deadline to act, two (2) Class Members excluded themselves and zero Class Members objected to the Settlement.  Following the grant of final approval, and the effective date of Settlement, pursuant to the terms of the Settlement, Settlement Class Members will receive an average payment of approximately $281.77 and highest payment of approximately $1,082.62.  Declaration of Nathalie Hernandez Regarding Class Notification, Class Notice, and overall settlement administration ("Hernandez Decl."), ¶ 14 and Exhibit A; James Hawkins Decl., "Hawkins Decl." ¶ 5 ).

All but two of Class Members has embraced the Settlement as fair, adequate and reasonable. Class Counsel request that the Settlement be finally approved, and service awards, attorneys' fees and costs, and administrator's costs be awarded in the requested amounts at preliminary approval and as identified in the Class Notice.

## II.    THE CLASS

### A.    The Settlement Class

---

[1] 5,986 Class Members were provided the Class notice. Two (2) class members opt-out.

**MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Pursuant to the Settlement, the "Class" or "Class Members" means all current and former non-exempt employees of Defendant Sprint/United Management Company who worked in Defendant's retail stores in the State of California during the Class Period of February 25, 2016, through April 8, 2020 (the "Class Period"). There are 5,984 participating Settlement Class Members during the Class Period with 2 Class Member exclusions and zero objections. (Hawkins Decl.,Ex. 1, Settlement ¶ 2.5; Hernandez Decl., ¶ 14).

## III.  MEDIATION AND SUMMARY OF PROPOSED SETTLEMENT

### A.  Mediation.

After conducting comprehensive discovery, many meetings, and ongoing exchanges of documents and information, and review of records, on December 10, 2019, the Parties participated in a mediation session before mediator Gig Kyriacou, Esq., an experienced mediator who has mediated numerous wage-hour class actions.  At the conclusion of the mediation session, the Parties reach a settlement for $2,750,000 to resolve the Parties' dispute.  The Parties then worked to arrive at the final form of the Settlement Agreement that is now before this Court for final approval. (Hawkins Decl. ¶¶ 6-10).

### B.  The Settlement Terms

Upon the Court granting preliminary and then final approval of the requested amounts, the following specific payments will be made from the GSF to arrive at the NSA, which is the amount available for distribution to the Participating Class Members (Settlement, ¶ 7):

- Up to $5,000 allocated to Plaintiff as an enhancement for serving as Class Representative. (Settlement, ¶ 7.2.1).
- An amount of approximately $55,000 to be paid to ILYM Group, Inc., for serving as the Settlement Administrator in this action and to cover the cost of the Settlement Administration. (Settlement, ¶ 7.2.2).

- 2 -

**MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

- $100,000 allocated to PAGA penalties, with 75% ($75,000) being paid to the LWDA from the GSF and 25% ($25,000) remaining for *pro rata* distribution to the Participating Class Members.  (Settlement, ¶ 7.2.1).

- An amount not to exceed one-third of the GSF, or $916,666, in attorneys' fees to James Hawkins APLC as Class Counsel.  (Settlement, ¶ 7.2).

- Documented costs of $11,664.20 to Class Counsel.  (Settlement, ¶ 7.2).

In the event the Court grants approval of these requested amounts, the total NSA available to be paid to Participating Class Members will be approximately $1,661,669.  Any of the foregoing amounts not approved by the Court will be added to the NSA. (Hernandez Decl., ¶ 14).

Class Members who do not exclude themselves will receive their settlement payment. After deducting the amounts specified in Paragraph 7 of the Settlement,  each Class Members shall be entitled to a pro rata portion of the remaining amount of the Gross Settlement Fund. Any Class Members who separated their employment with Defendant between February 25, 2016 and April 8, 2020 will be credited with an additional 5% of their Workweeks for the LC 203 claim. Any individual who worked any time during the FLSA Period from February 25, 2016, through and including April 8, 2020 and who did not timely and properly file and complete an opt in form in the lawsuit *Amaraut, et. al. v. Sprint/United Management Company*, USDC Case No.: 3:19-cv-00411- WQH-AHG, will be credited with an additional 5% of their Workweeks.  (Hawkins Decl. ¶ 15; Settlement ¶ 7.2.4.).

The Settlement also provides that, because the Individual Settlement Payments represent a compromise of claims for alleged unpaid wages, interest, reimbursement and statutory penalties, for tax purposes all Individual Settlement Payments will be allocated as follows: 2/3 shall be attributed to penalties and interest, to be reported on a 1099 Form; and 1/3 shall be attributed to wages subject

- 3 -

**MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

to all applicable payroll taxes, except for employer taxes, and will be reported on a W-2 Form. Defendant will be separately responsible for the employer portion of taxes allocated to wages separate and apart from the GSF. (Hawkins Decl. Settlement ¶ 2.17).

## IV.   PRELIMINARY APPROVAL AND CLASS NOTICE

On March 2, 2021, the Court found preliminarily the Settlement to be fair, adequate and reasonable, and entered its Order Granting Plaintiff's Motion for Preliminary Approval of Class Action Settlement. [Dkt. No. 43].   The Court approved the Notice of Class Action Settlement ("Notice") with revisions to be made and directed its distribution to the Class by first-class mail pursuant to the terms of the Settlement.

On April 21, 2021, the Administrator mailed the Class Notice and Opt Out form with revisions as ordered by the Court to all members of the Class. (Hernandez Decl. ¶¶ 7-14; Ex. A).  The Notice advised Class Members of (1) the pendency of the Class Action; (2) of the Settlement terms; (3) of the automatic payment of a proportionate share of the Settlement monies if the Class Members did not request exclusion; (4) of the released claims; (5) of the estimated amount each may expect to receive pursuant to the Settlement; (6) of their right to submit objections or requests for exclusion and of the manner and timing for doing either of these acts; (7) of the date and time set for the final approval hearing; and (8) the right to appear at the final approval hearing. *Id*.

In response to the Class Notice, two (2) exclusions were received and there zero objections. (Hernandez Decl. ¶¶ 12-13).

## V.   FINAL APPROVAL OF THE SETTLEMENT SHOULD BE GRANTED

### A.   Class Settlements are Subject to Court Review and Approval

"A class action shall not be dismissed, settled, or compromised without the approval of the Court, and notice of the proposed dismissal, Settlement or

- 4 -

**MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

compromise shall be given as the Court directs." Fed. R. Civ. P. Rule 23(e). A class action Settlement is approved when the district court finds it is fair, adequate, and reasonable. Rule 23(e) (1) (C); *Staton v. Boeing Co.*, 327 F. 938, 952 (9th Cir. 2003).

### B.   Class Action Settlement Approval Has Three Steps

Rule 23(e) Settlement approval includes three distinct steps: (1) preliminary approval of the proposed Settlement; (2) dissemination of a notice of the Settlement to the class; and, (3) a formal fairness hearing at which counsel may introduce evidence and argument supporting the fairness, adequacy, and reasonableness of the Settlement, and class members may be heard. *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 473 (E.D. Cal. 2010). This procedure safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests. *See* William Rubenstein, Alba Conte & Herbert Newberg, *4 Newberg on Class Actions* (5th ed. 2014) ("*Newberg*"), §§ 13:39, *et seq*.

The first two steps are now complete. The first step was completed on March 2, 2021, when the Court preliminarily approved the Settlement. The second step – dissemination of the Class Notice – was completed as described above. The third and final step in the approval process is the final approval hearing, at which the Court determines whether the Settlement is fair, adequate, and reasonable.

### C.   The Court Should Exercise Discretion and Approve This Settlement

The decision whether a Settlement is fair, reasonable, and adequate is committed to the Court's sound discretion. *Dunleavy v. Nadler*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Linney v. Cellular Alaska Partnership,* 151 F.3d 1234, 1238 (9th Cir. 1998); Manual for Complex Litigation (4th ed. 2004) § 21.61 at 308, *Officers for Justice v. Civil Serv. Comm'n. of the City and County of San*

*Francisco* (9th Cir. 1982) 688 F. 2d 615, 625, cert. denied (1983) 459 U.S. 1217.)

Although the Court has discretion to determine whether a proposed class Settlement is fair, the Ninth Circuit has "long deferred to the private consensual decision of the parties." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965(9th Cir. 2009) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)). "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the Settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv.Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "[I]n evaluating whether the Settlement is fair and adequate, the Court's function is not to second guess the Settlement's terms." *Garner v. State Farm Auto Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 U.S. dist. Lexis 49477, *21 (N.D. Cal. Ap. 22, 2010).

A "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027 (9th Cir. 1998).

### D.   The Settlement is Fair, Adequate, and Reasonable

The Court's determination of whether a proposed Settlement is fair, adequate, and reasonable involves a balancing of factors. These factors may include, among others: "the strength of plaintiff's case; the risk, expense, complexity, and the likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in Settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the Class Members to the proposed Settlement. This list is not exclusive and different

- 6 -

factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375-76 (9th Cir. 1993) (citation omitted).  Some of these factors were addressed in the Preliminary Approval Motion and supporting briefs, supplemental briefs and declarations. [Dkt. Nos. 37-42].

The law favors Settlement, particularly in class actions and other complex cases, where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. See *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1275 (9th Cir. 1992).

"In the Ninth Circuit, a court affords a presumption of fairness to a Settlement if: '(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the Settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" (citation omitted) *Rodriguez v. West Publishing Corp.,* No. CV-05-3222 R(MCx) 2007 *Rodriguez v. W. Pub. Corp.*, 2007 WL 2827379, at *7 (C.D. Cal. Sept. 10, 2007).

### E.   The Settlement Satisfies Ninth Circuit Final Approval Standards

At the preliminary approval stage, the Court was provided with information satisfying all but the last and final *Rodriquez* factor. Based on that, the Court preliminarily approved the Settlement as fair, adequate and reasonable. *See*, Order Granting Preliminary Approval. [Dkt. No. 43.] The fourth factor, number of objectors, is now satisfied with no objections and two (2) exclusions. (Hernandez Decl. ¶¶ 11, 12).

### 1.   Strength of Plaintiff's Case and the Risk, Expense, Complexity and Likely Duration of Further Litigation

While Plaintiff believes in the merits of the case, Plaintiff also recognizes the inherent risks and uncertainty of litigation, including that the Class could receive nothing, and understand the benefit of providing a significant settlement sum now. The specific risks include: (i) a denial of certification; (ii) that the Court may later decertify a certified Class; (iii) the possibility of an unfavorable, or less favorable,

- 7 -

**MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

result at trial on the class or PAGA claims; (iv) the possibility post-trial motions may result in an unfavorable, or less favorable, result at trial; and, (v) the possibility of an unfavorable, or less favorable result on appeal, and the certainty that process would be lengthy.

Throughout the negotiations and the litigation process in general, Plaintiff recognized that the issues of liability and class certification presented significant uncertainty and risk.  Detailed analysis was provided in both the motion for preliminary approval and here in the Hawkins Declaration. (Hawkins Decl. ¶¶ 12-65).

Plaintiff and Class Counsel have given serious consideration to all facts and arguments they face in this matter and have ensured a reasonable and realistic settlement value based upon the discovery to date and strengths and weaknesses of Plaintiff's class claims. *Id.*

Plaintiff's claims involve complex and disputed legal issues and fact-specific arguments which the parties have litigated since the inception of the action. While Plaintiff firmly believes in the strength of the claims, Defendants have strong defenses to Plaintiff's claims, and those defenses create a possibility the claims might not be certified or fail on the merits.  *Id.*

Absent the present Settlement, the further conduct of this litigation will likely span several additional years and require the dedication of extensive resources, if class certification was granted, to establish the merits of all class claims at trial or through contested motion practice. *Id.*

The issues and arguments Class Counsel has encountered and overcome in arriving at the parties' negotiated settlement terms were many and complex, and required skillful advocacy that can arise only out of experience, professional perspective, and success.  The claims asserted are the types of claims Defendants have alleged depend upon highly individualized inquiries.  Yet, Class Counsel has successfully advocated for an excellent resolution of claims that are complex,

- 8 -

**MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

evidence intensive, and nuanced, and can be very challenging to certify.  Class Counsel will also be required to dedicate significant time and resources to proving the merits of the claims, prevailing on them at trial, and withstanding any appellate challenges by Defendants.  Class Counsel has invested substantial effort and numerous hours in litigating this action through complex meet and confer efforts. There is no doubt that future contested litigation will undoubtedly require continued investment of significant time and resources of all parties and the Court. *Id*.

If Settlement were not achieved, continued litigation would take substantial time and possibly confer no benefit on Class Members. There were many hurdles Plaintiff will have to navigate to obtain class-wide relief.  By contrast, the Settlement will yield a prompt, certain, and substantial recovery for Class Members, which also benefits the Parties and the Court. *Id*.  In light of these uncertainties, the Parties agreed to a compromise of a very reasonable non-reversionary settlement. This recovery is certain and substantial for absent Class Members. The alternative is class members are left with nothing.

## 2. The Stage of Proceedings and Extent of Discovery Support Settlement

As detailed in the Motion for Preliminary Approval, [Dkt. Nos. 37, 42] and incorporated by this reference, the Parties thoroughly investigated and evaluated the case and engaged in sufficient investigation and discovery to support the Settlement. (Hawkins Decl. ¶¶ 12-65). The discovery enabled the parties to have a clear view of the strengths and weaknesses of their cases sufficient to support the Settlement. *Boyd v. Bechtel Corp*., 485 F. Supp. 610, 622 (N.D. Cal. 1979).

With extensive exchange of discovery completed and analyzed, and the mediation with experienced wage and hour class action mediator, the procedural history of this case supports Settlement. (Hawkins Decl. ¶¶ 7-11).

## 3. The Experience and Views of Counsel

"Great weight" is accorded to the recommendation of counsel, who are

- 9 -

**MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

most closely acquainted with the facts of the underlying litigation…This is because 'parties represented by competent counsel are better positioned than courts to produce a Settlement that fairly reflects each party's expected outcome in the litigation.'" (internal citations omitted) *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).

Class Counsel, James Hawkins APLC has significant experience in litigating wage cases, and rest and meal period cases, misclassification cases, and other wage and hour and consumer class actions and have obtained certification and settlement approval in many such cases. (Hawkins Decl. ¶ 6711).

Experienced counsel, operating at arm's-length, have weighed the strengths of the case and examined all of the issues and risks of litigation and endorse the proposed Settlement. The view of the attorneys actively conducting the litigation "is entitled to significant weight" in deciding whether to approve the Settlement. *Fisher Bros. v. Cambridge Lee Industries, Inc.* (E.D. Pa. 1985) 630 F.Supp. 482, 488; *Ellis v. Naval Air Rework Facility* (N.D. Cal. 1980) 87 F.R.D. 15, 18, *aff'd*. 661 F.2d 939 (9th Cir. 1981). "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Technologies, Inc.*, (N.D. Cal. 2007), 559 F. Supp. 2d 1036, 1043, citing *Boyd v. Bechtel Corp., supra*, 485 F.Supp. 610, 622.)

Class Counsel, having prosecuted numerous wage and hour class action cases, are experienced and qualified to evaluate the Class claims and to evaluate the risks and potential outcome of further litigation and the propriety of Settlement on a fully-informed basis. *Id.* Counsel view this is a fair and reasonable Settlement in light of the complexities of the case, the ever changing state of the law, and of the uncertainties of the outcome of class certification and further litigation. The opinion of counsel in support of the proposed Settlement is based on a realistic assessment of the strengths and weaknesses of their respective cases, extensive legal and factual research and substantial discovery. Further, the Court

- 10 -

**MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

1  preliminarily deemed Class Counsel adequate. *Id.*

2      The opinion of counsel is further based on an assessment of the risks of

3  proceeding with the litigation through trial and, if a verdict were recovered,

4  through appeal, as compared to the value of a settlement at this time.  Given the

5  risks inherent in litigation and the defenses asserted herein, this Settlement is fair,

6  adequate, and reasonable and in the best interests of the Class and should receive

7  final approval.

8              **4.      Objections and Reaction to the Settlement**

9      The deadline to postmark an opt out request or an objection expired on June

10 5, 2021.  Zero (0) objections have been received by the Administrator, by Counsel

11 for the Parties, or filed with the Court through the present and only two (2) Class

12 Members timely opted out.  (Hernandez Decl. ¶¶ 11, 12).  The Court has already

13 considered and preliminarily approved the reasonableness of the overall settlement

14 value in its March 2, 2021 order granting preliminary approval.  The absence of

15 objections supports a strong presumption of fairness and that the Settlement is fair,

16 adequate and reasonable. *Martin v. AmeriPride Servcs.*, 2011 U.S. Dist. Lexis

17 61796 at *21 (S.D. Cal. June 9, 2011); see also *In re: Omnivision Techs.*, 559 F.

18 Supp.2d, 1036, 1043 (N.D. Cal. 2007), ("By any standard, the lack of objection of

19 the Class Members favors approval of the Settlement."); see also *Brown v.*

20 *American Honda Motor Co., Inc.*, 2010 U.S. Dist. Lexis 145475, at *49 (C.D. Cal.

21 July 29, 2010) ("The comparatively low number of opt-outs … indicates that

22 generally, class members favor the proposed settlement and find it fair."  The lack

23 of objections or small number of objections provides persuasive evidence of its

24 reasonableness. *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979).

25     The Class Members have overwhelmingly embraced and approved the

26 proposed Settlement.  None of the Class Members objected and two (2) Class

27 Members elected to opt-out.  (Hernandez Decl., ¶¶ 11, 12).

28     Class Counsel is convinced the Settlement continues to remain fair and

**MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

reasonable and is in the best interest of the Class based on a detailed knowledge of the issues presented in this action and the negotiations. The length and risks of trial and perils of litigation already suffered in this action and in related actions, that affect the value of the claims were all carefully weighed. In addition, the affirmative defenses asserted by Defendants, the difficulties of complex litigation, the lengthy process of establishing specific damages and various possible delays and appeals, were also carefully considered by Class Counsel in arriving at the proposed Settlement. (Hawkins Decl. ¶¶ 12-65). Class Counsel respectfully requests the Court find the proposed Settlement to be fair, adequate and reasonable and grant final approval and enter final judgment accordingly.

## VI.   THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES AND LITIGATION EXPENSES AND THE CLASS  REPRESENTATIVE ENHANCEMENT PAYMENT

### A.    A Percentage Fee Award is Warranted

In a diversity action such as this under the Class Action Fairness Act, federal courts apply state law to determine both the right to fees and the method of calculating them. *See Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1047 (9thx Cir. 2002); *Mangold v. California Public Utils. Comm'n*, 67 F.3d 1470, 1478 (9th cir. 1995); *Emmons v. Quest Diagnostics Clinical Labs., Inc.*, 2017 U.S. Dist. LEXIS 272249 (E.D. Cal. 2017).

The California Supreme Court recently affirmed that trial courts properly grant attorneys' fees in a common fund case based on a percentage of the recovery. *Laffitte v. Robert Half International, Inc.*, 1 Cal.5th 480, 503 (2016). A fee award based on a percentage of the common fund recovery here is proper as it spreads the attorneys' fees among all beneficiaries of the fund, aligns the incentives between Plaintiffs' counsel and the Class, is a better approximation of the market conditions in a contingency case, and encourages class counsel to seek early settlement and avoid unnecessarily prolonging the litigation. *Id*. The Court also approved the use

- 12 -

of a lodestar cross-check at the option of the trial court to double check "the reasonableness of the percentage fee through a lodestar calculation." *Id.* at 504.

Given that the Supreme Court declined to adopt a 25% benchmark, it would seem that such a benchmark should no longer apply in federal court, either, in cases in which California law governs the fee motion. In *Vizcaino,* the lead Ninth Circuit decision adopting the 25% benchmark, both the claims and the fee motion were governed by Washington law, and the Ninth Circuit relied on a Washington Supreme Court decision in which a 25% benchmark was adopted. *Vizcaino*, 290 F.3d at 1047 (citing *Bowles v. Dep't of Ret. Sys.,* 847 P.2d 440, 451 (Wash. 1993)). After *Laffitte*, there is no reason for the Ninth Circuit to continue to apply this benchmark in cases governed by California law where this Court sits.

With the guiding principle that even early class action settlements are favored and may not diminish an award of attorneys' fees, Class Counsel submits the 1/3 fee request should be awarded, in light of the hours expended to achieve this result, the litigation risks and complexities of prosecuting these types of cases, the contingent nature of the fee, their experience in handling cases of this type, the fees commonly awarded in these cases, and the vindication of the Class' rights.

To the extent these state law claims can be measured against the Ninth Circuit benchmark, the payment of back wages and increased post-settlement wages to Class Members, among other facts, support an upward departure from a 25% fee award. Indeed, the California Supreme Court in *Robert Half* recognized the Ninth Circuit's 25% benchmark but did not adopt a benchmark for awarding common fund attorney fees under California law. *Laffitte v. Robert Half Internat., Inc., supra*, 1 Cal.5th at 495, 503-06. This is a California Class, dealing with California Law, as such is reasonable to apply California Supreme Court jurisprudence in which this Court sits for purposes of awarding fees.

The Ninth Circuit common fund principles also support a percentage award here. This common fund doctrine applies when: (1) the class of beneficiaries is

- 13 -

**MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

sufficiently identifiable; (2) the benefits can be accurately traced; and, (3) the fee can be shifted with some exactitude to those benefitting. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989). These criteria are easily met when each member of the class has an "undisputed and mathematically ascertainable claim" to part of a lump-sum settlement recovered on his behalf. *Id.* at 271, *citing Boeing*, 444 U.S. at 479. These factors are met here.

First, the class of beneficiaries is identifiable. The Parties identified the Class from Defendants' employment records and provided the Court-approved revised Notice to them. Second, the benefits are easily traceable. The benefits consist entirely of monetary payments to each Class Member upon final approval of the Settlement. Each Class Member has an "undisputed and mathematically ascertainable claim" to a share of the Settlement based on the time worked over the class period. Third, the fee can be precisely shifted because it is a specific percentage of the Settlement benefit each Class Member receives.

Historically, attorneys' fee awards have ranged from 20% to 50% of the total settlement, depending on the circumstances of the case. *Newberg on Class Actions*, § 15:83. Though the Ninth Circuit established a "benchmark" fee of 25% in common fund cases, the exact percentage varies depending on the facts of the case and, in "most common fund cases, the award exceeds that benchmark." *Vasquez v. Coast Valley Roofing, Inc.* 266 F.R.D. 482, 491 (E.D. Cal. 2010); *In Re Activision Sec. Litig.* 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("[a] review of recent reported cases discloses that nearly all common fund awards range around 30%"); *In Re Omnivision Techs.*, 559 F. Supp.2d 1036, 1047.

District courts in California have held the percentage method is far preferable to the lodestar method because: (1) it aligns the interests of Class Counsel and the Class; (2) it encourages efficient resolution of the litigation by providing an incentive for early, yet reasonable, settlement; *and*, (3) it reduces the demands on judicial resources. *In Re Oracle Secs. Litig.*, 131 F.R.D. 688, 689

- 14 -

**MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

(N.D. Cal. 1990) (Walker, J.) (noting the lodestar method has been "thoroughly discredited by experience"); *In Re Activision Secs. Litig.*, 723 F.Supp. 1373, 1375, 1378-79.

Accordingly, Plaintiff seeks a percentage award of 1/3 of the GSF.

**B.     One-Third of the Common Fund Is a Reasonable Fee**

"In common fund cases, attorneys whose compensation depends on their winning the case must make up in compensation in the cases they win for the lack of compensation in the cases they lose." *Vizcaino v. Microsoft Corp., 290 F.3d at 1051.*

Some courts have found that an award of 33% of a common fund represents the "benchmark" when applying California law in diversity cases. *Smith v. CRST Van Expedited, Inc.*, 10-CV-1116-IEG WMC, 2013 WL 163293, at *5 (S.D. Cal. Jan. 14, 2013) ("These percentages compare favorably with both California (33%) and federal (25%) benchmarks."); *Dennis v. Kellog Co.*, 09-CV-1786-L WMC, 2013 WL 6055326, at *7 (S.D. Cal. Nov. 14, 2013).

Several studies have found the median common fund fee award is approximately one-third of the total settlement fund. See, e.g., *Chavez v. Netflix, Inc.* 162 Cal. App. 4th 42, 66, n. 11 (2008) (numerous studies show "fee awards in class actions average around one-third of the recovery."); Reagan W. Silber and Frank E. Goodrich, Common Funds and Common Problems: Fee Objections and Class Counsel's Response, 17 Rev. Litig. 525, 546 (1998); T. Willing, L. Hooper and R. Niemic, Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules, 90 (1996) (finding attorneys' fees in class litigation "were generally in the traditional range of approximately one-third of the total settlement").

Attorneys' fees in the amount of 33-1/3% or more of the common fund are commonly awarded in the Central District. *Karapetyan v. ABM Indus., No. 2:15-cv-08313-GW-E, 2015 U.S. Dist. LEXIS 24210 (C.D. Cal. Sept. 7, 2017)* (awarding

- 15 -

**MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

33-1/3% in $5,000,000 wage and hour class action); *Aguirre v. Genesis Logistics, Inc., No. 8:12-cv-00687-JVS-KES, 2014 U.S. Dist. LEXIS 184617 (C.D. Cal. Nov. 29, 2017)* (awarding 33-1/3% in $7,000,000 wage and hour class action); *Grillo v. Key Energy Services, LLC*, No. 2:14-cv-000881-AB-AGR, 2017 U.S. Dist. LEXIS 42682 (C.D. Cal. Oct. 13, 2017) (awarding 33-1/3% in $3,000,000 wage and hour class action); and *Shiferaw v. Sunrise Senior Living Management, Inc., No. 2:13-cv-02171-JAK-PLA, 2016 U.S. Dist. LEXIS 187548 (C.D. Cal. Jul. 17, 2017)* (awarding 33-1/3% in $2,180,000 wage and hour class action). (Hawkins Decl. ¶ 69, 70).

Class Counsel's request for attorneys' fees of one-third of the GSF, is justified under the facts of this case for undertaking complex, risky, expensive and time-consuming litigation on a contingency fee basis. *In re Pacific Enterprises Security Litigation*, 47 F.3d 373, 379, (1995 U.S. App. LEXIS 2330); *In re Activision Securities Litigation*, 723 F. Supp. at 1375.

Class Counsels' expertise in class actions weighed heavily in obtaining a benefit to each member of the Class. The settlement negotiations followed the Parties' exchange of sufficient discovery on merits and class discovery.

Given the complexities and uncertainties of continuing to litigate these cases, the requested fees are warranted. "Indeed, one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, ensuring that competent counsel continue to be willing to undertake risky, complex, and novel litigation." Manual for Complex Litigation (Fourth), § 14.121, p. 193.

This is not a case where a substantial settlement and a recovery of a large attorneys' fee was a foregone conclusion. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-339 (1980) (recognizing the importance of a financial incentive to entice qualified attorneys to devote their time to complex, time-consuming cases in which they risk nonpayment). In light of the risks of loss at any stage of this

**MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

litigation, i.e., denial of Rule 23 certification, an unfavorable result on the merits of a summary judgment or at trial and/or appeal, the recovery for the Class, or attorneys' fees, was never a foregone conclusion.

### C.   Ninth Circuit Factors for Evaluating Reasonableness of the Fee Request

Whether the Court uses the common fund or the lodestar method, the main inquiry is whether the end result is reasonable. *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000). The Ninth Circuit has articulated five factors as pertinent criteria for evaluating the reasonableness of a fee request: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of the work; (4) the contingent nature of the fee and the financial burden carried by the Plaintiffs; and (5) awards made in similar cases. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002).

### 1.   The Results Achieved Support the Fee Request

One factor to be considered in granting a fee award is the success obtained. *In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*, No. 02-ML-1475 (RCx), 2005 U.S. Dist. LEXIS 13627, at *27 (C.D. Cal. June 10, 2005) (*citing Hensley v. Eckerhart*, 461 U.S. 424 (1983)). In the face of the uncertainties associated with continued litigation on Plaintiffs' claims, and Defendant's vigorous denials and affirmative defenses, there is no question that the results achieved are more than fair, adequate and reasonable to the Class. Class Counsel successfully negotiated a common fund of $2,750,000 (inclusive of attorneys' fees and costs) for Class Members who were unlikely to have ever received any compensation or redress.

A Settlement must not be judged against a speculative measure of what might have been achieved, nor does the settlement have to provide 100% of the damages to be fair and reasonable. *Linney v. Cellular Alaska Pshp*, 151 F.3d 1234, 1242 (9th Cir. 1998), *In re Mego Fin. Corp. Sec. Litig.*, 213 F. 3d 454, 459 (9th Cir. 2000). When analyzing the amount offered in settlement, the court should

- 17 -

**MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

examine "the complete package taken as a whole," and the amount is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice v. Civil Serv. Comm'n. of the City and County of San Francisco*, 688 F.2d 615, 625, 628 (9th Cir. 1982). The adequacy of the amount recovered must be judged as "a yielding of absolutes…Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation ..." *Id.* at 624 (citation omitted), "[I]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not ... render the settlement inadequate or unfair," *Id.* at 628. Class Counsel submits that the Settlement provides a reasonable recovery for the Class and that this factor strongly supports approving the fee request.

### 2. Strength of Plaintiff's Case and the Risk, Expense, Complexity and Likely Duration of Further Litigation

As previously discussed thoroughly, Plaintiff believes in the merits of the case, but recognizes the inherent risks and uncertainty of litigation and understands the benefits of providing significant payments to the Class now with the risks of class certification, a risk of an unfavorable appeal, an unfavorable summary judgment ruling, and other risks in complex litigation generally.

### 3. The Contingent Nature of the Fee and the Financial Burden Carried

"[A]n attorney should be compensated both for services rendered and for the risk of loss or nonpayment assumed by accepting and prosecuting the case." *In re Quantum Health Resources, Inc.* 962 F. Supp. 1254, 1257 (1997).

Class Counsel undertook all of the risks of this litigation on a contingent fee basis. They accepted the risks of dispositive motions, obtaining and maintaining certification, proving liability and damages at trial, and surviving post-trial

- 18 -

**MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

motions and appeals. Plaintiff faced the risk of litigating this case for years and spending hundreds of thousands of dollars in attorney and staff time and costs, or more, without pay or reimbursement. To meet their responsibility to the Class, Class Counsel had to assure at all times they had sufficient resources to prosecute this action.

Many contingent fee cases result in no compensation to plaintiff's counsel because cases are dismissed at the pleadings stage, lost at certification, summary judgment or after a trial on the merits, or reversed on appeal. Many hard-fought lawsuits ultimately produce no fee because of the discovery of facts unknown when the case was commenced, changes in the law while the case was pending, or decisions of judges or juries following a trial on the merits, despite the tremendous efforts by plaintiff's counsel. Here, Plaintiff was able to obtain a substantial settlement given all the risks.

District Courts within the Ninth Circuit recognize that "[t]he rationale behind awarding a percentage of the fund to counsel in common fund cases is the same that justifies permitting contingency fee arrangements in general." *In re Quantum Health Resources, Inc. Sec. Litig.*, 962 F. Supp. at 1257 (citing *Skelton v. General Motors Corp.*, 860 F. 2d 250, 252 (7th Cir. 1988). "The underlying premise is the existence of risk—the contingent risk of non-payment." *In re Quantum Health Resources, Inc., supra* at 1257. Because payment is contingent upon receiving a favorable result for the class, an attorney should be compensated both for services rendered and for the risk of loss or nonpayment assumed by accepting and prosecuting the case." *Id.* (citing, 1 Alba Conte, Attorney Fee Awards (3d ed. 2004) § 1.09).

Unlike counsel for Defendants, who are regularly paid a fair-market hourly rate, Class Counsel received no compensation for their services for over nine years and have received no reimbursement of the expenses required to prosecute this case. Indeed, as an example, Plaintiff's counsel has litigated successfully a case

- 19 -

**MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

after 15 years, and another one unsuccessfully for 12 years. There are the real risks of loss of time and costs associated with contingency cases, all without recourse in such cases. The Court should consider the risks of contingency cases as a whole in awarding the requested fees. The contingent nature of the representation, and the risks of this litigation, fully warrant judicial approval of the fee request.

### 4.    Awards in Similar Cases

The requested fee falls in the mid-range of common fund fee awards, which range from 20% to 50%, and is fair compensation for undertaking complex, risky, expensive, and time-consuming litigation.

Courts often look to fees awarded in comparable cases to determine if the fee requested is reasonable. *Vizcaino*, 290 F.3d at 1050 n.4. In analogous wage and hour lawsuits and settlements, the Central District Courts have awarded attorneys' fees in amounts equal to or greater than Class Counsel's fee request. *Karapetyan v. ABM Indus.*, No. 2:15-cv-08313-GW-E, 2015 U.S. Dist. LEXIS 24210 (C.D. Cal. Sept. 7, 2017) (awarding 33-1/3% in $5,000,000 wage and hour class action); *Aguirre v. Genesis Logistics, Inc.*, No. 8:12-cv-00687-JVS-KES, 2014 U.S. Dist. LEXIS 184617 (C.D. Cal. Nov. 29, 2017) (awarding 33-1/3% in $7,000,000 wage and hour class action); *Grillo v. Key Energy Services, LLC*, No. 2:14-cv-000881-AB-AGR, 2017 U.S. Dist. LEXIS 42682 (C.D. Cal. Oct. 13, 2017) (awarding 33-1/3% in $3,000,000 wage and hour class action); *Shiferaw v. Sunrise Senior Living Management, Inc.*, No. 2:13-cv-02171-JAK-PLA, 2016 U.S. Dist. LEXIS 187548 (C.D. Cal. Jul. 17, 2017) (awarding 33-1/3% in $2,180,000 wage and hour class action); *Boyd v. Bank of America Corp.*, 2014 U.S. Dist. 162880 at *22 (C.D. Cal., Nov. 18, 2014) (awarding 33-1/3% in $5,800,000 wage and hour class action); and *Taylor v. Shippers Transp. Express, Inc.*, No. CV1302092BROPLAX, 2015 WL 12658458, at *17 (C.D. Cal. May 14, 2015) (awarding one-third of the $11,040,000 Maximum settlement amount in a wage and hour class action).

If this were individual litigation, the customary fee arrangement would be

**MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

one-third to 40% of the recovery[2].  Class Counsel's fee request is in line with awards in similar cases. This factor also supports Class Counsel's fee request.  See Section VI.B., *supra*.

### 5.     The Reaction of the Class Supports the Fee Request

District courts in the Ninth Circuit may also consider the reaction of the Class when deciding whether to award the requested fee. *In Re Heritage Bond*, 2005 U.S. Dist. LEXIS 13627, at *48 ("The presence or absence of objections from the class is also a factor in determining the proper fee award."). Here, the Notice stated the total amount the Class, and each member, would receive in settlement, Class Counsel's intention to request 1/3 of the GSA in attorneys' fees, and provided the manner and deadline to file objections. At the close of the deadline, not a single Class Member had objected. (Hernandez Decl., ¶¶ 11, 12). The absence of objections supports the fee request.

### D.     Although Not Required, Class Counsel's Fee Request is Reasonable when Cross-Checked With the Lodestar

Class Counsel seek approval of a fee on a percentage of the common fund recovery, not a lodestar. While a percentage fee may be cross-checked against a lodestar increased by a risk multiplier, courts are not required to engage in this exercise, and many California district courts decline to do so.  See, e.g., *Glass v. UBS Financial Services, Inc.*, No. 06-4066-MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) (finding "no need to conduct a lodestar cross-check [as] [c]lass counsel's prompt action in negotiating a settlement while the state of the law remained uncertain should be fully rewarded"); *Lopez v. Youngblood*, No. 07-0474-DLB, 2011 WL 10483569 (E.D. Cal. Sep. 2, 2011) ("A lodestar cross-check is not required in this circuit, and in a case such as this, is not a useful reference.")

Where the cross-check is used, the "calculation need entail neither

---

[2] Plaintiff signed a retainer agreement providing for an attorneys' fee of 33-1/3% of any recovery achieved.

**MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

mathematical precision nor bean-counting" and is not intended to be a "full-blown lodestar inquiry." "Where the use of the lodestar method is used as a cross-check, it can be performed with a less exhaustive cataloguing and review of counsel's hours." *Barbosa v. Cargill Meat Solutions Corp*, 297 F.R.D. 431, 451 (E.D. Cal. July 2, 2013).

The lodestar method is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Staton*, 327 F.3d at 965. A reasonable hourly rate is the prevailing rate charged by attorneys of similar skill and experience in the relevant community. *PLCM Group, Inc. v. Drexler,* 22 Cal. 4th 1084, 1095 (2000); *Hopson v. Hanesbrands Inc.*, 2009 U.S. Dist. LEXIS 33900 (N.D. Cal. Apr. 3, 2009).

Class Counsel have hours of attorney and para-professional time prosecuting the case resulting in a lodestar fee of $361,390. The hours expended were reasonable in light of the complexity of the litigation. (Hawkins Decl. ¶¶ 70-72, Exh. 2).

### 1. Class Counsel's Hourly Rates Are Reasonable

Class Counsel is entitled to hourly rates charged by attorneys of comparable experience, reputation, and ability for similar litigation. *Ketchum v. Moses*, 24 Cal.4th 1122, 1133 (2001); Children's *Hospital and Med. Center v. Bonta*, 97 Cal. 4th 740, 783 (2002) (affirming rates that were "within the range of reasonable rates charged by and judicially awarded comparable attorneys for comparable work"). When determining a reasonable hourly rate, Courts may consider factors such as the attorney's skill and experience, the nature of the work performed, the relevant area of expertise and the attorney's customary billing rates. *Flannery v. California Highway Patrol*, 61 Cal. App. 4th 629, 632 (1998). Prior determinations of counsel's rates are strong evidence of their reasonableness. *See Margolin v. Regional Planning Commission*, 134 Cal.App.3d 999, 1005 (1982).

Class Counsel's skill and experience support their hourly rates, ranging from

- 22 -

**MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

$850 to $900, which are in line with rates typically approved in wage and hour class action litigation in California and have been specifically approved by numerous state and federal courts in California. Counsel's practice is limited exclusively to litigation, focusing on the representation of employees and consumers in wage and hour and consumer class action matters and have been appointed Class Counsel or co-Class Counsel in many of these cases. (Hawkins Decl. ¶¶ 69-74). Plaintiff's counsel continually monitors the prevailing market rates charged by both defense and plaintiff law firms and set the billing rates of their attorneys and paralegals/law clerks to follow the prevailing market rates in the private sector for attorneys and staff of comparable skill, qualifications and experience.

## 2.    Class Counsel's Total Hours are Reasonable

Hours are reasonable if "at the time rendered, [they] would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest." *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982). "[T]he standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Wooldridge v. Marlene Industries Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990); *see also*, *Norman v. Housing Auth.*, 836 F.2d 1292, 1306 (11th Cir. 1988) ("The measure of reasonable hours is determined by the profession's judgment of the time that may be conscionably billed and not the least time in which it might theoretically have been done"). The time spent by Class Counsel on this litigation was necessary and reasonable.

## E.    Class Counsel's Litigation Expenses Should be Reimbursed

"There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *West v. Circle K Stores, Inc.*, No. Civ. S-04-0438, 2006 U.S. Dist. LEXIS 76558, at *25 (E.D. Cal. Oct. 19, 2006).

**MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Class Counsel incurred costs of $11,664.20 to successfully prosecute this Action. (Hawkins Decl. ¶ 75, Ex. 3).   These expenses were incidental and necessary to the effective representation of the Class. *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994); *In Re DJ Orthopedics, Inc. Secs. Litig*., No. 01-CV-2238-K (RBB), 2004 U.S. Dist. LEXIS 11457, at *21 (S.D. Cal. June 21, 2004). These costs were incurred for such things as filing fees for pleading and motions, service of process, copying, postage, messenger services, mediation fees, preparing for and participating in mediation, travel, attorney service fees, etc. *Id*.

### F.     The Class Representative Enhancement Payment Is Reasonable

A district court may award enhancement payments to named plaintiffs in class actions. *Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 958-59 (9th Cir. 2009). The purpose of incentive awards is to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaking in bringing the action, and sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59.

Subject to this Court's approval, Class Counsel requests the modest sums of $5,000 to be awarded to Plaintiff for the commitment to prosecuting this Action, their efforts, risks undertaken for the payment of attorneys' fees and costs if the action had been lost, general releases of all claims arising from their employment, stigma upon future employment opportunities for having sued a former employer, as well as the recoveries for every Settlement Class Member, who if not for the settlement, would have received nothing, and benefits to current and future employees. (Hawkins Decl. ¶ 66; *See generally*, Declaration of Plaintiff Navarrete filed in support of the motion for final approval filed concurrently herewith).

### G.     The Administration Expenses Are Reasonable

Class Counsel also seeks payment of $55,000 to ILYM Group, Inc., the appointed Administrator. (Hernandez Decl. ¶ 15). The Hernandez Declaration details the extensive work the Administrator performed and will continue to

**MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

perform following final approval to calculate settlement payment awards, print and mail settlement payment checks, tax reporting to the appropriate agencies, and to respond to inquiries. *See generally* Hernandez Declaration. The requested amount is fair and reasonable and should be awarded.

## VII.   CONCLUSION

Class Counsel respectfully requests the Court to grant final approval of the proposed Settlement, and to award from the MSA the Class Representative Service Awards, Class Counsels' attorneys' fees and litigation expenses, the PAGA Payment, and the Administrator's expenses, in the requested amounts.

Dated: July 1, 2021

JAMES HAWKINS APLC

By: /s/ Gregory Mauro

James R. Hawkins, Esq.
Gregory Mauro, Esq.

Attorneys for Plaintiff ANTONIO NAVARRETE and for Members of the Class

- 25 -

**MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**